FILED _____ LODGED
_____ RECEIVED _____ COPY

AUG 1 3 2010

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ P DEPUTY

1  Jonathan B. Woods and Kerrie Woods
   3930 East Cody Avenue, Gilbert, AZ 85234
2  (480) 232-0076

3

4              IN THE UNITED STATES DISTRICT COURT
5              IN AND FOR THE DISTRICT OF ARIZONA

6
                                          )  Case No.: 2:10-CV-00723-GMS
7   JONATHAN B. WOODS AND,                )
8   KERRIE WOODS,                         )  **AMENDED VERIFIED COMPLAINT**
                                          )  **FOR WRONGFUL FORECLOSURE**
9          vs.                            )
                                          )  **CAUSES OF ACTION:**
10  TAYLOR, BEAN & WHITAKER MORTGAGE      )
11  CORP., MORTGAGE ELECTRONIC            )  **1. DECLARATORY/INJUNCTIVE**
    REGISTRATION SYSTEMS, INC., BAC HOME  )     **RELIEF**
12  LOANS SERVICING,                      )  **2. BREACH OF COVENANT OF**
    AND, JOHN AND JANE DOES 1-5           )     **GOOD FAITH & FAIR DEALING**
13                                        )  **3. MISREPRESENTATION/FRAUD**
14         Defendants                     )  **4. QUIET TITLE**
                                          )  **5. UNJUST ENRICHMENT**
15                                        )
                                          )  **JURY TRIAL DEMANDED**
16  _____  )

17

18                    <u>**TABLE OF CONTENTS**</u>

19  PRELIMINARY STATEMENT ........................................................... 1

20  JURISDICTION ........................................................................... 4

21  PARTIES .................................................................................... 4

22  CHRONOLOGICAL SEQUENCE OF EVENTS/FACTUAL ALLEGATIONS ......................... 5

23  GENERAL ALLEGATIONS OF FACT ........................................................ 6

24      A. OWNERSHIP OF GENUINE SECURITY INSTRUMENTS OR AUTHORITY TO

25  ENFORCE MUST BE PROVEN TO HAVE STANDING ........................................ 6

26      B. NECESSITY OF RETURNING SECURITY INSTRUMENTS TO PROTECT

27  PLAINTIFF ............................................................................ 11

28

                AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE

C. SECURITIZATION OF NOTE WITHOUT AUTHORIZATION OR PROPER DISCLOSURE RESULTING IN UNJUST ENRICHMENT ............................................ 13

D. BREACH OF PRIVITY OF CONTRACT TO SECURITIZED INSTRUMENT .......... 16

E. BREACH OF AGENT-TRUSTEE RELATIONSHIP HARMED PLAINTIFF ............. 17

F. DEED OF TRUST VIOLATES DUE PROCESS AS AN ILLEGAL COGNOVIT NOTE FOR NON-DISCLOSURE OF TERMS ........................................................................ 19

G. DEED OF CONTRACT VIOLATES DUE PROCESS AS A CONTRACT OF ADHESION ............................................................................................................ 22

G. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING ...................... 24

FIRST CAUSE OF ACTION REQUEST FOR DECLARATORY RELIEF .............................. 25

SECOND CAUSE OF ACTION  BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING (AS AGAINST TBW AND SUBSEQUENT ASSIGNEES) ...................................... 30

THIRD CAUSE OF ACTION  FOR MISREPRESENTATION AND FRAUD (AS AGAINST ALL DEFENDANTS) .................................................................................................................... 32

FOURTH CAUSE OF ACTION  FOR QUIET TITLE (AS AGAINST DEFENDANT BAC, AND ALL UNKNOWN CLAIMANTS DOES 1-5) ...................................................................... 33

FIFTH CAUSE OF ACTION  FOR UNJUST ENRICHMENT (AS AGAINST DEFENDANTS AND ALL UNKNOWN CLAIMANTS ENGAGING IN SECURITIZATION) ........................ 35

PRAYER ............................................................................................................................................ 36

For The First Cause Of Action: ....................................................................................... 36

For The Second Cause Of Action: .................................................................................... 39

For The Third Cause Of Action: ...................................................................................... 39

For The Fourth Cause Of Action: ................................................................................... 39

For The Fifth Cause Of Action: ....................................................................................... 39

For All Causes Of Action: ................................................................................................. 40

JUDICIAL NOTICE ......................................................................................................................... 40

VERIFICATION ................................................................................................................................ 43

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE

Jonathan B. Woods and Kerrie Woods
3930 East Cody Avenue, Gilbert, AZ 85234
(480) 232-0076

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JONATHAN B. WOODS AND, KERRIE WOODS, <br><br> vs. <br><br> TAYLOR, BEAN & WHITAKER MORTGAGE CORP., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., BAC HOME LOANS SERVICING, AND, JOHN AND JANE DOES 1-5 <br><br> Defendants | Case No.: 2:10-CV-00723 <br><br> **AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE** <br><br> **CAUSES OF ACTION:** <br><br> **1. DECLARATORY/INJUNCTIVE RELIEF** <br> **2. BREACH OF COVENANT OF GOOD FAITH & FAIR DEALING** <br> **3. MISREPRESENTATION/FRAUD** <br> **4. QUIET TITLE** <br> **5. UNJUST ENRICHMENT** <br><br> **JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

NOW COMES, Plaintiffs, Jonathan B. Woods and Kerrie Woods, husband and wife (hereinafter "Plaintiffs), who file this Verified Complaint for Wrongful Foreclosure and seek Emergency Declaratory and Injunctive Relief to vacate the Sale of Plaintiffs' property, as occurred on February 16, 2010 and, to Void ab initio, the Deed(s) of Trust as executed on July 31, 2008, and additional remedies as detailed herein.

This action is as a result of (A) Defendant TAYLOR, BEAN WHITAKER breaching contract law in ways including but not limited to (1) misleading Plaintiffs into signing an illegal cognovit note/confession of judgment, without proper disclosure of the ramifications of the

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 1

contract, contract of adhesion, unconscionability, violation of privity of contract, lack of due process, breach of the covenant of good faith, fraud in the factum, concealment, misrepresentation, (2) conversion and unjust enrichment from securitization of Plaintiffs' Loan Documents, (3) failure to return Plaintiffs' genuine Loan Documents, (4) violation of various Arizona statutes, the Arizona Consumer Protection Act, the Arizona Commercial Code, the Uniform Commercial Code, and fundamental fiduciary duties owed to Plaintiffs, which caused related violations of Plaintiffs' rights, (B) invalid actions by MERS, and (C) wrongful foreclosure by Defendant BAC HOME LOANS SERVICING. Plaintiffs herein present clear claims supported by evidence and law for which relief can be granted.

Plaintiffs seek damages for Defendants collective violations described above and in detail throughout this Verified Complaint.

Due to a multitude of illegal business practices including predatory lending, Defendant TAYLOR, BEAN WHITAKER went into bankruptcy, at which point Defendant BAC HOME LOANS SERVICING acquired their loan portfolio which included a substantial number of subprime home loans made as a result of those predatory lending practices.

Plaintiffs allege that Defendants are not persons entitled to enforce the Note because they have not proven standing and legal capacity to do so and have engaged in wrongful actions to foreclose on Plaintiff's property.

Plaintiffs further allege Defendants have breached the covenant of good faith and fair dealing in numerous ways detailed herein, including but not limited to at inception by failing in their obligation to fully disclose terms and conditions which induced Plaintiffs into waiving rights and confession of judgment, failing to allow for equal bargaining, and failing to negotiate an equitable contract, all in good faith.[1] This was a form of fraud. The act of foreclosure by BAC

---

[1] The duty to deal fairly and in good faith with the other party to a contract, however, "is a duty imposed by law, not one arising from the terms of the contract itself. In other words, this duty of dealing fairly and in good faith is nonconsensual in origin rather than consensual." (Richardson v. Employers Liab. Assur. Corp. (1972) 25 Cal. App.3d 232, 239 [102 Cal. Rptr. 547], quoted with approval in Gruenberg v. Aetna Ins. Co. (1973) 9 Cal.3d 566, 574 [108 Cal. Rptr. 480, 510 P.2d 1032]

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 2

1  breached the covenant of good faith and fair dealing by acting on what was a series of invalid

2  actions also detailed herein, including but not limited to foreclosing without having standing to

3  do so.

4      Defendants may not foreclose on the real property without demonstrating lawful status,

5  standing and proceeding in keeping with the law. Defendants may not institute a foreclosure

6  without authenticated accounting proving creditor status, proving loss, and a right to ownership

7  of the title. Plaintiffs object to non-judicial foreclosure without sufficient evidence for the Court

8  to review proving the agreement was lawful and based on full disclosure, and proving the

9  identity of the real party in interest with standing, i.e. the person legally vested with the power to

10  enforce the note as a holder in due course for adequate and sufficient value paid for the note for

11  the real property, particularly in light of the illegal cognovit note/void contract.

12      Based on fact and law provided herein, if the wrongful foreclosure is allowed to stand, to

13  be protected from future debt collection action, Plaintiffs demand the return of their Security

14  Instruments.

15      Based on evidence to support Plaintiffs' claims of violations of state and federal law

16  detailed herein, Plaintiffs seeks declaratory and injunctive relief based on the claims, facts, and

17  law herein to provide the court with grounds to declare the Promissory Note and Deed(s) of Trust

18  as executed on July 31, 2008 as being void ab initio, and to vacate the invalid assignment and

19  wrongful foreclosure sale of their property.

20      Plaintiffs further seek declaratory and injunctive relief to enjoin Defendants named and as

21  yet named from dispossessing Plaintiffs of their property, including, but not limited to voiding

22  the fraudulent foreclosure of Plaintiffs' property, and any attempts to dispossess Plaintiffs from

23  their rightful possession of property, until all facts are clarified, following proper discovery and

24  evidentiary hearing.

25  NOTE: The terms "Security Instruments" and Loan Documents" refer to the Note and Deed of

26  Trust, and are synonymous.

27

28

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 3

## JURISDICTION

Venue is proper since the transaction and the real property in question is located within Maricopa County, the State of Arizona.

## PARTIES

Plaintiffs, JONATHAN B. WOODS and KERRIE WOODS (hereinafter "Plaintiffs") are adult individuals, husband and wife, who currently reside at 3930 East Cody Avenue, Gilbert, AZ 85234.

Defendant TAYLOR, BEAN & WHITAKER MORTGAGE CORP, (hereinafter, "Defendant TBW") is listed as the original lender and beneficiary on the Deed(s) of Trust as executed on July 31, 2008. Defendant TBW, lists their address as 1417 North Magnolia Ave., Ocala, FL 34475. Although Defendant TBW is in Chapter 11, upon Plaintiff's belief and information TBW continues to function as a business entity and receive correspondence through CT Corporation Services, Registered Agent, 2394 E Camelback Rd. #100, Phoenix, Arizona 85016.

Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (hereinafter, "Defendant MERS") is listed as the original Beneficiary acting solely as nominee for Lender and Lender's Successors and Assigns, listing their address as P.O. Box 2026, Flint, MI 48501-2026. MERS receives legal correspondence through Mortgage Electronic Registration System, Inc (MERS), Jeff Ogden, Registered Agent, 3300 SW 34th Ave. Suite 101, Ocala, Florida 34474

Defendant, BAC HOME LOANS SERVICING, LP FKA Countrywide Home Loans Servicing LP (hereinafter, "Defendant BAC"), which is a subsidiary of Bank of America, is the Substitute Trustee listing their address as PO Box 5170, Simi Valley, CA 93062. Defendant BAC receives legal correspondence through CT Corporation Services, Registered Agent, 2394 E Camelback Rd. #100, Phoenix, Arizona 85016.

Defendants, John and Jane Doe 1-5 (hereinafter "Defendants' Doe") , 1-5, are "persons" who Plaintiffs believe, following discovery, are likely to be named as additional defendant(s).

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 4

# CHRONOLOGICAL SEQUENCE OF EVENTS/FACTUAL ALLEGATIONS

Plaintiff hereby incorporates all preceding paragraphs as if they are set forth at length, herein.

1.    On July 31, 2008 a Deed of Trust was executed by Plaintiffs on behalf of Defendant TBW as original lender and Defendant MERS as original Beneficiary, and further names First American Title as original Trustee. (See copy as Exhibit A)

2.    On Aug. 23, 2009 Plaintiffs received a notice from Defendant BAC, identifying themselves as a debt collector, indicating that an assignment, sale, or transfer took place, naming itself as loan servicer and replacing Defendant TBW effective Sept. 1, 2009, which had gone into Chapter 11 bankruptcy. (See Exhibit B)

3.    On Nov. 5, 2009 a Corporation Assignment Deed of Trust was executed by a Leticia Quintana, as Assistant Secretary of Defendant MERS, that "hereby grants, assigns and transfers to Defendant BAC all beneficial interest under that certain Deed of Trust" executed by Plaintiffs, that was notarized in Ventura County, CA, but recorded in Maricopa County, AZ just one day later on Nov. 6, 2010.

4.    This Corporation Assignment Deed of Trust notice was recorded over two months after Defendant BAC actually became the servicer. (See Exhibit C)

5.    On Nov. 5, 2009 a Substitution of Trustee was executed by a Leticia Quintana, as Assistant Secretary of Defendant BAC, naming Defendant MERS as Beneficiary, appointing RECONTRUST, INC. as Trustee and replacing FIRST AMERICAN TITLE, the original Trustee. This was notarized in Ventura County, CA but recorded in Maricopa County, AZ just one day later on Nov. 6, 2010. (See Exhibit D)

6.    On Nov. 5, 2009 a Notice of Trustee Sale was executed by Lucy Mansourian of RECONSTRUST as current Trustee naming Bank of America as Beneficiary, claiming that Plaintiff's property would be sold on Feb. 16, 2010 at 2pm.  (See Exhibit E)

7.    On Nov. 12, 2009 Plaintiff received an unsigned and un-notarized Substitution of Trustee notice dated Nov. 10, 2009 from a Gulshan Oomerjee, Assistant Secretary of Defendant

BAC, replacing FIRST AMERICAN TITLE with RECONTRUST, and also naming Defendant MERS as Beneficiary. (See Exhibit F)

8.      On Nov. 25, 2009 a Notice of Trustee Sale naming RECONSTRUST as current Trustee and Bank of America as Beneficiary, was served at Plaintiff's property claiming that Plaintiff's property would be sold on Feb. 16, 2010 at 2pm. (See Exhibit G)

NOTE: The terms "Loan Documents" and "Security Instrument(s)" are synonymous, referring to the Note and Deed of Trust. See Memorandum of Law for Arizona statutes, U.C.C. citings, and case law in support of claims herein.

## GENERAL ALLEGATIONS OF FACT

9.      Plaintiff hereby incorporates all preceding paragraphs as if they are set forth at length, herein.

### A. OWNERSHIP OF GENUINE SECURITY INSTRUMENTS OR AUTHORITY TO ENFORCE MUST BE PROVEN TO HAVE STANDING

#### 1)      NEGOTIABLE INSTRUMENTS

10.      A Deed of Trust is a negotiable instrument, which is regulated as such under the Uniform Commercial code (UCC) and Arizona Commercial Code.

11.      The original genuine Promissory Note referred to in the Deed Of Trust, and the substitution of trustee, and the notice of trustee sale, is a negotiable instrument governed by UCC § 3-104(a)(b) and (e), and ARS § 47 – 3104(a)(b) and (e).

12.      A deed of trust secures the performance of a contract under A.R.S. § 33-801(8). A Promissory Note is considered a contract according to A.R.S. § 33-801(4). Therefore all statutes and case law authorities pertinent to contract law apply to issues concerning Plaintiff's Promissory Note and deed of Trust.

13.      Since a non-judicial foreclosure can only be conducted to enforce the rights of the contract holder, the party conducting such a sale must be able to prove they are either the holder of the contract or the holder's agent with authority to enforce.

14.      The right to enforce a negotiable instrument is only transferable by delivery of the instrument itself, as enumerated under UCC 3-203 and Arizona Commercial Code § 47 – 3203.

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 6

15.   Neither Defendant TBW nor BAC meet the definition of a holder in due course under Arizona Commercial Code 47 -- 3302

16.   There are two essential provisions applicable to the enforcement of a negotiable instrument, for a person to qualify as a genuine and/or actual "holder" of the note: (a) a person must be in possession of the instrument, and (b) the instrument must be payable to that person.

17.   The UCC defines a "holder" as "[a] person who is in possession of...an instrument...issued or endorsed to him or to his order."[2]

18.   "[A] fundamental feature of negotiable instruments is that they are transferred by the delivery of possession, not by contract or assignment." [3]

19.   Possession is significant in determining whether a person is a holder, and the absence of possession defeats the status. [4]

20.   In order to effectuate the sale of Plaintiffs' property, only the actual holder of the genuine Security Instruments, i.e., Promissory or Adjustable Rate Note and Deed of Trust, has the right to do so.

21.   Absent clear proof that a party holds both the legally valid Note and Deed of Trust with authority to enforce the Note, foreclosure is fraudulent.

22.   Separation of the Note and Deed of Trust renders the Deed incidental. (Also refer to Footnote #2, #3, and $5)

**2)   MERS**

23.   Courts have ruled that MERS has no standing to take actions (See In Re: Walker, Case No. 10-21656-E-11 and MERS v. Southwest Homes of Arkansas, Exhibit H)

24.   According to In re: BARRY WEISBAND, Case No. 4:09-bk-05175-EWH, United States Bankruptcy Court, D. Arizona, March 29, 2010, "MERS has no financial interest in the Note, it will suffer no injury if the Note is not paid and will realize no benefit if the DOT is

---

[2] See Hotel Corp. v. Taylor and Fletcher v. Foremans, Inc., 301 N.C. 200, 271 S.E. 2d 54 (1980)

[3] See In Re Hwang, LA08-15337SB.

[4] See In Re Foreclosures of Connolly v. Potts, 63 N.C. App. 547, 306 S.E. 2d 123 (1983).

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 7

foreclosed. Accordingly, MERS cannot satisfy the requirements of constitutional standing", therefore Defendant BAC and substituted Trustee RECONTRUST "as MERS' assignee of the DOT, "stands in the shoes" of the assignor, taking only those rights and remedies the assignor would have had". Because BAC and RECONTRUST are MERS' assignees, they cannot satisfy the requirements of constitutional standing either.

25.   MERS had no beneficial interest in the subject loan.

26.   The Deed of Trust itself states, "This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note", therefore the Deed without Note is inconsequential.

27.   MERS failed to ensure that the Note and Deed of Trust were kept together.

28.   According to the Notice of Trustee Sale dated Nov. 5, 2009 Defendant MERS was replaced by Defendant BAC as Beneficiary.

29.   Since Defendant MERS assigned the subject loan to Defendant BAC which it had no standing to do in the first place, naming BAC as Beneficiary is null and void.

**3)   INVALID ASSIGNMENT**

30.   For a court, any court to find that "constructive notice", however provided, i.e., allegation(s) of authority, assignment, whether recorded or not, as being sufficient for purposes of foreclosure, is tantamount to a serious and egregious error of said court, and is in violation of well-established law, and plaintiff's inherent due process rights. [5]

31.   For there to be a valid assignment, there must be more than the assignment of the Deed alone; the Note itself must be assigned otherwise the Deed is a nullity. [6]

---

[5] See In RE Staff Mortgage and Investment Corp., 550 F.2d 1228 (9th Cir. 1977) See also, Allegaeri v. Chemical Bank, 657 F.2d 495 (2nd Cir. 1998); and, In RE Marysville Savings & Loan Corp., 743 F.2d 414 (6th Cir. 1985)

[6] See Carpenter v. Longan, 83 U.S. 271, 274 (1872) (stating that) "[t]he note and mortgage are inseparable; the former as essential, the latter as incident." (emphasis added) Further, "[a]n assignment of the note carries mortgage with it, while assignment of the latter alone is a nullity." In Re Leisure Time Sports, Inc., 194 B.R. 859, 861 (9th Cir. 1996) See also, Restatement (3d) of Property (Mortgages) § 5.4, stating that, "[a] mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation that the mortgage secures." (emphasis added)

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 8

1    32.    There could be no valid assignment, since the assignor (MERS) lacked standing to

2    do so and acted in violation of UCC 3-201 and ARS 47 -- 3201.

3    33.    Defendant BAC never produced evidence of possessing assignment of both the Deed

4    and Note.

5    34.    Defendant BAC sold Plaintiff's property on Feb. 16, 2010 without ever having

6    obtained the original Deed and Note required to be in their possession or proving authority to

7    enforce them prior to initiating any action against Plaintiffs.

8    35.    This fraudulent sale now wantonly deprives Plaintiffs of their rightful possession of

9    said property, because Defendant BAC had no authority to enforce the Note when they were not

10   a valid assignee, did not have a valid right by showing possession of the valid Security

11   Instruments or authority to enforce.

12   36.    At all times material to their actions Defendant BAC knew or should have known

13   they were never in actual possession of the requisite instruments which had been sold into a

14   securitized trust, and therefore they lacked authority to enforce them.

15   37.    Plaintiffs have a right to see the original note, and to have fully and properly

16   addressed who, if any, of the Defendants actually is/was in possession of the original note at all

17   material times to Defendants' actions.

18   38.    The inability to inspect and authenticate actual possession of the original Note

19   deprives Plaintiffs of proof of who the real creditor is.

20   39.    The inability to inspect and authenticate actual possession of the original Note

21   deprives Plaintiffs of the opportunity to authenticate their signatures.

22   40.    Absent Defendants' valid assignment, absent actual possession of the Note, at all

23   material times relevant to Defendants' actions, as executed both individually and severally,

24   deprives Defendant BAC, as well as any and all representative Defendants, of legitimate

25   standing by which to effectuate sale of Plaintiff's property.

26   41.    Absent valid assignment and standing by BAC, Plaintiff's have been harmed by

27   wrongful foreclosure.

28

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 9

**4)   CONFLICT OF INTEREST**

42.   A certain Leticia Quintana has signed two different documents in different capacities, a Corporation Assignment Deed of Trust, as Assistant Secretary of Defendant MERS and a Substitution of Trustee as Assistant Secretary of Defendant BAC both dated Nov. 5, 2009. (See Exhibit I by expert witness Lynn Szymoniak, Esq., http://szymoniakfirm.com)

43.   The Corporation Assignment Deed of Trust dated Nov. 5, 2009, also executed by Leticia Quintana as Assistant Secretary of Defendant MERS, states that it "hereby grants, assigns and transfers to Defendant BAC all beneficial interest under that certain Deed of Trust".

44.   To assign a Deed of Trust on behalf of Assistant MERS in the capacity of Assistant Secretary and name Defendant BAC as Trustee, for which she also serves in the capacity of Assistant Secretary, constitutes a conflict of interest.

45.   Defendants BAC and MERS must now provide Plaintiff and this Court with an explanation of how on the same day, Nov. 5, 2009, Leticia Quintana can act in one capacity to grant transfers and assigns from one entity to another, while in a different capacity take action to substitute the Trustee.

46.   Defendants BAC and MERS must now provide Plaintiff and this Court with an explanation of how an Assignment and Substitution of Trustee was signed and notarized in Ventura County, CA Nov. 5, 2009 but recorded one day later in Maricopa County, AZ.

47.   The Defendants' herein described actions involving "deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission" constitute violations of the Arizona Consumer Fraud Act, ARS 44 -- 1521,et seq.(ACFA).[7]

48.   Invalid execution of the Corporation Assignment Deed of Trust and Substitution of Trustee renders all subsequent actions by Defendants null and void.

---

[7] "Fraud and deceit may arise from silence where there is a duty to speak the truth, as well as from speaking an untruth." Morrison v. Coddington, 662 P. 2d. 155, 135 Ariz. 480(1983).

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 10

49.   Invalid execution of the Corporation Assignment Deed of Trust and Substitution of Trustee caused harm to Plaintiffs by breaking chain of title and then subjecting them to wrongful foreclosure.

**5)   STANDING TO FORECLOSE MUST BE PROVEN**

50.   A party that is an invalid assignee cannot have standing to foreclose.

51.   Even if Defendant BAC was a valid assignee, producing the original and genuine Loan Documents showing wet-ink signatures which are authenticated as true and correct by the custodian with first-hand knowledge pursuant to the Federal Rules of Evidence would definitively prove that BAC is the creditor with right to collect and standing to foreclose.[8]

52.   Since according to the Deed of Trust and subsequent notices (which are attached as Exhibits), Defendants supposedly possess both genuine Security Instruments.

53.   Defendant BAC nor any entities unknown to Plaintiff have produced any evidence that they have possession of both the Note and Deed of Trust, have authority to enforce them, or are the creditor. There is no evidence of standing to foreclose on Plaintiff' property.

54.   Defendant BAC must produce them in order to prove they are the real creditor with standing to execute the power of sale and foreclose on Plaintiff's property.

55.   Only the party with proof of being creditor can allege and prove default.

**B. NECESSITY OF RETURNING SECURITY INSTRUMENTS TO PROTECT PLAINTIFF**

56.   Pursuant to UCC § 3-603, payment "MUST" be made to the "HOLDER IN DUE COURSE" or discharge of the note does not occur placing the debtor in jeopardy as to being required to pay the note twice, once to the entity who bills and once to the actual holder of the

---

[8] Generally, a party without the legal right under applicable substantive law to enforce the obligation at issue, or pursuing an interest outside those protected by the law invoked or abstract questions more appropriately addressed legislatively, lacks prudential standing. *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1044 (9th Cir.2008).

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 11

note. Therefore, discharge of the note cannot take place, violating Plaintiff's right to protection under the UCC provisions on negotiable instruments.

57.    Pursuant to UCC § 3-109 and Arizona Comm. Code § 47-3109 "A promise or order is payable to bearer if it states that it is payable to bearer or to the order of bearer or otherwise indicates that the person in possession of the promise or order is entitled to payment".

58.    The official UCC commentary to Section § 3-309 and states that: "Judgment to enforce the instrument cannot be given unless the court finds that the [Plaintiff] will be adequately protected against a claim to the instrument by a holder that may appear at some later time."

59.    Arizona Comm. Code § 47-3109(B) similarly states that: "The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument." (See Exhibit J for proof of "double jeopardy").

60.    The UCC §3-603 protects a party from double liability after having paid the holder the full amount of the paper."[9]

61.    Defendant BAC has foreclosed on Plaintiff' property and kept possession of Plaintiff's Loan Documents which are negotiable instruments that can have further liability in the stream of commerce, leaving Plaintiff vulnerable to harm through debt collection actions by some future unknown party for the same debt, in violation of Plaintiffs' rights.

62.    If Defendants claim loss of the Security Instruments, in accordance with UCC § 8-405(2) and Arizona Comm. Code §47-8405, they must now supply an indemnity bond for the full face value of the Note.

63.    Now, providing assignment, transfer, and/or sale were properly executed, Defendant BAC should have in its possession, the genuine Security Instruments originally executed by Plaintiffs.

---

[9]From ANDERSON ON THE UNIFORM COMMERCIAL CODE (3rd ed., revised 1998) at 331-32.

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 12

64.   Now Defendant BAC must produce the genuine Security Instruments upon which is "secured by a certain Deed of Trust" and <u>return to Plaintiffs the original certified Security Instruments with indication they are paid and satisfied.</u>

65.   Failure by Defendants to now produce and return Plaintiff's Security Instruments is a violation of the UCC § 3-309 and Arizona Comm. Code § 47-3309(B) which are intended to protect Plaintiffs from financial harm.

66.   If Plaintiff's Security Instruments are in the possession of investors who purchased them through securitized pools of mortgages, Defendant BAC must take whatever action necessary to obtain them and return them in order to protect Plaintiffs from further harm.

67.   The fact that possession of the Security Instruments is in question, amounts to overwhelming and compelling grounds to warrant presentation of this case to a jury.[10]

## C. SECURITIZATION OF NOTE WITHOUT AUTHORIZATION OR PROPER DISCLOSURE RESULTING IN UNJUST ENRICHMENT[11]

68.   A CUSIP number search on a loan shows the name of the fund or trust where it was part of a pool of mortgages sold to investors or hedge funds.

69.   A CUSIP number search on the TBW account no. 2632794 returns Cusip Number #316146109, which shows the loan residing in FIDELITY INVESTMENT GRADE FUND, Symbol FBNDS.

70.   A CUSIP number search on the BAC account no. 316062108 returns Cusip Number #316062108, which shows the loan residing in FIDELITY CAPITAL & INCOME, Symbol FAGIX.

71.   This is an example of multiple sales of the very same Security Instruments.

---

[10] Possession is significant in determining whether a person is a holder, and the absence of possession defeats the status. See In Re Foreclosures of Connolly v. Potts, 63 N.C. App. 547, 306 S.E. 2d 123 (1983).
[11] The following definition from the Dictionary of Financial Terms, Copyright © 2008, explains securitization as: Securitization is the process of pooling various types of debt -- mortgages, car loans, or credit card debt, for example -- and packaging that debt as bonds, pass-through securities, or collateralized mortgage obligations (CMOs), which are sold to investors.

72.     Selling Plaintiff's Note to another mortgage company is distinctly different than turning it into a security and selling it through a chain of transactions into a securitized trust to be traded on Wall St. with profits collected by multiple entities such as the originator, master servicer, depositor, CDO manager, document custodian, trustee, underwriter, securities administrator, and certificate holders.

73.     Plaintiffs have not been presented with documentation evidencing pooling and servicing agreements, SPV and CDO information, and certificates to investors.

74.     Discovery will show the chain of conversion from when the Security Instruments were securitized since on or near the time the original Deed of Trust and Note were signed by Plaintiff through when they were traded into the above named FIDELITY funds.

75.     Converting Real Property from its true owner without true owner's knowledge and consent by Defendant TBW or any other entity is an act of "conversion through fraudulent means" and "Direct Conversion." [12]

76.     No proof exists that Defendants ever provided disclosure to Plaintiffs of securitization of their Loan Documents.

77.     No proof exists that the original Trust itself, created on or near the time of signing the original Loan Documents, delegated authority unto any other party to securitize the note.

78.     No proof exists that this original Trust itself actually delivered the original Loan Documents into Defendant BAC's possession accompanied with the requisite documentation to show chain of assignment and various transactions leading into the asset pool of securitized mortgages.

---

[12] Conversion is defined as: "An unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights. Any unauthorized act which deprives and owner of his property permanently or for an indefinite time. Unauthorized and wrongful exercise of dominion and control over another's personal property, to exclusion or inconsistent with the rights of owner." BLACK'S LAW DICTIONARY, 5th ed., at 300. Direct Conversion is "The act of actually appropriating the property of another to his own beneficial use... or that of a third person, ... or altering its nature, or wrongfully assuming title in himself." Id. at 300. This act of conversion is further clarified: "It is an essentially tortuous act, an unlawful act, an act which cannot be justified or excused in law." BALLENTINE'S LAW DICTIONARY, 3rd ed., at 269, quoting 18 AmJur2nd, Conversion, §1...

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 14

79.    Defendants cannot legally sell Plaintiffs' Loan Documents into a securitized trust if they did not legally possess them to begin with.

80.    Defendant BAC cannot be in possession of the original Note or have authority to enforce it, because the CUSIP number reveals that Plaintiff's Security Instruments were previously sliced/diced as a security and bundled en masse into a mortgage-backed asset pool for profits by investors.

81.    Failure to properly disclose securitization of Plaintiffs' Loan Documents for untold profit incurred secretly, without their knowledge constitutes concealment, misrepresentation, breach of covenant of good faith and fair dealing, and violation of privity of contract.

82.    Failure to properly disclose securitization of Plaintiffs' Loan Documents constitute a material breach of good faith as well as breach of good faith and fair dealing due to the fact that a full understanding of terms and conditions resulting in a "meeting of the minds" did not occur. Therefore, there is no enforceable contract, because it is void ab initio.

83.    Defendant BAC sold Plaintiffs' property in a foreclosure sale even though the Loan Documents are bundled into a securitized trust for Wall St. investors.

84.    Defendant will not enjoin the investors in the FIDELITY funds as parties who are the actual holders of the Note and Deed.

85.    Defendants must prove what party within the chain of transactions involving securitization of Plaintiffs' Security Instruments have standing to collect payments and/or standing to foreclose on their property.

86.    Parties that were holders of the Security Instruments throughout the chain of financial transactions in the securitization process profited from their use without due consideration to Plaintiffs, amounting to unjust enrichment and which harmed Plaintiffs.[13]

---

[13] Under the law of restitution, a right of this sort runs against the person who benefits from "unjust enrichment" and in favor of the person who suffers loss thereby. *(Buss v. Superior Court, 16 Cal. 4th 35 - Cal: Supreme Court 1997)*

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 15

87.   Now Defendants must provide restitution to Plaintiffs with a forensic accounting of all transactions and profits earned without his knowledge and consent through the use of their Security Instruments.

88.   Defendants responsible for undisclosed and unauthorized securitization resulting in unjust enrichment must return all profits to Plaintiffs.

89.   Additionally, the Court must clarify if investors in the trust are the parties with a beneficial interest and have possession of his Security Instruments. (See Exhibit K)

## D. BREACH OF PRIVITY OF CONTRACT TO SECURITIZED INSTRUMENT[14]

90.   Although the Deed of Trust allows for transfer or sale of the loan to other parties, it doesn't allow for undisclosed and extreme profit making without due acknowledgement and consideration to Plaintiff.

91.   For Defendants to secretly use the Security Instruments for commerce with unknown parties beyond the purview of Plaintiff is to violate privity of contract.

92.   Defendant TBW and its representatives failed to notice Plaintiffs prior to or during the execution of the Security Instruments that the Loan Documents executed by Plaintiffs would be securitized by TBW and/or its successors or assigns who would profit from said Security Instruments thereafter, in violation of Plaintiffs' right to Privity of Contract.

93.   Defendant BAC has been falsely referred to as holding the note(s) in violation of Plaintiffs' when the actual holders are investors in the above-named FIDELITY funds, in violation of Plaintiff's right to privity of contract.

94.   Upon information and belief, securitization has resulted in Plaintiffs' Loan Documents being sold to FIDELITY, or another entity unknown at this time who can become

---

[14] "Privity of Contract" is defined as: "A material interest in the performance of a contract of one who did not join in the making of the contract. The impact of a contract upon a person from or to whom the consideration moves." BALLENTINE'S LAW DICTIONARY, 3rd ed., at 996 citing 17 AmJur2nd Contracts, §297.   It continues as "Continuity of interest; successive relationships to the same rights of property, as between ... grantor and grantee. Id., citing *Zaragosa v. Craven, 33 Cal 2d 315, 202 P2d 73.*

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 16

1   known through discovery, all for the purpose of concealed profits from Plaintiffs' Loan

2   Documents, , in violation of Plaintiff's right to privity of contract.

3       95.    Without disclosure of the identity of third parties involved in chain of title, Plaintiffs

4   were harmed by being deprived of their right to track the whereabouts of their Security

5   Instruments, the monetary product derived therefrom, and how they're being used, in violation of

6   Plaintiff's right to privity of contract.

7

8   **E. BREACH OF AGENT-TRUSTEE RELATIONSHIP HARMED PLAINTIFF**

9       96.    Four separate documents refer to Plaintiffs as Trustor. They are (1) The Deed of

10  Trust, (2), Assigment of the Deed of Trust, (3) Substitution of Trustee, (4) and Notice of Trustee

11  Sale.

12      97.    Plaintiffs were never informed that he would be involved in forming a trust, what the

13  relationship was between Trustor and Trustee, or what role and powers he should have as

14  Trustor.

15      98.    Plaintiffs never manifested intention of a Trustor/Settler to create a trust.

16      99.    Plaintiffs were never informed that his property would become a Trust property.

17      100.   There was no lawful purpose for using Plaintiffs' property to create a trust from the

18  execution of his Loan Documents.

19      101.   Creating the trust resulted in the undisclosed and illegal confiscation of Plaintiffs'

20  property through the involuntary irrevocable waiving of Plaintiffs' rights.

21      102.   Plaintiffs, as Trustor, were within reasonable expectation to believe that the Escrow

22  Agent and Trustee would represent the best interest of them as Trustor.

23      103.   The Trust created from Plaintiffs' Security Instruments at closing contained no

24  authorization or acknowledgement by Plaintiffs to the subsequent confiscation of his right to

25  property.

26      104.   Trustor had no choice in designating a real beneficiary.

27      105.   There is no evidence of documentation for the Trust Indenture authorizing with

28  specificity the activities of the Lender, Trustee and its agents and assigns.

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 17

106. If it can't be established that a legal trust with the Trust Indenture document(s) ever existed, then there is no legal trust.

107. The Trust created from Plaintiffs' Security Instruments at signing contained no authorization to the subsequent repackaging of these Security Instruments into a securitized asset for hidden profits by Defendants and parties unknown to Plaintiff.

108. Plaintiffs were an uninformed, involuntary Trustor to the multiple insider transactions that occurred to seise his property rights in trust, and were therefore victimized as unwitting participants.

109. The escrow agent had a fiduciary duty to disclose the terms and conditions of the Security Instruments to Plaintiffs.

110. There is no evidence that the escrow agent fulfilled his obligation to act with the utmost good faith toward Plaintiffs by making a full disclosure of all the facts, and all terms and conditions prior to the transaction or at closing. (See *Timmsen v. Forest E. Olson* and *Bank of America v. Sanchez*.)

111. The fact that no parties acting as Agent-Trustee acted with good faith and fair dealing to inform Trustor about transactions involving Security Instruments executed by them render the Trust created from their Loan Documents at signing nothing more than a sham.

112. Plaintiffs aver that the sham trust was procedurally and substantively unconscionable, for no one of sound mind would knowingly place his property into an adversary Trustee's hands for the sake of undisclosed securitized profits and wrongful foreclosure.

113. No one could reasonably be expected to knowingly sign an agreement which created a trust which eventually held his property in the form of monetized and securitized instruments without being informed of all facts and its terms and conditions.

114. Plaintiffs aver that a constructive trust now actually exists with respect to the subject property.

115. If BAC foreclosed and took title to the property and are not the true creditor, they have an equitable duty to convey it to the true creditor on the ground that their acquisition or retention of the property is wrongful and invalid, and that they would be unjustly enriched if they

1    were permitted to retain the property without being the real party of interest entitled to ownership

2    of the trust.

3        116.   Based upon the conversion, unjust enrichment, concealment, and conspiratorial acts

4    committed by the Defendants and their agents and assigns, this Court has a duty to dissolve the

5    sham and/or constructive Deed of Trust for the purpose of judicial correctness and to provide full

6    restitution for Plaintiffs.

7        117.   "We have previously held that the covenant of good faith and fair dealing is legally

8    implied in every contract...." Undoubtedly, ... the covenant of good faith and fair dealing

9    recognizes a fiduciary relationship and requires the escrow agent [-Trustee] to act with the

10   utmost honesty and fairness." Id quoting *D'Ascoli, 94 Ariz. At 234, 383 P.2d at 121-22.*

## F. DEED OF TRUST VIOLATES DUE PROCESS AS AN ILLEGAL COGNOVIT NOTE FOR NON-DISCLOSURE OF TERMS

14       118.   Plaintiffs were never explained vital terms such as irrevocable", "seising", "seised",

15   "power of sale", or "waive".

16       119.   The Deed of Trust, proceeding as an illegal cognovit note, wholly evades the

17   requisite form and manner of noticing as encumbering cognovits or confessions as mandated by

18   the Supreme Law of the Land as evidenced in Overmyer v. Fricke.

19       120.   The cumulative effect of the Deed of Trust containing small and hidden and/or

20   disguised provisions which were not explained and do not show acknowledgement of

21   understanding and acceptance from Plaintiffs, caused Plaintiffs to unknowingly waive their

22   rights to possession of property, and accept adverse judgment against themselves without legal

23   recourse, caused said Deed of Trust to operate as an illegal Cognovit Note.[15]

24       121.   This concealment of clauses in a contract which require Plaintiffs' agreement was

25   designed to mislead borrowers into forfeiting ownership of their property.

---

[15] See Overmyer v. Frick in Memorandum for conditions of acceptability for a cognovit note.

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 19

122.   The statement contained within the Deed of Trust which says "Borrower <u>irrevocably</u> <u>grants and conveys</u> to Trustee, in trust, with a <u>power of sale</u>, the following described property located in the county of Maricopa, which currently has the address of 3930 East Cody Avenue, Gilbert, AZ 85234", which was not explained to Plaintiffs, constitutes a cognovit note and/or confession of judgment by requiring the Plaintiffs to waive their rights to ownership and without recourse allow the Trustee to invoke power of sale without restriction. (emphasis added)

123.   The statement contained within the Deed of Trust which says "BORROWER COVENANTS that Borrower is <u>lawfully seised of the estate hereby conveyed and has the right</u> <u>to grant and convey the Property</u> and that the Property is unencumbered, except for encumbrances of record. <u>Borrower warrants and will defend generally the title to the Property</u> against all claims and demands, subject to any encumbrances of record", which was not explained to Borrower, and aside from Plaintiffs' required signature, gives no other indication whatsoever as to signify Plaintiffs' acknowledgement or understanding of this phrase, depriving Plaintiffs of full knowledge of a critical phrase impacting their right to ownership of their property (emphasis added).

124.   For a cognovit note to be legal there must be clear and unambiguous warning that one is waiving their rights and there must be extra consideration for doing so.

125.   There was no clear and unambiguous warning that Plaintiffs were waiving their rights and there was no extra consideration given by Defendant TBW.

126.   Any reasonable person, if informed of the meaning of the phrase "Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered" as is displayed in the Deed of Trust, would have to conclude that they could only possess the "right to grant and convey" an unencumbered property if, in fact, they were in the position of absolute ownership of the property.

127.   The averment in the preceding paragraphs also renders the Deed of Trust an illegal cognovit note and/or confession of judgment by Defendant TBW, by withholding a material fact pertinent to Plaintiffs' absolute ownership of the property, again resulting in Plaintiffs waiving

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 20

1    their rights to ownership and, without recourse, allowing the Trustee to invoke power of sale

2    without restriction.

3       128.   Any reasonable person, having even a limited understanding of these cognovit

4    phrases causing them to waive fundamental rights would not sign such an agreement without

5    gaining complete understanding and extra consideration, rendering this Deed of Trust

6    unconscionable and unenforceable.

7       129.   Without the ramifications of the above-mentioned hidden phrases being explained in

8    the Loan Documents which required their signature, Plaintiffs were unconscionably

9    disadvantaged by being deceived into waiving their rights to an equitable agreement and fair

10   treatment, thereby making a "meeting of the minds" and thereby an acceptance of terms

11   impossible.

12      130.   Without a "meeting of the minds" and an understanding and acceptance of terms, a

13   contract is void.

14      131.   Defendant TBW has superior knowledge and knew or should have known that

15   failure to fully disclose terms and conditions, and cognovit clauses would deprive Plaintiffs of

16   knowledge necessary to enter into a true contract.[16]

17      132.   Defendant TBW committed fraud by failing in their legal and moral duty to fully

18   disclose terms and conditions, and cognovit clauses required for full understanding of the

19   contract.[17]

20      133.   Defendant TBW's failure to provide adequate time at closing to reveal and explain

21   clauses hidden within the Deed of Trust affecting Plaintiffs' control and ownership of their

22   property by directing them to such clauses, or by clearly writing their meaning in the form of a

23   warning to ensure that they were thoroughly aware they were forfeiting their control and

24

25   _____

26   [16] In Fina Supply, Inc. v. Abilene Nat. Bank, 726 S.W.2d 537, 1987 it says "Party having
     superior knowledge who takes advantage of another's ignorance of the law to deceive him by
     studied concealment or misrepresentation can be held responsible for that conduct."

27   [17] U.S. v. Prudden, 424 F.2d. 1021; U.S. v. Tweel, 550 F. 2d. 297, 299, 300 (1977) "Silence can
     only be equated with fraud when there is a legal and moral duty to speak or when an inquiry left

28   unanswered would be intentionally misleading.  We cannot condone this shocking conduct..."

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 21

1  ownership of said property resulted in unconscionably depriving the otherwise unknowing

2  Plaintiffs of their fundamental rights to due process and redress by appeal. (See Exhibit L for

3  example of clear, unambiguous warnings calling attention to a cognovit note/confession of

4  judgment.)

5       134.   Defendant TBW's failure to provide adequate disclosure on the cognovit clauses

6  within the Deeds of Trust render the entire contract illegal and make any waiver of Plaintiffs'

7  ability to dispute a foreclosure null and void.

8       135.   Since Plaintiffs unknowingly were induced into signing Loan Documents with

9  illegal cognovit clauses, they were harmed by the illegal contract, harmed by foreclosure of their

10  property, and stand to suffer irreparable harm if they are dispossessed of their property.

11      136.   The fact that Plaintiffs were unknowingly misled and rushed into signing an illegal

12  cognovit note to their grave detriment, resulting in being deprived of their rights under Article 3

13  of the Arizona Constitution, and Fifth and Fourteenth Amendment Rights to not be subjected to

14  loss of property without due process of law amounts to overwhelming and compelling grounds to

15  warrant presentation of this case to a jury.

16

17  **G. DEED OF CONTRACT VIOLATES DUE PROCESS AS A CONTRACT OF**

18  **ADHESION**

19      137.   A contract of adhesion is a one-sided, "take it leave it" agreement with greatly

20  unequal bargaining and/or negotiating power that creates extreme advantage for one side and

21  extreme disadvantage for the other.

22      138.   A contract of adhesion is based on unconscionable elements that "shock the

23  conscience", which courts have widely ruled the contracts to be unenforceable. [18]

24      139.   Due to the fact that Defendant TBW failed to explain the cognovit clauses contained

25  in the Loan Documents to Plaintiffs at closing, same Defendant deceived Plaintiffs, without their

26

27

28  [18] See Ticknor v. Choice Hotels International, 265 F. 3d 931 - Court of Appeals, 9th Circuit 2001

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 22

1  awareness into waiving their Fifth and Fourteenth Amendment rights, and into unknowingly

2  signing a cognovit note through a contract of adhesion.

3      140.  A cognovit note and contract of adhesion presented by Defendant TBW willfully put

4  Plaintiffs in a position of disparity and disadvantage due to the overwhelming advantage and

5  bargaining power held by Defendants as Lender and Trustee.

6      141.  Absent proper disclosure and acceptance by both parties, contracts of adhesion are

7  either procedurally and/or substantively unconscionable and, the unconscionability factor alone,

8  should void the cognovit clause of this or any adhesion contract.[19]

9      142.  There was no contention or acknowledgment evidenced in the Loan Documents that

10  the Plaintiffs were made aware of the inability to negotiate or request different terms, and that

11  the contract was a "take it or leave it" offer.

12      143.  There is no evidence that Plaintiffs' ever intentionally, deliberately, and/or

13  knowingly waived their rights to participate in an equitable contract.

14      144.  The Deed of Trust/cognovit note/contract of adhesion was a take it or leave it offer

15  and the illegal cognovit clause(s) were at no time ever an issue raised by Defendant TBW before

16  or during closing. [20]

17

18

19

---

[19] In re Bates, 32 BR 40 - Bankruptcy Court, ED California 1983. However, if the Court did choose to use state law, it would easily reach the same finding under California Civil Code section 1695.13 which provides: "it is unlawful for any person to initiate, enter into, negotiate, or consummate any transaction involving residential real property in foreclosure, as defined in 1695.1, if such person, by the terms of such transaction, takes unconscionable advantage of the property owner in foreclosure."

[20] Judge J. Skelly Wright set out the state of the law succinctly in Williams v. Walker-Thomas Furniture Co., 121 U. S. App. D. C. 315, 319-320, 350 F. 2d 445, 449-450 (1965): "Ordinarily, one who signs an agreement without full knowledge of its terms might be held to assume the risk that he has entered a one-sided bargain. But when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his consent, was ever given to all of the terms. In such a case the usual rule that the terms of the agreement are not to be questioned should be abandoned and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld."

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 23

145.   The cognovits clauses were not issued under any other substantial benefit and/or consideration to Plaintiffs including and not limited to a reduction in installment payments or reduction in interest rates.

146.   This Court must hear the legal issues as a matter of law and allow a jury to hear the crimes committed against Plaintiff as questions of fact.

## H. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

147.   Defendant TBW breached the covenant of good faith and fair dealing by inducing Plaintiff's into a confession of judgment with cognovit clauses and adhesion.[21]

148.   Defendant TBW and/or possibly other parties breached the covenant of good faith and fair dealing by converting Plaintiff's Note and obtaining unjust enrichment through securitization without their knowledge or consent.

149.   Defendant MERS breached the covenant of good faith and fair dealing by participating in a Substitution of Trustee and Assignment which it had no standing or authority to do.

150.   Defendants BAC breached the covenant of good faith and fair dealing by foreclosing on Plaintiffs' property without being the real-party-in-interest, holder in due course, or authority to enforce the note.

151.   These acts by Defendants were unconscionable in their formulation and execution.

152.   Contracts such as the one at issue may be rendered void and unenforceable to prevent outcomes with unconscionable results.[22]

---

[21] As the Arizona Supreme Court recognized, "the implied-in-law covenant of good faith and fair dealing protects the right of the parties to an agreement to receive the benefits of the agreement that they have entered into. The denial of a party's rights to those benefits, whatever they are, will breach the duty of good faith implicit in the contract. Thus, the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to." (Wagenseller v. Scottsdale Memorial Hosp., supra, 710 P.2d at p. 1040, italics added.)

[22] UCC 2-302 and Arizona Revised Statutes §47-2302 states: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract."

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 24

1    153.   Defendants BAC breached the covenant of good faith and fair dealing by failing to

2    return Plaintiff's Security Instruments to protect them from further debt collection action

3    pursuant to UCC § 3-309 and Arizona Comm. Code § 47-3309(B).

4

5    **FIRST CAUSE OF ACTION REQUEST FOR DECLARATORY RELIEF**

6    **(AS AGAINST ALL DEFENDANTS)**

7    154.   Plaintiffs hereby incorporate all preceding paragraphs as if they are set forth at

8    length herein.

9    155.   Declaratory Judgments are proper when: (1) An actual controversy exists, (2)

10   irreparable harm and injury is imminent and inevitable, (3) Plaintiffs have a direct, substantial

11   and present interest, and (4) the declaration sought will be of practical help in ending the

12   controversy.

13   156.   An actual controversy exists between Plaintiffs and Defendants, both individually

14   and severally, in that Defendants have tacitly alleged they held the original, genuine Security

15   Instruments, and had the authority to act under them.

16   157.   An actual controversy exists as to whether Plaintiffs were unknowingly stripped of

17   their due process rights in execution of the Deed of Trust, due to the fact said Deed of Trust

18   performed as an illegal cognovit note.

19   158.   Plaintiffs have a clear, direct, substantial and present interest in the controversy.

20   159.   Pursuant to the Declaratory Judgment Act, this Honorable Court may enter a

21   Declaratory Judgment, determining the rights of the Plaintiffs with regards to the various

22   Defendants, due to the controversy arising as it relates to the Genuine Deed of Trust, Genuine

23   Promissory Note, and any genuine notes obligating Plaintiffs to Defendants, and any and all

24   subsequent documents, correspondence, and alike, Plaintiffs have detailed rights and duties

25   relative to the claims as presented herein.

26   160.   Arizona Courts have the authority to make 'binding adjudications of right' in cases

27   of 'actual controversy' when there is 'antagonistic assertion and denial of right'.

28

161.   The primary purpose of a Declaratory Judgment is to quickly determine the issues, which if delayed, will, as in the instant matter, cause substantive injury to the Plaintiffs, due to the direct and continuing actions of Defendants, and accordingly, afford relief from the uncertainty and insecurity fostered by Defendants, in determining the legal rights, status, and relations appertaining thereto.

162.   A Declaratory Judgment is absolutely necessary in the present matter, as to speedily determine the rights, status, and relationship between Plaintiffs and Defendants, regarding the location, presentment, and, subsequent authentication of the genuine Promissory Note and/or Deed of Trust, upon which, absent any authority to act under the Deed of Trust, said Deed is wholly incidental and without effect, absent Defendants possession of the essential Promissory Note or Title.

163.   A Declaratory Judgment is absolutely necessary in the present matter, as it pertains to the Deed of Trust, in relation to the due process rights of the Plaintiffs, and Defendants application of hidden Cognovit clause(s) contained therein, executed without explanation, or warning, and without special consideration being given to Plaintiffs, and that Plaintiffs were damaged and their rights were abrogated.

164.   A Declaratory Judgment is necessary with regards to Privity of Contract, as Plaintiffs were never properly noticed that Defendants may securitize the Promissory Note(s) for which all action as it relates to the Deed(s) of Trust, by necessity, must rely.

165.   A Declaratory Judgment is necessary as Plaintiffs once again reiterate that they were never made aware of any cognovit note and/or confession of judgment at the time of their entering into the contract with Defendant TBW and/or their representatives or that Plaintiffs ever knowingly, or intentionally waived any of their constitutionally-guaranteed rights. Defendant TBW never spent any time on this subject with Plaintiffs, but instead, quickly raced through the closing process, shuffling "papers" in front of Plaintiffs to sign, as a take it leave it offer, without any explanation as to the contents thereof, other than where to sign. These elements qualify the agreement as unconscionable and unenforceable.

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 26

1    166.   A Declaratory Judgment is necessary because upon approval of the loan in question

2    up to the time of closing, and for a substantial time thereafter, Defendant TBW failed in its

3    obligation to deal in good faith by making Plaintiffs aware of critical terms contained within the

4    Deed of Trust, which, Plaintiffs only recently learned, contains small and hidden and/or

5    disguised provisions, that caused said Deed(s) of Trust to operate as a cognovit note, to the sole

6    detriment and subsequent depravation of Plaintiffs, and their rightful possession of property.

7    167.   A Declaratory Judgment is necessary because averments made by the aforesaid

8    Defendants in their own documentation(s) are sufficient to raise beyond the mere speculative

9    level, who, if anyone, actually is and/or was in possession of the original note, at all times

10   material to the actions individually and severally undertaken by said Defendants.

11   168.   A Declaratory Judgment is necessary because Defendants allege they possess

12   genuine security documents, i.e., Title, Deed of Trust, Riders, Promissory Note, or Credit

13   Agreement(s), without saying they possess both the promise to pay and deed specifying the

14   security, as well as where they are located. They must show proper recording, including chain of

15   custody as required by Rules of Evidence which they have failed to provide. Since Defendants

16   have indicated these genuine Security Documents are in their possession, they must produce both

17   together in order to prove standing to have foreclosed on Plaintiffs' property and to prove

18   standing to now evict them.

19   169.   A Declaratory Judgment is necessary because the debt that Defendants have alleged

20   Plaintiffs are liable for has become securitized into a mortgage-backed asset without Plaintiffs

21   knowledge or consent resulting in unjust enrichment to Defendants and subsequent unknown

22   parties as investors in the security. Furthermore, for the security to be legal, there must be

23   possession of the Note pursuant to the UCC Article 3, the Security Instruments must be

24   registered as such with the SEC, with reporting to the IRS, of which there is no evidence of, and

25   there must be proper recording of any servicing and pool agreements, in order to have the right to

26   execute the power of sale to foreclose.

27

28

170.   Declaratory relief is necessary because Defendant MERS had no beneficial interest in the subject property, and no authority to execute any documents, yet executed an invalid assignment to Defendant BAC which must be vacated, and further invalidates the foreclosure.

171.   Declaratory relief is necessary because Defendants have committed fraud upon this Honorable Court by misrepresenting that Defendants are the proper owner and holder in due course of the debt with the right of power of sale, when in actuality it is the owners of the mortgage-backed asset who are the proper owners. Now the proper owners must be identified. Whether they have the power of sale is yet to be determined depending on right of subrogation.

172.   Plaintiffs have incurred significant damage including converting their Note and failure to give consideration from profits realized by securitization, wrongful foreclosure, and failure to return the Security Instruments marked paid and satisfied. The conduct of Defendants will inflict additional and irreparable harm/damage should Defendants be allowed to continue to act, absent granting Plaintiffs Declaratory Relief.

173.   Declaratory relief is necessary because Plaintiffs suffered damages by an illegal foreclosure sale and pending eviction from their own home.

174.   Declaratory relief is necessary because there were multiple breaches of law with the detriment to public policy.

175.   Declaratory relief is necessary because a Court order is necessary requiring a sworn affidavit from Ms. Quintana explaining the holding of two positions with both Defendants MERS and BAC, and recording of both the Assignment and Substitution of Trustee signed and notarized in Ventura County, CA but recorded one day later in Maricopa County, AZ.

176.   Declaratory relief is necessary because evidence required to prove Real-Party-In-Interest with right to collect monies and enforce the Note must comply with the Federal Rules of Evidence. Furthermore, at least one competent fact witness from the Defendant(s) with first-hand knowledge who Plaintiffs can cross-examine should be allowed to testify. The attorney, not having first-hand knowledge, cannot make assertions or render opinions.

177.   Due to the willful and malicious acts against Plaintiffs by Defendant TBW for inducement into a cognovit note, and due to the willful and malicious acts by Defendant BAC for

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 28

fraudulently executing documents to effectuate a fraudulent foreclosure on Plaintiffs' property, and due to violations and breach of good faith and breach of good faith and fair dealing as a result of the undisclosed securitization of Plaintiffs' loan documents, Plaintiffs having set forth the claims and facts for relief against Defendants, moves this Court to grant the following damages in their favor:

a) For exemplary and punitive damages to be determined by the Court or Jury for Fraudulent Inducement to the contracts, and other violations of law aforementioned herein;

b) Actual Economic and Non-Economic Damages;

c) For a declaration of the rights of the parties relative to Plaintiffs' property, including a declaration that collectively Defendants have no legal and enforceable lien against Plaintiffs' property;

d) A preliminary injunction and permanent injunction enjoining Defendant, their agents, assigns, and all person acting under, for, or in concert with them, from evicting Plaintiffs from their home;

e) For cancellation/setting aside/annulling/dismissing of the sale and restitution of the home to Plaintiff;

f) For an Order declaring that the Mortgage and Note Contracts and the Assignment of Mortgage in this matter are Null and Void.

g) For an Order compelling Defendant to return the original Promissory Note to Plaintiff, in Court, for inspection and review of signatures and verify the representations made therein.

h) For an Order that if the original, unaltered Note is not available, that Defendant be ordered to pay Plaintiffs the face value of the Note with interest, plus the escrow and all the bond/security derivatives of the Note.

i) For an Order canceling the original Promissory Note under election of remedies for Fraud in the Factum and a declaration and determination that Plaintiffs are the rightful holder of title to the Property.

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 29

j)     For an Order awarding compensatory damages to be determined for time spent in legal research and composition of this action comparable to standard Attorneys allowances from Defendant on all counts

k)     FOR AN ORDER FOR DEFENDANTS TO RETURN ORIGINAL, UNALTERED SECURITY INSTRUMENTS WITH ESCROW AND EQUITY IF FORECLOSURE JUDGMENT IS SUSTAINED.

178.   Declaratory relief is necessary to require Defendant BAC to produce an accounting in the form of a GAAP-compliant ledger, which all banks are required by statute to maintain, proving they paid lawful money for Plaintiff's property, rather than acquiring it through a credit transaction.

179.   Delay in granting the requested Declaratory Judgment will result in additional, and irreparable harm to Plaintiffs, as Plaintiffs have been subjected to having their property unlawfully foreclosed upon, will now be forced, i.e. evicted from their property should this Honorable Court fail to intervene, which would substantially make the Court party to misprision of a felony. (See Judicial Notice.)

WHEREFORE, Plaintiffs respectfully moves this Honorable Court, which has subject matter jurisdiction to hear this case, to enter a Declaratory Judgment based on the above-listed elements in this First Cause of Action, declaring, inter alia, that the foreclosure of Plaintiffs' property is void, and without legal or lawful effect, and, for any and all causes, as stated herein.

## SECOND CAUSE OF ACTION

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

## (AS AGAINST TBW AND SUBSEQUENT ASSIGNEES)[23]

---

[23] Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (Rest.2d Contracts, § 205.) This duty has been recognized in the majority of American jurisdictions, the Restatement, and the Uniform Commercial Code. (Burton, Breach of Contract and the Common Law Duty to Perform in Good Faith. see also

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 30

1    180.   Plaintiffs hereby incorporate all preceding paragraphs as if they are set forth at

2    length herein.

3    181.   Plaintiffs allege that in the process of contractual negotiations with Defendant TBW

4    they were the victim of inducement, misrepresentation, concealment, and deceit, as described in

5    detail in the formation of what they now realize was a confession of judgment with illegal

6    cognovit clauses and contract of adhesion, which all amount to fraud. These conditions

7    amounted to oppression and elements of fraud, which Plaintiffs have pled with particularity.

8    TBW had a duty to fully disclose the elements of the contract pertaining to confession of

9    judgment, cognovit clauses, seising of property, waiving of rights because the drastic impact on

10   Plaintiff's position against the disproportionate power of TBW. They had a good faith duty to act

11   in accordance with Plaintiff's reasonable expectation of fair dealing. However, TBW fully knew

12   the unfair advantage they had over Plaintiffs, yet intentionally concealed the cognovit and

13   confession of judgment clauses, which was not only in bad faith, but constitutes fraud. They

14   misrepresented material facts, knowing the "take it or leave it" contract was one-sided, they

15   knew Plaintiffs were unschooled in mortgages and relied on TBW to their own detriment, and

16   this reliance caused significant damage resulting in wrongful foreclosure. The elements of fraud

17   are very clear.  Defendant TBW's concern was to write another loan which they could then

18   securitize for compounded profits.

19   182.   Plaintiffs allege there was no fair and reasonable consideration by TBW for the

20   inducement into waiving of their rights.

21   183.   Plaintiffs allege that Defendant MERS violated the covenant by misrepresenting

22   itself as a nominee with authority to act as beneficiary, when it had no beneficial interest, yet

23   executed an assignment and substitution of trustee without having standing to do so.

24   184.   Plaintiffs allege that Defendant BAC violated the covenant by first acquiring

25   Plaintiff's loan documents from TBW which was embroiled in controversy and legal battles due

26

27

28   Burton, supra, 94 Harv. L. Rev. 369, 371 ["the courts employ the good faith doctrine to
     effectuate the intentions of parties, or to protect their reasonable expectations" (fn. omitted)].)

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 31

1  to fraud, relying on invalid documents by MERS, being a party to conflict of interest when one

2  person signed as an officer of two different entities, and then executing a wrongful foreclosure.

3      185.   Plaintiffs allege that all Defendants BAC and DOES 1-5, as successor through

4  acquisition of the subject loan from Defendant TBW, must make restitution and cannot benefit

5  from the Lender's misrepresentation and fraud committed upon Plaintiff.

6      186.   Plaintiffs allege violations of Arizona Consumer Protection Act, A.R.S. §§ 44-1522

7  due to deception, fraud, false pretense, misrepresentation, concealment, suppression or omission

8  of material facts with intent that Plaintiffs relied upon such concealment, suppression and

9  omission. These all clearly constitute breach of good faith covenant and fair dealing.

10      187.   By reason of the breach of good faith covenant and fair dealing, the alleged contract

11  is void, unenforceable, and Plaintiffs have suffered damages in excess of the sum of $235,480.00

12  which is to be determined at trial.

13

14                  **THIRD CAUSE OF ACTION**

15              **FOR MISREPRESENTATION AND FRAUD**

16                **(AS AGAINST ALL DEFENDANTS)**

17      188.   Plaintiffs hereby incorporates all preceding paragraphs as if they are set forth at

18  length herein.

19      189.   On July 31, 2008 Defendant TBW falsely and fraudulently represented to Plaintiffs

20  that they were participating in an equitable agreement, despite the fact that Plaintiffs relied and

21  had every expectation to believe Defendant TBW was acting in good faith, which wound up

22  being to their detriment.

23      190.   The true facts were that Plaintiffs were deceived into unknowingly signing an illegal

24  cognovit note, waiving their equitable rights to ownership of their property, without warning and

25  just compensation for waiving their rights. Had they known the true nature of the cognovit note

26  and the cost of the loan, they would have never agreed to the terms.

27      191.   Defendant TBW made these representations and knew them to be false, and these

28  representations were made by Defendant with the intent to defraud and deceive Plaintiffs and

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 32

1   with the intent to induce them to sign a "take it or leave it" agreement that would greatly

2   disadvantage them and cause them to relinquish ownership of their property. At the time

3   Defendant TBW led Plaintiffs to believe they were entering into an equitable agreement, Lender

4   had no intention of providing equitable consideration.

5        192.   At the time these representations were made by Defendant TBW and at the time

6   Plaintiffs signed the agreement, Plaintiffs were ignorant of the falsity of Defendant TBW's mis-

7   representations and believed them to be true. In reliance on these misrepresentations, Plaintiffs

8   were induced to and did sign the cognovit note. Had Plaintiffs known the actual facts, they would

9   not have taken such action resulting in waiving their rights to ownership of their property.

10        193.   Defendant BAC became a party to Defendant TBW's misrepresentation and fraud

11   through acquisition, ratifying TBW's violations of law, and now extended those violations by

12   causing a foreclosure sale which took place on February 16, 2010.

13        194.   Again, the elements of fraud are very clear: "(1) there were misrepresentations of

14   material facts, especially through nondisclosure; (2) the person making the representation knew

15   them to be false otherwise they would have given full disclosure; (3) the misrepresentations were

16   made with the purpose of inducing Plaintiffs to rely upon them; (4) Plaintiffs relied on the

17   misrepresentation to their detriment; and (5) that this reliance caused damages."

18        195.   As a proximate result of the cumulative fraud and deceit and the facts herein alleged,

19   Plaintiffs have been damaged in the sum of in excess of $235,480.00 plus costs to be determined

20   at trial.

21        196.   In doing the acts herein alleged, defendant acted with oppression, fraud, and malice,

22   and Plaintiffs are entitled to punitive damages in the sum of $706,440.00 or as court may deem

23   proper.

24

25                         **FOURTH CAUSE OF ACTION**

26                            **FOR QUIET TITLE**

27   **(AS AGAINST DEFENDANT BAC, AND ALL UNKNOWN CLAIMANTS**

28                              **DOES 1-5)**

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 33

197.   Plaintiffs hereby incorporate all preceding paragraphs as if they are set forth at length herein.

198.   Plaintiffs are and at all times herein mentioned as the true owners and/or entitled to possession of the property located at 3930 East Cody Avenue, Gilbert, AZ 85234.

199.   The legal description of their property is as follows:

LOT 432, OF CAROL RAE RANCH, ACCORDING TO THE PLATT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 395 OF MAPS, PG 24 AND AFFIDAVITS OF CORRECTION RECORDED AS 95-345898, AS 96-0353476 AND AS 96-0740382, ALL OF OFFICIAL RECORDS.

200.   Defendant BAC and unknown claimants Does 1-5 allege ownership, and claim an interest in the property adverse to Plaintiffs herein. However, the claim of said Defendants is without any right whatsoever, and said Defendants have not legal or equitable right, claim, or interest in said property.

201.   Plaintiffs therefore seek a declaration that the title to the subject property is vested in Plaintiffs alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiffs herein.

202.   Plaintiffs seek an Order demanding Defendant BAC produce a Verified Proof of Damages based on GAAP-compliant accounting under penalty of perjury and full commercial liability proving they paid lawful money, rather than obtaining Plaintiff's property through a credit transaction.

203.   Plaintiffs seek an Order granting injunctive relief from any parties moving against them and/or their real estate, including the property in question, without first proving to this Court that all the lawful requirements and statutory requirements for foreclosure and transfer of property have been met.

204.   Plaintiffs seek an Order causing Defendant BAC to prove standing to foreclose.

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 34

205.   Defendant BAC cannot take Plaintiff' property and keep possession of Plaintiff's Loan Documents which are negotiable instruments that can have further liability in the stream of commerce.  Plaintiffs seek an Order causing Defendant BAC to return their Loan Documents indicating they are paid and satisfied.

## FIFTH CAUSE OF ACTION
## FOR UNJUST ENRICHMENT
## (AS AGAINST DEFENDANTS AND ALL UNKNOWN CLAIMANTS
## ENGAGING IN SECURITIZATION)

206.   Plaintiffs hereby incorporate all preceding paragraphs as if they are set forth at length herein.

207.   Plaintiffs have shown clear evidence of undisclosed and unauthorized profiteering through securitization of their Security Instruments.

208.   These profits may amount to several times the face value of the original Note.

209.   Plaintiffs were never offered due consideration from either the Defendants for the profiteering from use of their Security Instruments.

210.   Defendants have unjustly enriched themselves, while collecting on Plaintiffs' loan, then through the fraudulent foreclosure of their property.

211.   Defendants have demonstrated clear 'intent' to profit through the chain of transactions beyond the original agreement Plaintiffs entered into, also showing knowledge (actual and inferable), engaging in concealment,  misrepresentation, and obtaining desired results through the clearly evident securitization of Plaintiffs' negotiable instruments. Intent can be reasonably inferred from:

    (a) The existence of a party that seeks to execute the transactions – and cannot do so on better terms by other means;

    (b) The participation of an investment bank that has very strong incentives to consummate the transaction on any agreeable (but not necessarily reasonable) terms regardless of effect on the homeowner;

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 35

(c) Defendants are "persons" as defined by § 7701 of title 26 of the Internal Revenue Code;

(d) Defendants' actions and use of multiple corporate entities, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiffs constitutes an "enterprise", with the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiffs through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents; and

(e) Willfully hiding the original, genuine Promissory Note so as to conceal their operations including conversion in violation of law, good faith, and fair business dealings.

212.   In doing the acts herein alleged, Defendant(s) acted by concealment to defraud Plaintiffs who are now entitled to punitive damages equaling 1) the face value of the Promissory Note with interest; (2) all escrowed monies with interest; and, (3) all profits accrued by Defendants including but not limited to derivatives and interest created from all bonds and security instruments created from the unauthorized securitization of their negotiable instruments.

213.   In the event Defendant TBW was the entity that securitized Plaintiff's Loan Documents which began the chain of hidden and unauthorized transactions, Defendant BAC is liable through acquisition, since they knew or should have known of TBW's securitization process which is prevalent throughout the mortgage industry.

## **PRAYER**

214.   WHEREFORE, Plaintiffs prays for judgment against Defendants, and each of them, as follows:

**For The First Cause Of Action:**

1.   For declaration that Defendant TBW deceived Plaintiffs into signing an illegal cognovit note;

2. Declaration that the securitization of their Loan Documents severed the chain of title and proves no Defendant could execute the power of sale and has standing to foreclose;

3. Declaration that the alleged contract is void;

4. Declaration ordering the returning of title to subject property to the Plaintiffs;

5. Declaration that due to foreclosure, Defendants must return the Original, Unaltered Wet-Inked Signature Promissory Note (the undersigned's asset via his signature) and return the Original, Unaltered Wet-Inked Signature Mortgage. It was not the undersigned's intent that Defendant should keep the Note and Mortgage after full payment or foreclosure, but for it to be returned in its original condition as presented/issued. Because the Promissory Note is negotiable, the Note must be surrendered in a foreclosure proceeding so that it does not remain in the stream of commerce;

6. Return: (1) the face value of the Promissory Note with interest; (2) all monies paid by Plaintiffs with interest at the rate of seven percent (7%) per annum from date of purchase of subject property; and, (3) all profits including but not limited to derivatives and interest created from all bonds and security instruments created off of the Loan Documents in which the Loan Documents have been securitized;

7. Return the equity in form of legal tender, that Plaintiffs invested into the subject property, together with interest thereon at the rate of seven percent (7%) per annum from date of purchase of subject property, which constitutes labor, services, and materials furnished by Plaintiffs and/or others, since date of purchase of subject property, on and for the homestead, land, improvements therein and thereon, for labor, materials, and services for the upkeep and maintenance, payments, interest, taxes, fees, assessments, new construction, all repairs and replacements, and any and all improvements thereon and therein, for said land and homestead;

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 37

8. The genuine wet-ink Security Instruments above MUST be provided to the undersigned in order for Defendant BAC to legally finalize the foreclosure sale and effectuate the transfer of clear title of the subject property;

9. If Defendant fails to oppose/answer the demand for the genuine wet-ink Security Instruments, with lawful/legal authority in support, it shall be Defendant EMC's tacit agreement that (A) IT WAS NOT ENTITLED to foreclose on the Notes; (B) that THEY ARE NOT ENTITLED to retain the genuine wet-ink Security Instruments and all monies noted in herein; and (C) that Defendant BAC must return the genuine wet-ink Security Instruments to the undersigned IF THEY ARE TO POSSESS CLEAR TITLE IN THIS MATTER, since Defendants cannot keep the genuine wet-ink Security Instruments, the money (the Notes, the bond/security derivatives of the Notes, and Plaintiffs' equity) and the subject property or the sale proceeds. Pursuant to the Mortgage, if for any reason the illegal cognovits contract of adhesion is allowed to stand, Defendant BAC must choose either the money from sale proceeds or the subject property, not both. Plaintiffs are entitled to just compensation for their equity expended on the subject property since July 31, 2008.

10. If Defendant BAC fails to return the original, genuine, unaltered Security Instruments to the undersigned, Plaintiffs move the court to issue an Order declaring that Defendants must forever release their claim and lien to the subject property.

11. A COURT ORDER for Discovery to require Defendant TBW or BAC to produce the documentation evidencing the sale of Plaintiffs' Security Instruments to the FIDELITY CAPITAL & INCOME and FIDELITY INVESTMENT GRADE FUND, as indicated by the CUSIP number search referred to herein.

12. Plaintiffs move the Court for an Order that Defendants discharge or close out and zero out any and all Trust Accounts in this matter (court case and mortgage trusts), pursuant to PUBLIC POLICY regarding the discharging of commercial obligations,

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 38

via the undersigned's Exemption Account, concerning any outstanding derivative obligations attached to said accounts unknown to the undersigned, and to eliminate all said records; and

13. Plaintiffs move the Court for such other and further relief as the facts warrant in the furtherance and interest of justice.

**For The Second Cause Of Action:**

14. Compensatory damages in excess of the sum of $235,480.00 to be determined at trial.

15. For interest at the rate of seven percent (7%) per annum from date of purchase of subject property on the sum of $235,480.00.

**For The Third Cause Of Action:**

16. General damages in excess of the sum of $235,480.00 to be determined at trial;

17. Punitive damages in the sum no less than $706,440.00;

**For The Fourth Cause Of Action:**

18. For an order compelling Defendant BAC and each of its assigns to transfer legal title and possession of the subject property to Plaintiff;

19. For a declaration and determination that Plaintiffs are the rightful holder of title to the property and Defendant herein, and each of them be declared to have no estate, right, title or interest in said property;

20. For a judgment forever enjoining said defendants, and each of them, from claiming any estate, right, title or interest in the subject property.

**For The Fifth Cause Of Action:**

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 39

21. For a judgment award to the Plaintiffs for three times the amount established at trial.

**For All Causes Of Action:**

22. For reasonable legal fees according to proof;

23. For costs of suit herein incurred; and

24. For such other and further relief as the court may deem proper.

## JUDICIAL NOTICE

The Plaintiffs wish to point out to the Court that they are NOT individuals schooled in the law, but are individuals exercising their rights under law for the proper action of the Court from the unacceptable actions on the part of the Defendants in question. As such, the Plaintiffs ask the court to look to the substance of their pleadings rather than the form and ask the court to take judicial notice pursuant to Section 32 of the Judiciary Act of 1789 (1 Stat. 73) which specifies that "courts respectively shall proceed and give judgment according as the right of the cause and matter in law shall appear unto them, without regarding any imperfections, defects, or want of form." The Plaintiffs further ask the court to take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence of the enunciation of principles stated in King v. Knoll (No. 04-04149-JAR), *Whitney v. State of New Mexico (113 F.3d 1170),* and *Haines v. Kerner (404 U.S. 519),* wherein the courts directed that those who are unschooled in law making complaints/pleadings shall have the court look to the substance of the complaint/ pleadings rather than the form and hereby makes the following pleadings/notices in the above referenced matter WITHOUT waiver of any recourse to relief of claims.

Plaintiff hereby invoke the Supremacy Clause. Under the Supremacy Clause, everyone must follow federal law in the face of conflicting state law. It has long been established that "a state statute is void to the extent that it actually conflicts with a valid federal statute" and that a conflict will be found either where compliance with both federal and state law is impossible or where the state law stands as an obstacle to the accomplishment and execution of the full

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 40

1   purposes and objectives of Congress. *Edgar v. Mite Corp., 457 U.S. 624, 631 (1982)*. Similarly,

2   we have held that "otherwise valid state laws or court orders cannot stand in the way of a federal

3   court's remedial scheme if the action is essential to enforce the scheme." *Stone v. City and*

4   *County of San Francisco, 968 F.2d 850, 862 (9th Cir. 1992), cert. denied, 113 S. Ct. 1050*

5   *(1993)*.

6          Plaintiff's hereby invoke *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938) which says that

7   unless there is an applicable federal law (including a provision in the Constitution, statute, or

8   treaty) state law applies.

9          Plaintiff hereby notices the court that herein lies evidence of serious statutory violations,

10  breach of covenant of good faith and fair dealing, conversion and unjust enrichment, and

11  misrepresentation/fraud resulting in irreparable harm, violation of their Fifth and Fourteen

12  Amendment rights to not be deprived of property without due process of law. Due to irreparable

13  harm and the strong likelihood of winning their case on the merits, Declaratory and injunctive

14  relief is properly granted to prevent dispossession of their real property, and to protect their due

15  process right by granting an evidentiary hearing and discovery. Plaintiffs seek documents that

16  determine the extent of violations and breaches described herein. Such documents in possession

17  of Defendants are evidence of unscrupulous lending practices, unjust enrichment, and fraudulent

18  foreclosure. This court has no discretion but must grant Plaintiff's requests lest it be a party to

19  misprision of felony[24].

20         Plaintiffs hereby notice the Court that attorneys for Defendants are bound by rules of

21  professional conduct in which they are prohibited from making statements or assertions to be

22  construed as testimony because they have no first-hand knowledge. There must be at least one

---

24  [24] MISPRISION OF FELONY: U.S. CODE, TITLE 18, PART 1,
    CHAPTER 1, SECTION 4 stipulates: 'Whoever, having knowledge of the actual commission of
25  a felony cognizable by a court of the United States, conceals and does not as soon as possible
    make known the same to some Judge or other person in civil or military authority under the
26  United States, shall be fined under this title or imprisoned not more than three years, or both'.
    In *Stump v. Sparkman, 435 U.S. 349 at 360 (1978)*, the Supreme Court confirmed that a judge
27  would be immune from suit only if he did not act outside of his judicial capacity and/or was not
    performing any act expressly prohibited by statute. See *Block, Stump v Sparkman and the*
28  *History of Judicial Immunity, 4980 Duke L.J. 879 (1980)*.

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 41

1    competent fact witness available to testify on behalf of Defendants in response to all of

2    Plaintiff's claims.

3           Plaintiffs hereby notice the Court that all responses by Defendants must be verified.

4           Plaintiffs hereby notice the Court that it is bound to adhere to the Federal Rules of Civil

5    Procedure, Federal Rules of Evidence, Arizona state law, the Uniform and Arizona Commercial

6    Codes and United States Constitution.

7           Plaintiffs hereby invoke the Full Faith & Credit Clause, providing that the various states

8    must recognize legislative acts, public records, and judicial decisions of the other states within

9    the United States.

10

11   Date: Aug. 13, 2010                                  Respectfully submitted,

12

13                                                        Jonathan B. Woods

14

15                                                        Kerrie Woods

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 42

## <u>VERIFICATION</u>

We, JONATHAN B. WOODS and KERRIE WOODS, are the Plaintiffs in the above-entitled action. We have read the foregoing Verified Complaint for Damages and know the contents thereof. The facts and allegations contained therein are true and correct of our own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, we believe them to be true.

We declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Gilbert, Arizona.

Dated: Aug. 13, 2010

Jonathan B. Woods

Kerrie Woods

AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE - 43

Exhibit A

**The Talon Group**
RECORDING REQUESTED BY

Name: Taylor, Bean & Whitaker Mortgage Corp.

RETURN TO

Name:   Taylor, Bean &  Whitaker Mortgage Corp.
Address: 1417 North Magnolia Ave.
        Ocala, FL 34475

5041052-10-1-1--
Yorkm

4/6 - 5041052   1/1

[Space Above This Line For Recording Data]

# DEED OF TRUST

| FHA CASE NO. |
| --- |
| 023-2879230-703 |

MIN: 100029500026327944

THIS DEED OF TRUST ("Security Instrument") is made on July 31, 2008.
The trustor is JONATHAN B. WOODS and KERRIE WOODS aka KERRIE B. WOODS Husband and Wife, As
Community Property with Right of Survivorship

("Borrower"), whose mailing address is

3930 EAST CODY AVENUE, Gilbert, AZ 85234

. The trustee is

First American Title Ins. Co. a CA corp.

("Trustee"), whose mailing address is

P.O. Box 2922, Phoenix, AZ  85062

. The beneficiary is Mortgage
Electronic Registration Systems, Inc. ("MERS"). MERS is a separate corporation that is acting solely as nominee for Lender
and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. Taylor, Bean & Whitaker Mortgage
Corp.

("Lender") is organized and existing

under the laws of FL                                                                                                    , and
has a mailing address of 1417 North Magnolia Ave, Ocala, FL 34475

Borrower owes Lender the principal sum of Two Hundred Thirty Five Thousand Four Hundred Eighty and no/100
Dollars (U.S. $235,480.00                            ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on August 01, 2038
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and
the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by
the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with
interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and
conveys to Trustee, in trust, with power of sale, the following described property located in Maricopa

County, Arizona:

ARIZONA FHA DEED OF TRUST                                                                                      6/96

MERS
ITEM T9658L1 (0709)

*0242052632794*

GreatDocs™
(Page 1 of 7)

T9658_20080410.100002

Exhibit A

See Attached Exhibit A.

which has the address of                    **3930 EAST CODY AVENUE**
                                                    [Street]

   **GILBERT**              Arizona                **86234**              ("Property Address");
   [City]                                    [Zip Code]

  TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

  BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

  THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

  **1.** **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

  **2.** **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

  Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

  If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

  The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the

**ARIZONA FHA DEED OF TRUST**
MERS
ITEM T9656L2 (0709)                  *GreatDocs™*
                                    *(Page 2 of 7)*

Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

    3.    **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

    4.    **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

    In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

    5.    **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    6.    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    7.    **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

    If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then

**ARIZONA FHA DEED OF TRUST**
MERS
ITEM T9658L3 (0709)

Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

   (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

   (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

   (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

   (e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within
from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **eight months**                                    from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.  **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11.  **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of

Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of

rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. After the time required by applicable law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☒ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] | |

ARIZONA FHA DEED OF TRUST
MERS
ITEM T9658L8 (0709)

GreatDocs™
(Page 6 of 7)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
JONATHAN B. WOODS                -Borrower

_____ (Seal)
KERRIE WOODS                     -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

Witness:                         Witness:

_____    _____

State of Arizona            )
                            ) SS
County of   Maricopa        )

The foregoing instrument was acknowledged before me this 31st day of July 2008 (date) by

Jonathan B. Woods and Kerrie Woods

(person[s] acknowledging).

OFFICIAL SEAL
KATHLEEN T. VEGLIA
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Nov. 3, 2010

_____
Notary Public

My commission expires: 11-03-10

ARIZONA FHA DEED OF TRUST
MERS
ITEM T9658L7 (0709)

GreatDocs™
(Page 7 of 7)

No. 416-5041052

## EXHIBIT "A"

Lot 432, of CAROL RAE RANCH, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 395 of Maps, Page 24 and Affidavits of Correction recorded as 95-345898, as 96-0353476 and as 96-0740382, all of Official Records.

20080681375

# FHA PLANNED UNIT DEVELOPMENT RIDER

FHA CASE NO.

023-2879230-703

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **31st** day of **July 2008** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **Taylor, Bean & Whitaker Mortgage Corp.**

("Lender") of the same date and covering the property described in the Security Instrument and located at:

**3930 EAST CODY AVENUE**
**GILBERT, AZ 85234**
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

**CAROL RAE RANCH**
[Name of Planned Unit Development Project]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

2/91
GREATLAND ■
To Order Call: 1-800-530-9393 □Fax 616-791-1131

ITEM T8543L1 (9612)                    *(Page 1 of 2 pages)*



*0231322632794*

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this FHA Planned Unit Development Rider.

_____ (Seal)
JONATHAN B. WOODS            -Borrower

_____ (Seal)
KERRIE WOODS                 -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

*[Sign Original Only]*

20080681375
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL



The foregoing instrument is an
**electronically prepared**
full, true and correct copy
of the original record in this
office.
Attest:  02/12/2010  12:49:26 PM

By _____ Recorder




**Bank of America** 〰

**Home Loans**

P.O. Box 5170
SIMI VALLEY, CA 93062-5170



Send Correspondence to:
P.O. Box 5170
Simi Valley, CA 93062-5170

Business Address:
450 American Street
Simi Valley, CA 93065-6285

Notice Date:  August 23, 2009

Account No.:  22583812

Property Address:
3930 East Cody Avenue
Gilbert, AZ 85234

Jonathan Woods & Kerrie Woods
3930 East Cody Avenue
Gilbert, AZ  85234

Welcome!

Effective September 01, 2009, the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from Taylor, Bean & Whitaker to BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A. ("BAC Home Loans")

**NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS:**

The transfer of the servicing of your mortgage loan does not affect any term or condition of the mortgage instruments, other than directly related to the servicing of your loan.  Except in limited circumstances, the law requires that your *present servicer* send you this notice at least 15 days before the effective date of transfer, or at closing.  Your *new servicer* must also send you this notice no later than 15 days after this effective date or at closing.  However, in this case, all necessary information is combined in this one notice.

**YOUR PRESENT SERVICER:**

Your *present servicer* is Taylor, Bean & Whitaker.  If you have any questions relating to the transfer of servicing from Taylor, Bean & Whitaker, call Customer Service, toll-free, at 1-888-225-2164 between 08:00 AM to 05:00 PM, Eastern Standard Time, Monday through Friday.

**YOUR NEW SERVICER CONTACT AND PAYMENT REMITTANCE ADDRESS:**

Your *new servicer* will be BAC Home Loans.  The business address for BAC Home Loans is:  450 American Street, Simi Valley, CA 93065-6285.  The address to send correspondence is:  P.O. Box 5170, Simi Valley, CA 93062-5170.  The address to send your first payment is:  P.O. Box 10334, Van Nuys, CA 91410-0334.  The toll-free telephone number of BAC Home Loans is 1-800-437-5760.  If you have any questions relating to the transfer of servicing to your new servicer, call BAC Home Loans Customer Service, toll-free, at 1-800-437-5760 between 8am to 9pm Eastern Time, Monday through Friday.  Your call may be monitored or recorded to ensure quality service.

Please write the BAC Home Loans loan number on all checks and correspondence and have your loan number available when you call.  Your complete loan file is being transferred to your *new servicer*.

**INFORMATION CONCERNING YOUR PAYMENTS AND OPTIONAL INSURANCE:**

We are required by law to inform you that the date that Taylor, Bean & Whitaker will stop accepting payments from you is August 05, 2009.  The date that your *new servicer*, BAC Home Loans, will start accepting payments from you is August 06, 2009.  Send all payments on or after that date to BAC Home Loans.  BAC Home Loans will send you new billing statements.  If you have a payment due before you receive your new billing statement, write your BAC Home Loans account number (22583812) on your check and mail it to BAC Home Loans at the payment address shown above.  Please note that your account information is subject to change to reflect disbursements that are made by, and payments that are due to, your prior lender.

If your previous servicer was automatically drafting/deducting your monthly payment from your bank account, please disregard the coupon attached below because BAC Home Loans will continue this service without interruption.  You will receive more information from BAC Home Loans about this service within a few days.  If you wish to discontinue this service, please contact our Customer Service Department.

If you have chosen to purchase life, disability, accidental death or any other type of optional insurance this transfer may affect your right to continue receiving such insurance.  After the transfer of servicing of your loan, the premium for any optional insurance will no longer be collected and payments for any premium due for your optional insurance will not be remitted. If you want to maintain your optional insurance, you should contact your insurance provider directly to determine whether your optional insurance can be continued and what steps you need to take to do so.  This transfer does not affect your homeowner's insurance coverage.  If you have any questions about optional insurance, please contact our affiliate, Banc of America Insurance Services. (BAIS) at 1-800-641-5298. BAIS has an array of high quality, affordable insurance products including homeowners, earthquake, flood, life, disability and fixed annuities products to help protect you and your home.*

This communication is from BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A.

**BAC Home Loans is required by law to inform you that this communication is from a debt collector attempting to collect debt, and any information obtained will be used for that purpose.**
We may charge you a fee for any payment returned or rejected by your financial institution, subject to applicable law.
SEE REVERSE SIDE FOR IMPORTANT INFORMATION                          PSGBRD01 8165 3/11/2008

---

**PAYMENT INSTRUCTIONS**

- Make your check payable to BAC Home Loans Servicing, LP
- Write your account number on your check or money order
- Don't attach your check to the payment coupon
- Please include coupon with payment
- Don't include correspondence
- Don't send cash

For all full month payments periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month.  For partial months, interest is calculated daily on the basis of a 365 day year.

Account Number: 22583812-7
Jonathan Woods
3930 East Cody Avenue

Please update e-mail information on the reverse side of this coupon.

Prior Loan # 2632794
SRCC# 12107

BAC Home Loans
PO Box 10334
Van Nuys CA 91410-0334

|լկ.....|լ....|

| Payment Due | 1866.3 |
|---|---|

| Additional Principal | |
|---|---|
| Additional Escrow | |
| Total | |

*Exhibit B*

0225838127000001866350000000000

If the terms of your loan provide for an escrow account to pay taxes and/or insurance, BAC Home Loans may need to re-analyze your escrow payment amount and make any necessary adjustments. In compliance with the Real Estate Settlement Procedures Act (RESPA), BAC Home Loans analyzes escrow accounts utilizing the aggregate method.

## HELPFUL TIP - NOTIFY YOUR INSURANCE CARRIER:

You should notify your insurance company to list BAC Home Loans as the mortgagee on your policy. The Mortgagee Clause should read as follows:

BAC Home Loans Servicing, LP
Its Successors and/or Its Assigns ATIMA
Insurance Department, TX2-977-01-03 PO Box 961206
Fort Worth, TX 76161-0206

---

### BORROWER'S RIGHTS

You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding BAC Home Loans' servicing of your loan, it must be sent to the following address:

**BAC Home Loans**
**Customer Service Correspondence CA6-919-01-41**
**P.O. Box 5170**
**Simi Valley, CA  93062-5170**

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-Business-Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

---

### CREDIT REPORTING NOTICE

We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

---

Bank of America, N.A. Member FDIC. Bank of America, N.A. and BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A. are Equal Housing Lenders. © 2009 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved. Some products may not be available in all states. This is not a commitment to lend. Restrictions apply.

Account Number: 22583812
E-mail use: Providing your e-mail address below will allow us to send you information on your account
Jonathan Woods E-mail address



Kerrie Woods E-mail address

How we post your payments: All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an additional amount applied to future payments, rather than principal reduction.

Postdated checks: Postdated checks will be process on the date received unless a loan counselor agrees to honor the date written on the check as a condition of a repayment plan.



**Bank of America Privacy Policy for Consumers 2009**
**Trust. Respect. Integrity**
Our privacy commitment to you.

To learn more about how Bank of America manages Customer Information and what actions you can take, please continue reading.
This document includes information about:
1. Making the security of information a priority
2. Collecting your information
3. Managing information about you
4. Honoring your preferences
5. Actions you can take
6. Guarding your own information
7. Other privacy commitments
8. Bank of America companies

This policy covers Customer Information, which means personally identifiable information about a consumer or a consumer's current or former customer relationship with Bank of America. The Bank of America Privacy Policy for Consumers is provided to you as required by law and applies to our companies identified in Section 8, *Bank of America companies*. This policy applies to consumer customer relationships established in the United States and is effective April 27, 2009.

**1. Making the security of information a priority**

Keeping financial information secure is one of our most important responsibilities. We maintain physical, electronic and procedural safeguards to protect Customer Information. Appropriate employees are authorized to access Customer Information for business purposes only. Our employees are bound by a code of ethics that requires confidential treatment of Customer Information and are subject to disciplinary action if they fail to follow this code.

**2. Collecting your information**

We collect and use various types of information about you and your accounts to service your accounts, save you time and money, better respond to your needs and manage our business and risks. Customer Information is categorized in the following six ways:
A. Identification Information -- information that identifies you, such as name, address, telephone number and Social Security number.
B. Application Information -- information you provide to us on applications and through other means that will help us determine if you are eligible for products you request. Examples include assets, income and debt.
C. Transaction and Experience Information -- information about transactions and account experience, as well as information about our communications with you. Examples include account balances, payment history, account usage and your inquiries and our responses.
D. Consumer Report Information -- information from a consumer report. Examples include credit score and credit history.
E. Information from Outside Sources -- information from outside sources regarding employment, credit and other relationships that will help us determine if you are eligible for products you request. Examples include employment history, loan balances, credit card balances, property insurance coverage and other verifications.
F. Other General Information -- information from outside sources, such as data from public records, that is not assembled or used for the purpose of determining eligibility for a product or service. As required by the USA PATRIOT Act, we also collect information and take actions necessary to verify your identification.

**3. Managing information about you**

**Managing information within Bank of America**

Bank of America is made up of a number of companies, including financial service providers, such as our brokerage company and credit card company, and nonfinancial companies, such as our operations and servicing subsidiaries.

Bank of America may share any of the categories of Customer Information among our companies. For example, sharing information allows us to use information about your ATM, credit card and check card transactions to identify any unusual activity and then contact you to determine if your card has been lost or stolen.

We occasionally receive medical or health information from a customer if, for example, a customer applies for insurance from us. We also may obtain information from insurance support organizations not affiliated with Bank of America that prepare and provide reports to others as well as to us. We do not share medical or health information among our companies, except to maintain or collect on accounts, process transactions, service customer requests or perform insurance functions to the extent permitted by law.

**Managing information with companies that work for us**

We may share any of the categories of Customer Information with companies that work for us, including companies located outside the United States. All nonaffiliated companies that act on our behalf and receive Customer Information from us are contractually obligated to keep the information we provide to them confidential, and to use the Customer Information we share only to provide the services we ask them to perform. These companies may include financial service providers, such as payment processing companies, and nonfinancial companies, such as check printing and data processing companies.

In addition, we may share any of the categories of Customer Information with companies that work for us in order to provide marketing support and other services, such as a service provider that distributes marketing materials. These companies may help us to market our own products and services or other products and services that we believe may be of interest to you. Please note that some of our own companies may provide marketing support and other services for us as well.

**Sharing information with third parties (for customers with credit cards and Sponsored Accounts)**

We may share Identification Information, Transaction and Experience Information, as well as Other General Information we collect about each of your (1) Bank of America credit card account(s) and (2) Sponsored Accounts at Bank of America, with selected third parties.
1. Credit card account information, whether co-branded or not, may be shared with third parties.
2. Sponsored Account information may be shared with third parties. Sponsored Accounts are non-credit card accounts or services provided by Bank of America that are also endorsed, co-branded or sponsored by other organizations. Examples of these organizations include colleges, sporting teams, retailers and other affinity organizations, such as charities. Sponsored Accounts may include deposit accounts or other banking services provided by Bank of America, such as a savings account co-branded with a baseball team. You will know whether an account is a Sponsored Account by the appearance of the name or logo of the sponsoring organization on account materials, such as statements and marketing materials.
If you are unsure whether any of your accounts are Sponsored Accounts, please contact 1.888.341.5000.  We may share information about credit cards and Sponsored Accounts with selected third parties, including:
· Financial services companies (such as insurance agencies or companies and mortgage brokers and organizations with whom we have agreements to jointly market financial products);
· Nonfinancial companies (such as retailers, travel companies and membership organizations); and
· Other companies (such as nonprofit organizations).

The sharing of information, as described in this section, is limited to credit card and Sponsored Account information. Please see Section 4, *Honoring your preferences* to learn how you may choose to opt out of this sharing.

**Disclosing information in other situations**

We also may disclose any of the categories of Customer Information to credit bureaus and similar organizations and when required or permitted by law. For example, Customer Information may be disclosed in connection with fraud prevention or investigation, risk management and security, and recording mortgages in public records.

**4. Honoring your preferences**

You have choices when it comes to how Bank of America shares and uses information. Sharing information with third parties (for customers with credit cards and Sponsored Accounts)

If you have a Bank of America credit card or Sponsored Account, you may request that we not share information about these accounts with third parties. If you request that we not share information with third parties, we may still share information:

· Where permitted or required by law as discussed in Section 3 under *Managing Information within Bank of America*;
· With our service providers as discussed in Section 3 under *Managing information with companies that work for us*; and
· With other financial companies with whom we have joint marketing agreements.

If you have multiple credit cards or Sponsored Accounts, you will need to express your preference for each account separately. When any customer on a joint account requests that we not share with third parties, that preference is applied to the entire account.

**Sharing among Bank of America companies**
You may request that Application Information, Consumer Report Information and Information from Outside Sources not be shared among Bank of America companies. For sharing among Bank of America companies, each customer may tell us his or her preferences individually, or you may tell us the preferences for any other customers who are joint account holders with you.

**Direct marketing**
You may choose not to receive direct marketing offers -- sent by postal mail, telephone and/or e-mail -- from Bank of America. These preferences apply to all marketing offers from us and from companies working for us. To minimize the amount of telephone solicitation our customers receive, Bank of America does not offer nonfinancial products and services through telephone solicitations. Direct marketing offers from us may include information about products and services we believe may be of interest to you.

If you elect not to receive direct marketing offers by postal mail, telephone and/or e-mail, please note that we may continue to contact you as necessary to service your account and for other nonmarketing purposes. You may also be contacted by your client relationship manager or assigned account representative, if applicable. Bank of America may also continue to provide marketing information in your regular account mailings and statements, including online and ATM communications.

Each customer may opt out of each direct marketing option individually. Since marketing programs may already be in progress, it may take up to 12 weeks for your postal mail opt-out to be fully effective. When you opt out of direct marketing by postal mail or telephone, your opt-out will last for five (5) years. After that, you may choose to renew your opt-out for another five-year period.

**5. Actions you can take**
You can tell us your preferences by:
· Notifying us at bankofamerica.com/privacy and entering your information on our secure Web site
· Calling us toll free at 1.888.341.5000
· Talking to a customer representative at a banking center or to your client relationship manager

You can make sure information is accurate by:
· Accessing your account information (for example, on a statement or in response to specific requests)
· Telling us if it is incorrect by calling or writing to us at the telephone number or appropriate address for such changes on your statement or other account materials

**6. Guarding your own information**
Bank of America recommends that you take the following precautions to guard against the disclosure and unauthorized use of your account and personal information:
· Review your monthly account statements and report any suspicious activity to us immediately.
· Do not respond to e-mails requesting account numbers, passwords or PINs. Call the institution to verify the legitimacy of the e-mail.
· Memorize PINs and refrain from writing PINs, Social Security numbers, debit or credit card numbers where they could be found.
· Shred documents containing any sensitive information before discarding, e.g. bank statements.
· Confirm that an Internet site is secure by checking that the URL (Web address) begins with "https".
· Review your credit report at least once every year to make sure all information is up to date. For a free copy of your credit bureau report, contact www.annualcreditreport.com or call 1.877.322.8228.
· If you think you have been a victim of identity theft or fraud, you may contact the Federal Trade Commission (FTC) to report any incidents and to receive additional guidance on steps you can take to protect yourself. Contact the FTC at www.FTC.gov/idtheft or 1.877.438.4338.
· For additional information on protecting your information, please visit bankofamerica.com/privacy.

**Keeping up to date with our Privacy Policy**
We may make changes to this policy at any time and will inform you of changes, as required by law. To receive the most up-to-date Privacy Policy, you can visit our Web site at: bankofamerica.com/privacy or call us at 1.888.341.5000.

**7. Other privacy commitments**
This notice constitutes the Bank of America Do Not Call Policy under the Telephone Consumer Protection Act for all consumers and is pursuant to state law. When you talk with Bank of America by telephone your conversation may be monitored or recorded by us. For information on our Online Practices Privacy Policy please visit www.bankofamerica.com/onlinepolicy. You may have other privacy protections under state laws, such as Vermont and California. To the extent these state laws apply, we will comply with them with regard to our information practices.

For Nevada residents only. We are providing you this notice pursuant to state law. You may be placed on our internal Do Not Call List by following the directions in the Section titled "Actions you can take". Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number- 702.486.3132; e-mail: BCPINFO@ag.state.nv.us. Bank of America, PO Box 25118, FL1-300-02-07, Tampa, Florida 33633-0900; Phone number- 888.341.5000; email: Click on "Contact Us" at bankofamerica.com/privacy.

For Vermont and California residents only. The information sharing practices described above are in accordance with federal law. Vermont and California law place additional limits on sharing information about Vermont and California residents so long as they remain residents of those states. Vermont: In accordance with Vermont law, Bank of America will not share information we collect about Vermont residents with companies outside of Bank of America, except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. Bank of America will not share Application Information, Consumer Report Information and Information from Outside Sources about Vermont residents among the Bank of America companies except with the authorization or consent of the Vermont resident. California: In accordance with California law, Bank of America will not share information we collect about California residents with companies outside of Bank of America, except as permitted by law, such as with the consent of the customer, to service the customer's accounts, or to fulfill on rewards or benefits. We will limit sharing among our companies to the extent required by applicable California law.

**8. Bank of America companies**

This Privacy Policy applies to the following Bank of America companies that have consumer customer relationships:

**Banks and Trust Companies**
Bank of America, N.A.
U.S. Trust Company of Delaware

**Credit Card**
Bank of America Consumer Card Services, LLC
Bank of America
Fleet Credit Card Services, L.P.

**Brokerage and Investments**
BACAP Alternative Advisors, Inc.
Banc of America Capital Advisors LLC
Banc of America Finance Services, Inc.
Banc of America Investment Advisors, Inc.
Banc of America Investment Services, Inc.
Banc of America Securities LLC
Columbia Management Advisors, LLC
Columbia Management Distributors, Inc.
Columbia Wagner Asset Management, L.P.
U.S. Trust Hedge Fund Management, Inc.

**Insurance and Annuities**
BA Agency, Inc.
BA Insurance Services, Inc.
Banc of America Agency, LLC
Banc of America Agency of Nevada, Inc.
Banc of America Agency of Texas, Inc.
Banc of America Insurance Services, Inc.,
  dba in New York: Banc of America Insurance Agency
General Fidelity Insurance Company
General Fidelity Life Insurance Company

**Real Estate**
BAC Home Loans Servicing, LP
Countrywide Home Loans, Inc.
Countrywide Home Loans of Minnesota, Inc.
Countrywide Home Loans of Texas, Inc.
Countrywide Home Loans of Tennessee, Inc.
Countrywide Mortgage Ventures, LLC
HomeFocus Services, LLC

KB Home Mortgage, LLC
Landsafe, Inc.
LandSafe Services, Inc.
LandSafe Credit, Inc.
LandSafe Title of California, Inc.
LandSafe Title of Florida, Inc.
LandSafe Title of Texas, Inc.
LandSafe Title of Washington, Inc.
LandSafe Title of Ohio, Inc.
LandSafe Title of Alabama, Inc.
LandSafe Title of Maryland, Inc.
NationsCredit Financial Services Corporation

For a current list of Bank of America companies that have consumer customer relationships and to which this policy applies, please visit our Web site at bankofamerica.com/privacy.

## Federally Required Affiliate Marketing Notice

**YOUR CHOICE TO LIMIT MARKETING**

- The Bank of America companies listed (see inside) are providing this notice.

- Federal law gives you the right to limit some but not all marketing from all the Bank of America affiliated companies. Federal law also requires us to give you this notice to tell you about your choice to limit marketing from all the Bank of America affiliated companies.

- You may limit all the Bank of America affiliated companies, such as the banking, loan, credit card, insurance and securities companies, from marketing their products or services to you based upon your personal information that they receive from other Bank of America companies. This information includes your income, your account history and your credit score.

- Your choice to limit marketing offers from all the Bank of America affiliated companies will apply for at least 5 years from when you tell us your choice. Before your choice to limit marketing expires, you will receive a renewal notice that will allow you to continue to limit marketing offers from all the Bank of America affiliated companies for at least another 5 years.

- You may tell us your choice to limit marketing offers, and you may tell us the choices for other customers who are joint account holders with you.

- This limitation will not apply in certain circumstances, such as when you have an account or service relationship with the Bank of America company that is marketing to you.

- For individuals with business purpose accounts, this limitation will only apply to marketing to individuals and not marketing to a business.

To limit marketing offers, contact us at 800.282.2884

## Bank of America Companies:

**Banks and Trust Companies**
Bank of America, N.A.

**Credit Card**
Bank of America Consumer Card Services, LLC Bank of America Fleet Credit Card Services, L.P.

**Brokerage and Investments**
Bank of America Capital Advisors LLC
Banc of America Finance Services, Inc.
Banc of America Investment Advisors, Inc.
Banc of America Investment Services, Inc.
Banc of America Securities LLC
U.S. Trust Hedge Fund Management Inc. UST Securities Corp.
White Ridge Investment Advisors LLC

**Insurance and Annuities**
BA Agency, Inc.
BA Insurance Services, Inc.
Balboa Insurance Company
Balboa Life Insurance Company
Balboa Life Insurance Company of New York Balboa Warranty Services Corporation
Banc of America Agency, LLC
Banc of America Agency of Nevada, Inc.
Banc of America Agency of Texas, Inc.
Banc of America Insurance Services, Inc., dba in New York:  Banc of America Insurance Agency
Countrywide Insurance Services, Inc.,
Countrywide Insurance Services of Arizona, Inc.
DirectNet Insurance Agency, Inc.
General Fidelity Insurance Company
General Fidelity Life Insurance Company
Meriplan Insurance Company
Newport E & S Insurance Company
Newport Insurance Company

**Real Estate**
BAC Home Loans Servicing, LP
Countrywide Home Loans, Inc.
Countrywide Home Loans of Minnesota, Inc.
Countrywide Home Loans of Texas, Inc.
Countrywide Home Loans of Tennessee, Inc.
Countrywide Mortgage Ventures, LLC
HomeFocus Services, LLC
HomeFocus Tax Services, LLC
KB Home Mortgage, LLC
Landsafe, Inc.
LandSafe Services, Inc.
LandSafe Credit, Inc.
LandSafe Title of California, Inc.
LandSafe Title of Florida, Inc.
LandSafe Title of Texas, Inc.
LandSafe Title of Washington, Inc.
LandSafe Title of Ohio, Inc.
LandSafe Title of Alabama, Inc.
LandSafe Title of Maryland, Inc.
NationsCredit Financial Services Corporation

**Merchant Services**
BA Merchant Services, LLC

**Leasing Companies**
BAL Corporate Aviation, LLC
BAL Energy Holding, LLC
BAL Energy Management, LLC
BAL Investment & Advisory, Inc.
BAL Solar I, LLC
BAL Solar II, LLC
BAL Solar III, LLC
Banc of America Leasing & Capital, LLC
Banc of America Public and Institutional Financial Funding, LLC
Banc of America Public Finance Corp.
BAPCC II, LLC
Pydna Corp.



**Bank of America**
Bank of Opportunity®

©2009 Bank of America Corporation
00-36-0405B (04/2009

_Exhibit C_

**First American Title**

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20091027282   11/06/2009   01:28
ELECTRONIC RECORDING

RECORDING REQUESTED BY:
RECONTRUST COMPANY
**AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:**
BAC Home Loans Servicing, LP
400 COUNTRYWIDE WAY  SV-35
SIMI VALLEY, CA  93065

4299761-3-3-1--
hoyp

TS No. 09-0162267
TITLE ORDER#:  4299761

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST ARIZONA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND
TRANSFERS TO:
 **BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING
LP.**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 07/31/2008,
EXECUTED BY: JONATHAN D. WOODS AND KERRIE WOODS AKA KERRIE B. WOODS
HUSBAND AND WIFE, AS COMMUNITY PROPERTY WITH RIGHT OF
SURVIVORSHIP,TRUSTOR: TO FIRST AMERICAN TITLE INS. CO. A CA CORP., TRUSTEE
AND RECORDED AS INSTRUMENT NO. 20080681375 ON 08/05/2008, IN BOOK N/A, PAGE
N/A, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF MARICOPA
COUNTY, IN THE STATE OF ARIZONA.

**SEE ATTACHED EXHIBIT A  LEGAL DESCRIPTION**

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED:  NOV 0 5 2009

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

BY:

State of: _____   )
County of: _____   )       Leticia Quintana, Assistant Secretary

On _____ before me _____, personally
appeared _____, know to me (or proved to me on the
oath of _____ or through _____) to be the person whose name is subscribed
to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes
and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

_Form azasgn (01/02)_

_Exhibit C_

STATE OF CALIFORNIA

COUNTY OF VENTURA

On ___11/05/2009___ before me, ___Janet L. Koch___, Notary Public, personally appeared
Leticia Quintana___, who proved to me on the basis of satisfactory evidence to be the
person(s) whose names(s) is/are subscribed to within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorizes capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument..

I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

Witness my hand and official seal.

JANET L. KOCH
Commission # 1776832
Notary Public - California
Ventura County
My Comm. Expires Oct 29, 2011

_Janet L. Koch_
Janet L. Koch

TS # 09-0162267
PUB# 0000
LOAN TYPE: FHA

# "EXHIBIT A"

## LEGAL DESCRIPTION

LOT 432, OF CAROL RAE RANCH, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 395 OF MAPS, PAGE 24 AND AFFIDAVITS OF CORRECTION RECORDED AS 95-345898, AS 96-0353476 AND AS 96-0740382, ALL OF OFFICIAL RECORDS.

*Form legaldesc (07/01)*

20091027282
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL



The foregoing instrument is an
**electronically prepared**
full, true and correct copy
of the original record in this
office.
Attest: 02/12/2010  12:49:33 PM

By _____ Recorder

**First American Title**      *Exhibit D*

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082
WHEN RECORDED MAIL TO:
  BAC HOME LOANS SERVICING, LP
  400 COUNTRYWIDE WAY SV-35
  SIMI VALLEY, CA 93065
  Attn: FORECLOSURE DEPT
TS No. 09-0162267
Title Order No. 4299761
APN No. 304-07-474

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20091027283   11/06/2009   01:28
ELECTRONIC RECORDING

4299761-3-3-2--
hoyp

## SUBSTITUTION OF TRUSTEE ARIZONA

The undersigned beneficiary hereby appoints RECONTRUST COMPANY, N.A. 2380 Performance Dr, TX2-985-07-03 Richardson, TX 75082, SUCCESSOR TRUSTEE under the deed of trust executed by JONATHAN B. WOODS AND KERRIE WOODS AKA KERRIE B. WOODS HUSBAND AND WIFE, AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP, as trustor(s), in which MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., is named beneficiary, and FIRST AMERICAN TITLE INS. CO. A CA CORP., as original trustee, and Recorded on 08/05/2008, in Maricopa County; Arizona, as Instrument Number 20080681375, Book N/A, Page N/A, and legally describing the trust property as

SEE ATTACHED EXHIBIT A - LEGAL DESCRIPTION

RECONTRUST COMPANY, N.A. HAS BEEN APPOINTED AS SUCCESSOR TRUSTEE.
RECONTRUST COMPANY, N.A. QUALIFIES AS A TRUSTEE OF THE TRUST DEED UNDER
ARIZONA REVISED STATUTES SECTION 33-803, SUBSECTION A. 5 BECAUSE IT IS A
NATIONAL ASSOCIATION REGULATED BY THE OFFICE OF THE COMPTROLLER OF THE
CURRENCY("OCC")

DATED: 11/05/2009                    BAC HOME LOANS SERVICING, LP FKA
                                     COUNTRYWIDE HOME LOANS SERVICING LP

State of: _____ )

County of: _____ )        Leticia Quintana, Assistant Secretary

On _____ before me _____, personally appeared Leticia Quintana, know to me (or proved to me on the oath of _____ or through _____ ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

                                     *Form azsub (08/06)*

*Exhibit D*

STATE OF CALIFORNIA

COUNTY OF VENTURA

On __11/05/2009__ before me, __Janet L. Koch__, Notary Public, personally appeared Leticia Quintana , who proved to me on the basis of satisfactory evidence to be the person(s) whose names(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorizes capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument..

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

JANET L. KOCH
Commission # 1776832
Notary Public - California
Ventura County
My Comm. Expires Oct 29, 2011

_Janet L. Koch_
Janet L. Koch

TS # 09-0162267
PUB# 0000
LOAN TYPE: FHA

# "EXHIBIT A"

## LEGAL DESCRIPTION

LOT 432, OF CAROL RAE RANCH, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 395 OF MAPS, PAGE 24 AND AFFIDAVITS OF CORRECTION RECORDED AS 95-345898, AS 96-0353476 AND AS 96-0740382, ALL OF OFFICIAL RECORDS.

*Form legaldesc (07/01)*

20091027283
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL



The foregoing instrument is an
**electronically prepared**
full, true and correct copy
of the original record in this
office.
Attest: 02/12/2010  12:49:36 PM

By ⟨signature⟩ Recorder

*Exhibit E*

**First American Title**

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20091027284  11/06/2009  01:28
ELECTRONIC RECORDING

4299761-3-3-3--
hoyp

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082
WHEN RECORDED MAIL TO:
BAC HOME LOANS SERVICING, LP
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065
Attn: FORECLOSURE DEPT
TS No. 09-0162267
Title Order No. 4299761
APN No. 304-07-474

## NOTICE OF TRUSTEE'S SALE ARIZONA

The following legally described trust property will be sold pursuant to the power of sale under that certain Deed of Trust Recorded on 08/05/2008, as Instrument Number 20080664755, Book N/A, Page N/A, in the records of Maricopa County, Arizona, at public auction to the highest bidder, In the Courtyard, by the Main Entrance to the Superior Court Building, 201 West Jefferson Phoenix on 02/16/2010 at 02:00 PM of said day.

SEE ATTACHED EXHIBIT A LEGAL DESCRIPTION. APN No: 304-07-474

The Deed of Trust and/or Beneficiary provide the following purported property location:
3930 EAST CODY AVENUE, GILBERT, Maricopa County, AZ 85234

Said sale will be made for cash (payable at time of sale), but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to pay the remaining principal sum of the note secured by said Deed of Trust, which includes interest thereon as provided in said note, advances, if any, under the terms of said Deed of Trust, interest on advances, if any, fees, charges and expenses of the Trustee and of the trust created by said Deed of Trust. The original sum of the note is $235,480.00. Trustee will accept only cash or cashier's check for reinstatement or price bid payment. Reinstatement payment must be paid before five o'clock P.M on the last day other than a Saturday or legal holiday before the date of the sale. The Purchaser at the sale, other than the beneficiary to the extent of his credit bid, shall pay the price no later than five o'clock P.M. of the following day, other than a Saturday or legal holiday.

Name and Address of Original Trustor: JONATHAN B. WOODS, and KERRIE B. WOODS, 3930 EAST CODY AVENUE, GILBERT, AZ 85234
Name and Address of Current Trustee: RECONTRUST COMPANY, N.A., 2380 Performance Dr, TX2-985-07-03 Richardson, TX 75082 FOR INFORMATION/SALE INFORMATION CALL: (800) 281-8219

Name and Address of Current Beneficiary: BANK OF AMERICA, 400 COUNTRYWIDE WAY SV-35, , SIMI VALLEY, CA 93065 PHONE: (800) 669-6650

RECONTRUST COMPANY, N.A. IS THE CURRENT TRUSTEE. RECONTRUST COMPANY, N.A. QUALIFIES AS A TRUSTEE OF THE TRUST DEED UNDER ARIZONA REVISED STATUTES SECTION 33-803, SUBSECTION A. 5., BECAUSE IT IS A NATIONAL ASSOCIATION REGULATED BY THE OFFICE OF THE COMPTROLLER OF THE CURRENCY("OCC")

*Exhibit E*

*Form aznos (05/08)*

DATED: November 05, 2009

RECONTRUST COMPANY, N.A.
As Trustee

STATE OF CALIFORNIA

BY: _____
Lucy Mansourian, Team Member

COUNTY OF VENTURA

On ___11/05/2009___ before me, ___Janet L. Koch___, Notary Public, personally appeared ___Lucy Mansourian___, who proved to me on the basis of satisfactory evidence to be the person(s) whose names(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorizes capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.,

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

JANET L. KOCH
Commission # 1776832
Notary Public - California
Ventura County
My Comm. Expires Oct 29, 2011

Janet L. Koch

THIS FIRM IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THE DEBT SET FORTH ON THIS NOTICE WILL BE ASSUMED TO BE VALID UNLESS YOU DISPUTE THE DEBT BY PROVIDING THIS OFFICE WITH A WRITTEN NOTICE OF YOUR DISPUTE WITHIN 30 DAYS OF YOUR RECEIPT OF THIS NOTICE, SETTING FORTH THE BASIS OF YOUR DISPUTE. IF YOU DISPUTE THE DEBT IN WRITING WITHIN 30 DAYS, WE WILL OBTAIN AND MAIL VERIFICATION OF THE DEBT TO YOU. IF THE CREDITOR IDENTIFIED IN THIS NOTICE IS DIFFERENT THAN YOUR ORIGINAL CREDITOR, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF YOU REQUEST THIS INFORMATION IN WRITING WITHIN 30 DAYS.

TS # 09-0162267
PUB# 0000
LOAN TYPE: FHA

# "EXHIBIT A"

## LEGAL DESCRIPTION

LOT 432, OF CAROL RAE RANCH, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 395 OF MAPS, PAGE 24 AND AFFIDAVITS OF CORRECTION RECORDED AS 95-345898, AS 96-0353476 AND AS 96-0740382, ALL OF OFFICIAL RECORDS.

*Form legaldesc (07/01)*

20091027284
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL



The foregoing instrument is an
**electronically prepared**
full, true and correct copy
of the original record in this
office.
Attest: 02/12/2010  12:49:39 PM

By _____ Recorder

*Exhibit F*



TS NO: 09-0162267

JONATHAN B. WOODS

3930 EAST CODY AVENUE

GILBERT, AZ   85234

*RCD   11-12-09*

*Exhibit F*

Form insert (03/01)

TS # 09-0162267
PUB# 0000
LOAN TYPE: FHA

# "EXHIBIT A"

## LEGAL DESCRIPTION

LOT 432, OF CAROL RAE RANCH, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 395 OF MAPS, PAGE 24 AND AFFIDAVITS OF CORRECTION RECORDED AS 95-345898, AS 96-0353476 AND AS 96-0740382, ALL OF OFFICIAL RECORDS.

*Form legaldesc (07/01)*

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082
WHEN RECORDED MAIL TO:
 BAC HOME LOANS SERVICING, LP
 400 COUNTRYWIDE WAY  SV-35
 SIMI VALLEY, CA  93065
 Attn: FORECLOSURE DEPT
TS No. 09-0162267
Title Order No. 4299761
APN No. 304-07-474

This is a true copy of the
document that was recorded on
11/06/2009 Instrument No.
20091027283

---

## SUBSTITUTION OF TRUSTEE ARIZONA

The undersigned beneficiary hereby appoints RECONTRUST COMPANY, N.A. 2380 Performance Dr,
TX2-985-07-03 Richardson, TX 75082, SUCCESSOR TRUSTEE under the deed of trust executed by
JONATHAN B. WOODS AND KERRIE WOODS AKA KERRIE B. WOODS HUSBAND AND
WIFE, AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP, as trustor(s), in which
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., is named beneficiary, and FIRST
AMERICAN TITLE INS. CO. A CA CORP., as original trustee, and Recorded on 08/05/2008, in
Maricopa County; Arizona, as Instrument Number 20080681375, Book N/A, Page N/A, and legally
describing the trust property as

SEE ATTACHED EXHIBIT A - LEGAL DESCRIPTION

RECONTRUST COMPANY, N.A. HAS BEEN APPOINTED AS SUCCESSOR TRUSTEE.
RECONTRUST COMPANY, N.A. QUALIFIES AS A TRUSTEE OF THE TRUST DEED UNDER
ARIZONA REVISED STATUTES SECTION 33-803, SUBSECTION A. 5, BECAUSE IT IS A
NATIONAL ASSOCIATION REGULATED BY THE OFFICE OF THE COMPTROLLER OF THE
CURRENCY("OCC")

DATED: 11/10/2009              BAC HOME LOANS SERVICING, LP FKA
                              COUNTRYWIDE HOME LOANS SERVICING LP

State of: _____  )


County of: _____  )    _____
                                  GULSHAN OOMERJEE, Assistant Secretary

On _____ before me Sandra E. Medina, personally appeared GULSHAN OOMERJEE, know
to me (or proved to me on the oath of _____ or through _____) to be the
person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she
executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

*Form azsubcopy (05/08)*

*Exhibit G*

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082
WHEN RECORDED MAIL TO:
BAC HOME LOANS SERVICING, LP
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065
Attn: FORECLOSURE DEPT
TS No. 09-0162267
Title Order No. 4299761
APN No. 304-07-474

*RC'D  11-25-09  Taped to front door*

## NOTICE OF TRUSTEE'S SALE ARIZONA

The following legally described trust property will be sold, pursuant to the power of sale under that certain Deed of Trust Recorded on 08/05/2008, as Instrument Number 20080681375, Book N/A, Page N/A, in the records of Maricopa County, Arizona, at public auction to the highest bidder: In the Courtyard, by the Main Entrance to the Superior Court Building, 201 West Jefferson Phoenix on 02/16/2010 at 02:00 PM of said day.

SEE ATTACHED EXHIBIT A - LEGAL DESCRIPTION.  APN No. 304-07-474

The Deed of Trust and/or Beneficiary provide the following purported property location:
3930 EAST CODY AVENUE, GILBERT, Maricopa County, AZ 85234

Said sale will be made for cash (payable at time of sale), but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to pay the remaining principal sum of the note secured by said Deed of Trust, which includes interest thereon as provided in said note, advances, if any under the terms of said Deed of Trust, interest on advances, if any, fees, charges and expenses of the Trustee and of the trust created by said Deed of Trust. The original sum of the note is $235,480.00. Trustee will accept only cash or cashier's check for reinstatement or price bid payment. Reinstatement payment must be paid before five o'clock P.M on the last day other than a Saturday or legal holiday before the date of the sale. The Purchaser at the sale, other than the beneficiary to the extent of his credit bid, shall pay the price no later than five o'clock P.M. of the following day, other than a Saturday or legal holiday.

Name and Address of Original Trustor: JONATHAN B. WOODS, and KERRIE B. WOODS, 3930 EAST CODY AVENUE, GILBERT, AZ 85234
Name and Address of Current Trustee: RECONTRUST COMPANY, N.A., 2380 Performance Dr, TX2-985-07-03 Richardson, TX 75082 FOR INFORMATION/SALE INFORMATION CALL: (800) 281-8219

Name and Address of Current Beneficiary: BANK OF AMERICA, 400 COUNTRYWIDE WAY SV-35, , SIMI VALLEY, CA 93065 PHONE: (800) 669-6650

RECONTRUST COMPANY, N.A. IS THE CURRENT TRUSTEE. RECONTRUST COMPANY, N.A. QUALIFIES AS A TRUSTEE OF THE TRUST DEED UNDER ARIZONA REVISED STATUTES SECTION 33-803, SUBSECTION A. 5., BECAUSE IT IS A NATIONAL ASSOCIATION REGULATED BY THE OFFICE OF THE COMPTROLLER OF THE CURRENCY("OCC")

*Exhibit G*

*Form aznos (05/08)*

TS # 09-0162267
PUB# 1006.74221
LOAN TYPE: FHA

# "EXHIBIT A"

## LEGAL DESCRIPTION

LOT 432, OF CAROL RAE RANCH, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 395 OF MAPS, PAGE 24 AND AFFIDAVITS OF CORRECTION RECORDED AS 95-345898, AS 96-0353476 AND AS 96-0740382, ALL OF OFFICIAL RECORDS.

*Form legaldesc (07/01)*

DATED: November 13, 2009

RECONTRUST COMPANY, N.A.
As Trustee

State of: _____ )   BY: _____ Tara Rennington _____
County of: _____ )        Tara Pennington, Team Member


On _____ before me _____, personally appeared
_____, know to me (or proved to me on the oath of
_____ or through _____ ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she executed the same for the purposes and
consideration therein expressed.


Witness my hand and official seal.


_____
Notary Public's Signature


THIS FIRM IS ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL
BE USED FOR THAT PURPOSE.  THE DEBT SET FORTH ON THIS NOTICE WILL BE
ASSUMED TO BE VALID UNLESS YOU DISPUTE THE DEBT BY PROVIDING THIS OFFICE
WITH A WRITTEN NOTICE OF YOUR DISPUTE WITHIN 30 DAYS OF YOUR RECEIPT OF
THIS NOTICE, SETTING FORTH THE BASIS OF YOUR DISPUTE.  IF YOU DISPUTE THE
DEBT IN WRITING WITHIN 30 DAYS, WE WILL OBTAIN AND MAIL VERIFICATION OF THE
DEBT TO YOU.  IF THE CREDITOR IDENTIFIED IN THIS NOTICE IS DIFFERENT THAN
YOUR ORIGINAL CREDITOR, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS
OF THE ORIGINAL CREDITOR IF YOU REQUEST THIS INFORMATION IN WRITING WITHIN
30 DAYS.

○ Order Dismissing Foreclosures on "Real Party in Interest" Ohio

*Exhibit H*

- **Archives**

  ○ July 2010
  ○ June 2010
  ○ May 2010
  ○ April 2010
  ○ March 2010
  ○ February 2010
  ○ January 2010
  ○ December 2009
  ○ November 2009
  ○ October 2009
  ○ September 2009
  ○ August 2009
  ○ July 2009
  ○ June 2009
  ○ May 2009
  ○ April 2009
  ○ March 2009
  ○ February 2009
  ○ January 2009
  ○ December 2008
  ○ November 2008
  ○ October 2008
  ○ September 2008
  ○ August 2008
  ○ July 2008

# Main Contents

## MERS, INC., APPELLANT, VS. SOUTHWEST HOMES OF ARKANSAS, APPELLEE

September 23, 2009

MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., APPELLANT, VS. SOUTHWEST HOMES OF ARKANSAS, APPELLEE

No. 08-1299

SUPREME COURT OF ARKANSAS

*2009 Ark. LEXIS 121*

March 19, 2009, Opinion Delivered



NOTICE:

THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE FINAL PUBLISHED VERSION.

**SUBSEQUENT HISTORY:** Rehearing denied by *Mortgage Elec. Registration Sys. v. Southwest Homes of Ark., Inc., 2009 Ark. LEXIS 458 (Ark., Apr. 23, 2009)*

**PRIOR HISTORY:** [*1]

APPEAL FROM THE BENTON COUNTY CIRCUIT COURT, NO. CIV07-223-2, HON. DAVID S. CLINGER, JUDGE.

**DISPOSITION:** AFFIRMED.

**COUNSEL:** George Nicholas Arnold - Counsel for the Appellant.

Howard Keith Morrison - Counsel for the Appellant.

Thomas D. Stockland - Counsel for the Appellee.

**JUDGES:** JIM HANNAH, Chief Justice. IMBER, DANIELSON and WILLS, JJ., concur.

**OPINION BY:** JIM HANNAH

**OPINION**

**JIM HANNAH, Chief Justice**

Mortgage Electronic Registration System, Inc. ("MERS") appeals a decision of the Benton County Circuit Court denying its motion to set aside a decree of foreclosure and to dismiss the foreclosure action. [1] MERS alleges that the circuit court erred in ordering foreclosure because as the holder of legal title it was a necessary party that was never served. We affirm the circuit court and hold that under the recorded deed of trust in this case, James C. East, as trustee under the deed of trust, held legal title. Because MERS was at most the mere agent of the lender Pulaski Mortgage Company, Inc., it held no property interest and was not a necessary party. As this case presents an issue of first impression, our jurisdiction is pursuant to *Arkansas Supreme Court Rule 1-2(b)(1)*.

[1] Mortgage Electronic Registration System, Inc.'s ("MERS") motion was [*2] entitled Motion to Set Aside Default Judgment; however, the circuit court found, and the parties agree, that MERS was never served. Because MERS was never served, it could not have failed to respond to that service and suffer a default judgment. The relief sought was that the decree of foreclosure be set aside and the foreclosure action be dismissed.

This case arises from foreclosure on a 2006 mortgage granted in a one-acre lot. A prior deed of trust also encumbered the property. In 2003, Jason Paul Lindsey and Julie Ann Lindsey entered into a deed of trust on a one-acre lot in Benton County to secure a promissory note. The lender on that deed of trust was Pulaski Mortgage, the trustee was James C. East, and the borrowers were the Lindseys. MERS was listed on the deed of trust as the "Beneficiary" acting "solely as nominee for Lender," and "Lender's successors and assigns." The second page of the deed of trust states that "the Borrower understands and agrees that MERS holds only legal title to the interests granted by the Borrower and further that MERS as nominee of the Lender has the right to exercise all rights of the Lender including foreclosure." The deed of trust was recorded.

In [*3] 2006, the Lindseys granted the subject mortgage on the same property to Southwest Homes of Arkansas, Inc. to secure a second promissory note. This mortgage was recorded. On February 9, 2007, Southwest Homes filed a Petition for Foreclosure in Rem against the Lindseys under the 2006 mortgage. The Lindseys, the Benton County Tax Collector, and "Mortgage Electronic Registration System, Inc. (Pulaski Mortgage Company)" were listed as respondents. Pulaski Mortgage was served; however, MERS was never served. Pulaski Mortgage did not file an answer.

[2] A Decree of Foreclosure in Rem was entered on April 4, 2007, and the property was auctioned to Southwest. An Order Approving and Confirming Commissioner's Sale was entered on May 8, 2007. In February 2008, MERS learned of the foreclosure and moved for relief, arguing it was a necessary party to the foreclosure action. The circuit court denied the motion, and this appeal followed.

[2] Pulaski Mortgage was the lender of record. No assignment of the deed of trust was recorded nor had Pulaski Mortgage's security interest been satisfied of record.

MERS asserts that it held legal title to the property and, therefore, it was a necessary party to any action [*4] regarding title to the property. The deed of trust indicates that MERS holds legal title and is the beneficiary, as well as the nominee of the lender. It further purports by contractual agreement with the borrower to grant MERS the power to "exercise any and all rights" of the lender, including the right of foreclosure. However the deed of trust provides that all payments are to be made to the lender, that the lender makes decisions on late payments, and that all rights to foreclosure are held by the lender.

No payments on the underlying debt were ever made to MERS. MERS did not service the loan in any way. It did not oversee payments, delinquency of payments, or administration of the loan in any way. Instead, MERS asserts to be a corporation providing electronic tracking of ownership interests in residential real property security instruments. *See In re MERSCORP, Inc. v. Romaine, 8 N.Y.3d 90, 861 N.E.2d 81, 828 N.Y.S.2d 266 (2006).* According to MERS, it was developed by the "real estate finance industry" and was designed to facilitate the sale and resale of instruments in "the secondary mortgage market, which include one of the government sponsored entities."

MERS contracts with lenders to track security [*5] instruments in return for an annual fee. *MERSCORP, supra.* Those who contract with MERS are referred to by MERS as "MERS members." According to MERS, MERS members contractually agree to appoint MERS as their common agent for all security instruments registered with MERS. [3] MERS asserts that it holds the authority to exercise the rights of the lender, and for that purpose, it holds bare legal title. Thus, it is alleged that a principal-agent relationship existed between MERS and Pulaski Mortgage under the contract terms of the deed of trust. [4]

[3] The Kansas Court of Appeals, in *Lankmark National Bank v. Kesler, 40 Kan. App. 2d 325, 192 P.3d 177 (2008),* likewise found that Mortgage Electronic Registration System, Inc. acts as an agent. We note the analysis in this case is consistent with our own but also note that the Kansas Supreme Court granted review of the *Landmark* case.

[4] MERS is listed as a nominee on the deed of trust. A nominee is "a person designated to act on behalf of another, usu. in a very limited way." *Black's Law Dictionary* 1076 (8th ed. 2004). A nominee is also a "person who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit [*6] of others." *Id.* As discussed above, MERS was not designated to act on behalf of another under the facts of this case. Further, it held no title in this case where title vested in the trustee, and finally, it received and distributed no funds for the benefit of others.

"An agent is a person who, by agreement with another called the principal, acts for the principal and is subject to his control." *Taylor v. Gill, 326 Ark. 1040, 1044, 934 S.W.2d 919, 922 (1996)* (quoting AMI 3d 701 (1989)). Thus, MERS, by the terms of the deed of trust, and its own stated purposes, was the lender's agent, including not only Pulaski Mortgage but also any successors and assigns.

MERS asserts authority to act, arguing that once it becomes the agent on a security instrument, it remains so for every MERS member lender who acquires ownership. This authority is alleged to arise from the contractual relationship between MERS and MERS members. Thus, MERS argues it may act to preserve the rights of the lender regardless of who the lender may be under the MERS electronic registration. We specifically reject the notion that MERS may act on its own, independent of the direction of the specific lender who holds the repayment [*7] interest in the security instrument at the time MERS purports to act. "[A]n agent is authorized to do, and to do only, what it is reasonable for him to infer that the principal desires him to do in the light of the principal's manifestation and the facts as he knows or should know them at the time he acts." *Hot Stuff, Inc. v. Kinko's Graphic Corp., 50 Ark. App. 56, 59, 901 S.W.2d 854, 856 (1995)* (citing Restatement (Second) of Agency § 33 (1958)). Nothing in the record shows that MERS had authority

to act. Here, Pulaski Mortgage was the lender and MERS's principal. Pulaski Mortgage was a named party in the foreclosure action. Thus, MERS was not acting as the lender's agent at the time it moved to set aside the decree of foreclosure.

However, MERS also argues that it holds a property interest through holding legal title. Specifically, it purports to hold legal title with respect to the rights conveyed by the borrower to the lender. We disagree.

"A deed of trust is 'a deed conveying title to real property to a trustee as security until the grantor repays a loan.'" *First United Bank v. Phase II, Edgewater Addition, 347 Ark. 879, 894, 69 S.W.3d 33, 44 (2001)*(quoting *Black's Law Dictionary* [*8] 773 (7th ed. 1999)); *see also House v. Long, 244 Ark. 718, 426 S.W.2d 814 (1968)*. The encumbrance created by the deed of trust may be described as a lien. *See, e.g., First Amer. Nat'l Bank of Nashville v. Booth, 270 Ark. 702, 606 S.W. 2d 70 (1980)*.

Under the deed of trust, the borrower conveys legal title in the property by a deed of trust to the trustee. *Phase II, supra*. "In this state, the naked legal title to real property included in a mortgage passes to the mortgagee, or to the trustee in a deed of trust, to make the security available for the payment of the debt." *Harris v. Collins, 202 Ark. 445, 447, 150 S.W.2d 749, 750 (1941)*. The trustee is limited in use of the title to passing title back to the grantor/borrower in the case of payment, or to the lender in the event of foreclosure. *See Forman v. Holloway, 122 Ark. 341,183 S.W. 763 (1916)*. The lender holds the indebtedness and is the beneficiary of the deed of trust. *House, supra*. A trustee under a deed of trust is not a true trustee. *Heritage Oaks Partners v. First Amer. Title, Ins. Co., 155 Cal. App. 4th 339, 66 Cal. Rptr.3d 510 (Cal. Ct. App. 2007)*. Under a deed of trust, the trustee's duties are limited to (1) upon default undertaking foreclosure [*9] and (2) upon satisfaction of the debt to reconvey the deed of trust. *Id*.

In the present case, all the required parties to a deed of trust under Arkansas law are present, the borrower in the Lindseys, the Lender in Pulaski Mortgage, and the trustee in James C. East. Under a deed of trust in Arkansas, title is conveyed to the trustee. *Harris, supra*. MERS is not the trustee. Here, the deed of trust renamed James C. East as the trustee. The deed of trust did not convey title to MERS. Further, MERS is not the beneficiary, even though it is so designated in the deed of trust. Pulaski Mortgage, as the lender on the deed of trust, was the beneficiary. It receives the payments on the debt.

The cases cited by MERS only confirm that MERS could not obtain legal title under the deed of trust. MERS relies on *Hannah v. Carrington, 18 Ark. 85 (1856)*; however, that case stands for the proposition that a deed of trust vests legal tide in the trustee. We are also cited to *Shinn v. Kitchens, 208 Ark. 321, 326, 186 S.W.2d 168, 171 (1945)*, where this court stated that "[t]he trustee named in the deeds of trust was a necessary party at the institution of the foreclosure suit, as also, of course, was Kitchens, [*10] the holder of the indebtedness." East, as trustee, was a necessary party. MERS was not. Finally, we are cited to *Beloate v. New England Securities Co., 165 Ark. 571, 575,265 S.W. 83 (1924)*, where this court stated that the real owner of the debt, as well as the trustee in the mortgage, are necessary parties in the action to recover the debt and foreclose the mortgage. Again, this case supports the conclusion that East was a necessary party and MERS was not.

Further, under Arkansas foreclosure law, a deed of trust is defined as "a deed conveying real property in trust to secure the performance of an obligation of the grantor or any other person named in the deed to a beneficiary and conferring upon the trustee a power of sale for breach of an obligation of the grantor contained in the deed of trust." *Ark. Code Ann. § 18-50-101(2)* (Repl. 2003). Thus, under the statutes, and under the common law noted above, a deed of trust grants to the trustee the powers MERS purports to hold. Those powers were held by East as trustee. Those powers were not conveyed to MERS.

MERS holds no authority to act as an agent and holds no property interest in the mortgaged land. It is not a necessary party. In [*11] this dispute over foreclosure on the subject real property under the mortgage and the deed of trust, complete relief may be granted whether or not MERS is a party. MERS has no interest to protect. It simply was not a necessary party. *See Ark. R. Civ. P. 19(a)*. MERS's role in this transaction casts no light on the contractual issues on appeal in this case. *See, e.g., Wilmans v. Sears, Roebuck & Co., 355 Ark. 668, 144 S.W.3d 245 (2004)*.

Finally, we note that Arkansas is a recording state. Notice of transactions in real property is provided by recording. *See Ark. Code Ann. § 14-15-404* (Supp. 2007). Southwest is entitled to rely upon what is filed of record. In the present case, MERS was at best the agent of the lender. The only recorded document provides notice that Pulaski Mortgage is

the lender and, therefore, MERS's principal. MERS asserts Pulaski Mortgage is not its principal. Yet no other lender recorded its interest as an assignee of Pulaski Mortgage. Permitting an agent such as MERS purports to be to step in and act without a recorded lender directing its action would wreak havoc on notice in this state.

Affirmed.

IMBER, DANIELSON and WILLS, JJ., concur.

**CONCUR BY:** PAUL E. DANIELSON

**CONCUR**

CONCURRING  [*12] OPINION.

**PAUL E. DANIELSON, Associate Justice**

I concur that the circuit court's order should be affirmed, but write solely because I view the decisive issue to be whether MERS was, pursuant to *Arkansas Rule of Civil Procedure 19(a)* (2008), a necessary party to the foreclosure action. It can generally be said that "[n]ecessary parties to a foreclosure action are parties whose interest are inseparable such that a court would be unable to determine the rights of one party without affecting the rights of another." 59A C.J.S. *Mortgages* § 708 (2008). *See also 55 Am. Jur. 2d Mortgages § 647* (2008) ("[A]ll persons who are beneficially interested, either in the estate mortgaged or the demand secured, are proper or necessary parties to a suit to foreclose."). Moreover, "[p]ersons having no interest are neither necessary nor proper parties, and the mere fact that they were parties to transactions out of which the mortgage arose does not give them such an interest as to make them necessary parties to an action to foreclose the mortgage." *Id.* Indeed, our rules of civil procedure contemplate the same.

*Rule 19(a) of the Arkansas Rules of Civil Procedure* speaks to necessary parties:

> (a) *Persons to Be* [*13] *Joined if Feasible*. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or, (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter, impair or impede his ability to protect that interest, or, (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest. If he has not been joined, the court shall order that he be made a party. If he should join as a plaintiff, but refuses to do so, he may be made a defendant; or, in a proper case, an involuntary plaintiff.

*Ark. R. Civ. P. 19(a)* (2008).

Here, a review of the deed of trust for the subject property reveals four parties to the deed: (1) Jason Paul Lindsey and Julie Ann Lindsey, "Borrower"; (2) James C. East, "Trustee"; (3) MERS, "(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns)"; and (4) Pulaski Mortgage Company, "Lender." The question, then, is whether MERS, [*14] as nominee, was a necessary party that had an interest "so situated that the disposition of the action in [its] absence may" have impaired its ability to protect its interest or left a subsequent purchaser or other subject to a substantial risk by reason of its interest. The answer is no; MERS, as nominee, was not a necessary party to the foreclosure action, because it held no such interest.

Initially, I must note that my review of the deed's notice provision reveals that the deed clearly contemplated the Lender as the party with interest, in that it provided:

> 13. Notices. . . . Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security' Instrument shall be deemed to have been given to Borrower or Lender when given as in this paragraph.

Here, as stated in the circuit court's order of foreclosure. Pulaski Mortgage, as Lender, was served with notice of

the foreclosure action, in accord with paragraph thirteen.

But, in addition, MERS claims that because it holds legal title, it has an interest so as to render it a necessary party pursuant to *Rule 19(a)*. Indeed, pursuant [*15] to the deed of trust, MERS held "only legal title to the interests granted" by the Lindseys,

> but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns) has the right to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

"Legal title" is defined as "[a] title that evidences apparent ownership but *does not necessarily signify* full and complete title or a *beneficial interest*." *Black's Law Dictionary* 1523 (8th ed. 2004) (emphasis added). Thus, as evidenced by the definition, holding legal title alone in no way demonstrates the interest required by *Rule 19(a)*.

MERS further claims that its status as nominee is evidence of its interest in the property, making it a necessary party. However, merely serving as nominee was recently held by one court to be insufficient to demonstrate an interest rising to the level to be a necessary party. In *Landmark National Bank v. Kesler*, 40 Kan. App. 2d 325, 192 P.3d 177 *(2008), review granted*, (Feb. 11, 2009). MERS also [*16] asserted that it was a necessary party to the foreclosure suit at issue. There, the district court found that MERS was not a necessary party, and the appellate court affirmed. Just as here, MERS was a party to the mortgage "solely as nominee for Lender." *40 Kan. App. 2d at 327, 192 P.3d at 179*. Based on that status, the Kansas court found that MERS was in essence, an agent for the lender, as its right to act to enforce the mortgage was strictly limited. *See id.*

Agreeing with MERS that a foreclosure judgment could be set aside for failure to join a "contingently necessary party," the Kansas court observed that a party was "contingently necessary" under *K.S.A. 60-219* if "the party claims an interest in the property at issue and the party is so situated that resolution of the lawsuit without that party may 'as a practical matter substantially impair or impede [its] ability to protect that interest.'" *Id. at 328, 192 P.3d at 180* (quoting *K.S.A. 60-219*). Notably, the language of *K.S.A. 60-219* quoted by the Kansas court is practically identical to the language of *Ark. R. Civ. P. 19(a)*.

The Kansas appellate court noted that MERS received no funds and that the mortgage required the borrower [*17] to pay his monthly payments to the lender. *See id.* It also observed, just as in the case at hand, that the notice provisions of the mortgage "did not list MERS as an entity to contact upon default or foreclosure." *Id. at 330, 192 P.3d at 181*. After declaring that MERS did not have a "sort of substantial rights and interests" that had been found in a prior decision and noting that "a party with no beneficial interest is outside the realm of necessary parties," the Kansas court concluded that "the failure to name and serve MERS as a defendant in a foreclosure action in which the lender of record has been served" was not such a fatal defect that the foreclosure judgment should be set aside. *Id. at 331, 192 P.3d at 181-82*.

It is my opinion that the same holds true in the instant case. Here, Pulaski Mortgage, the lender for whom MERS served as nominee, was served in the foreclosure action. But, further, neither MERS's holding of legal title, nor its status as nominee, demonstrates any interest that would have rendered it a necessary party pursuant to *Ark. R. Civ. P. 19(a)*. For these reasons, I concur that the circuit court's order should be affirmed.

IMBER and WILLS, JJ., join.

**Footer**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### CIVIL MINUTES

| Case Title : | Rickie Walker | Case No : | 10−21656 − E − 11 |
| | | Date : | 5/20/10 |
| | | Time : | 10:30 |

**Matter :**      [52] − Objection to Claim of Citibank, N.A., Claim Number 5 [MLA−3] Filed by Debtor In Possession Rickie Walker (npas)

**Judge :**      Ronald H. Sargis
**Courtroom Deputy :**      Janet Larson
**Reporter :**      Diamond Reporters
**Department :**      E

**APPEARANCES for :**
**Movant(s) :**
     Debtor(s) Attorney − Mitchell L. Abdallah
**Respondent(s) :**
None

OBJECTION was :
Sustained
See Findings of fact and conclusions of law below

The court will issue a minute order.

Local Rule 3007−1(c)(1) Motion − No Opposition Filed.

Proper Notice Provided. The Proof of Service filed on April 6, 2010, states that the Motion and supporting pleadings were served on respondent creditor, other parties in interest, and Office of the United States Trustee.

The court notes that the moving party filed the declaration and exhibits in this matter as one document. This is not the practice in the Bankruptcy Court. "Motions, notices, objections, responses, replies, declarations, affidavits, other documentary evidence, memoranda of points and authorities, other supporting documents, proofs of service, and related pleadings shall be filed as separate documents." Revised Guidelines for the Preparation of Documents, paragraph(3)(a). Counsel is reminded of the court's expectation that documents filed with this court comply with the Revised Guidelines for the Preparation of Documents in Appendix II of the Local Rules and that attorneys practicing in federal court comply with the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.

NOTICE
FAILURE TO COMPLY WITH THE GUIDELINES AND
FILING PLEADINGS WHICH DO NOT COMPLY WITH THE
FEDERAL RULES OF CIVIL PROCEDURE SHALL RESULT
IN THE MOTION BEING SUMMARILY DISMISSED WITHOUT PREJUDICE.

This Objection to a Proof of Claim has been set for hearing on the notice required by Local Bankruptcy Rule 3007−1(c)(1). The failure of the Trustee and the respondent creditor to file written opposition at least 14 days prior to the hearing as required by Local Bankruptcy Rule 3007−1(c)(1)(I) is considered as consent to the granting of the motion. Cf. Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995).

The court's decision is to sustain the Objection to the Proof of Claim and disallow the claim in its entirety with leave for the owner of the promissory note to file a claim by June 18, 2010. Oral argument may be

presented by the parties at the scheduled hearing, where the parties shall address the issues identified in this tentative ruling and such other issues as are necessary and appropriate to the court's resolution of the matter. If the court's tentative ruling becomes its final ruling, the court will make the following findings of fact and conclusions of law:

The Proof of Claim at issue, listed as claim number 5 on the court's official claims registry, asserts a $1,320,650.52 secured claim. The Debtor objects to the Claim on the basis that the claimant, Citibank, N.A., did not provided any evidence that Citibank has the authority to bring the claim, as required by Federal Rule of Bankruptcy Procedure 3001(c), rendering the claim facially defective.

The court's review of the claim shows that the Deed of Trust purports to have been assigned to Citibank, N.A. by Mortgage Electronic Registration Systems, Inc. as nominee for Bayrock Mortgage Corporation on March 5, 2010. (Proof of Claim No. 5 p.36–37, Mar. 19, 2010.) Debtor contends that this does not establish that Citibank is the owner of the underling promissory note since the assignor, Mortgage Electronic Registration Systems, Inc. ("MERS"), had no interest in the note to transfer. Debtors loan was originated by Bayrock Mortgage Corporation and no evidence of the current owner of the promissory note is attached to the proof of claim. It is well established law in the Ninth Circuit that the assignment of a trust deed does not assign the underlying promissory note and right to be paid, and that the security interest is incident of the debt. 4 Witkin Summary of California Law, Secured Transactions in Real Property §105 (10th ed).

MERS AND CITIBANK ARE NOT THE REAL PARTIES IN INTEREST

Under California law, to perfect the transfer of mortgage paper as collateral the owner should physically deliver the note to the transferee. Bear v. Golden Plan of California, Inc., 829 F.2d 705, 709 (9th Cir. 1986). Without physical transfer, the sale of the note could be invalid as a fraudulent conveyance, Cal. Civ. Code §3440, or as unperfected, Cal. Com. Code §§9313–9314. See Roger Bernhardt, California Mortgages and Deeds of Trusts, and Foreclosure Litigation §1.26 (4th ed. 2009). The note have specifically identified the party to whom it was payable, Bayrock Mortgage Corporation, and the note therefore cannot be transferred unless the note is endorsed. See Cal. Com. Code §§3109, 3201, 3203, 3204. The attachments to the claim do not establish that Bayrock Mortgage Corporation endorsed and sold the note to any other party.

TRANSFER OF AN INTEREST IN THE DEED OF TRUST ALONE IS VOID

MERS acted only as a "nominee" for Bayrock Mortgage under the Deed of Trust. Since no evidence has been offered that the promissory note has been transferred, MERS could only transfer what ever interest it had in the Deed of Trust. However, the promissory note and the Deed of Trust are inseparable. "The note and the mortgage are inseparable; the former as essential, the later as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Carpenter v. Longan, 83 U.S. 271, 274 (1872); accord Henley v. Hotaling, 41 Cal. 22, 28 (1871); Seidell v. Tuxedo Land Co., 216 Cal. 165, 170 (1932); Cal. Civ. Code §2936. Therefore, if on party receives the note an another receives the deed of trust, the holder of the note prevails regardless of the order in which the interests were transferred. Adler v. Sargent, 109 Cal. 42, 49–50 (1895).

Further, several courts have acknowledged that MERS is not the owner of the underlying note and therefore could not transfer the note, the beneficial interest in the deed of trust, or foreclose upon the property secured by the deed. See In re Foreclosure Cases, 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007); In re Vargas, 396 B.R. 511, 520 (Bankr. C.D. Cal. 2008); Landmark Nat'l Bank v. Kesler, 216 P.3d 158 (Kan. 2009); LaSalle Bank v. Lamy, 824 N.Y.S.2d 769 (N.Y. Sup. Ct. 2006). Since no evidence of MERS' ownership of the underlying note has been offered, and other courts have concluded that MERS does not own the underlying notes, this court is convinced that MERS had no interest it could transfer to Citibank.

Since MERS did not own the underling note, it could not transfer the beneficial interest of the Deed of Trust to another. Any attempt to transfer the beneficial interest of a trust deed with out ownership of the underlying note is void under California law. Therefore Citibank has not established that it is entitled to assert a claim in this case.

MULTIPLE CLAIMS TO THE BENEFICIAL INTEREST IN THE DEED OF TRUST AND OWNERSHIP OF PROMISSORY NOTE SECURED THEREBY

Debtor also points out that four separate entities have claimed beneficial ownership of the deed of trust. (Obj. to Claim 3–5, Apr. 6, 2010.) The true owner of the underling promissory note needs to step forward to settle the cloud that has been created surrounding the relevant parties rights and interests under the trust deed.

DECISION

11 U.S.C. §502(a) provides that a claim supported by a Proof of Claim is allowed unless a party in interest objects. Once an objection has been filed, the court may determine the amount of the claim after a noticed hearing. 11 U.S.C. §502(b). Since the claimant, Citibank, has not established that it is the owner of the promissory note secured by the trust deed, Citibank is unable to assert a claim for payment in this case. The objection is sustained and Claim Number 5 on the court's official register is disallowed in its entirety, with leave for the owner of the promissory note to file a claim in this case by June 18, 2010.

The court disallowing the proof of claim does not alter or modify the trust deed or the fact that someone has an interest in the property which can be subject thereto. The order disallowing the proof of claim shall expressly so provide.

The court shall issue a minute order consistent with this ruling.

*Exhibit I*

# AN OFFICER OF TOO MANY BANKS

*Lynn E. Szymoniak, Esq., January 14, 2010*

In a few foreclosure cases, judges have noticed that the same individual appears as an officer of various banks. In several of these cases, the judges have dismissed the foreclosure actions and ordered that such actions cannot be refiled unless the foreclosing party presents an Affidavit with the three-year employment history of the bank "officer."

In most of these cases, the Bank has never refiled - presumably unable to explain the issue of the same individual appearing as an officer of many banks.

The following cases address this issue:

Bank of NY v. Mulligan, 2008 NY Slip Op 31501 (U)(June 3, 2008):

"...Additionally, plaintiff BNY must address a third matter if it renews its application for an order of reference. In the instant action, as noted above, Ely Harless, as Vice President of MERS**,** assigned the instant mortgage to BNY on October 9, 2007. Then, as Vice President of COUNTRYWIDE, on March 20, 2008, he executed the affidavit in this action. Is Mr. Harless the Vice President of MERS or the Vice President of COUNTRYWIDE? Did he change his employment between October 9, 2007 and March 20, 2008? The Court is concerned that Mr. Harless might be engaged in a subterfuge, wearing various corporate hats. Before granting an application for an order of reference, the Court requires an affidavit from Mr. Harless describing his employment history for the past three years..."

Bank of NY v. Orosco, 2007 NY Slip Op 33818(U)

"Plaintiff must address a second matter before it applies for an order of reference after demonstrating that the alleged assignment was recorded. Plaintiffs application is the third application for an order of reference received by me in the past several days that contain an affidavit from Keri Selman. In the instant action, she alleges to be an Assistant Vice-president of the Bank of New York. On November 16,2007, I denied an application for an order of reference (BANK OF NY AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-8 v JOSE NUNEZ, INDEX No. 10457/07), in

*Exhibit I*

which Keri Selman, in her affidavit of merit claims to be "Vice President of COUNTRYWIDE HOME LOANS, Attorney in fact for BANK OF NEW YORK." The Court is concerned that Ms. Selman might be engaged in a subterfuge, wearing various corporate hats. Before granting an application for an order of reference, the Court requires an affidavit from Ms. Selman describing her employment history for the past three years..."

Deutsche Bank National Trust Co. v. Castellanos, 2008 NY Slip Op 50033 (U)

...Two additional matters plaintiff needs to address in a renewed motion. In my recent review of the moving papers in the renewed motion, I noticed that the July 21, 2006 "affidavit of merit" was executed by Jeff Rivas, who claims to be Deutsche Bank's Vice President Default Timeline Management. On the same day, Mr. Rivas executed, before the same notary public, M. Reveles, a mortgage assignment from Argent Mortgage Company, LLC, claiming to be Argent's Vice President Default Timeline Management. Did Mr. Rivas somehow change employers on July 21, 2006 or is he concurrently a Vice President of both assignor Argent Mortgage Company, LLC and assignee Deutsche Bank? If he is a Vice President of both the assignor and the assignee, this would create a conflict of interest and render the July 21, 2006 assignment void.

Also, Mr. Rivas claims that Argent Mortgage Company, LLC is located at 1100 Town and County Road, Suite 200, orange, California. Did Mr. Rivas execute the assignment at 100 Town and County Road, Suite 200, and then travel to One City Boulevard West, with the same notary public, M. Reveles, in tow? The court is concerned that there may be fraud on the part of Deutsche Bank, Argent Mortgage Company, LLC and/or MTGLQ Investors, L.P., or at least malfeasance. If plaintiff renews its motion for a judgment of foreclosure and sale, the Court requires a satisfactory explanation by Mr. Rivas of his recent employment history...

HSBC Bank, N.A. v. Cherry, 2007 NY Slip Op 52378 (U), 18 Misc 3d 1102 (A):

"...Additionally, plaintiff HSBC must address a second matter if it renews its application for an order of reference upon compliance with CPLR § 3215 (f). In the instant action, as noted above, Scott Anderson, in his affidavit,

executed on June 15, 2007, states he is Vice President of OCWEN. Yet, the June 13, 2007 assignment from MERS to HSBC is signed by the same Scott Anderson as Vice President of MERS. Did Mr. Anderson change his employer between June 13, 2007 and June 15, 2007. The Court is concerned that there may be fraud on the part of HSBC, or at least malfeasance. Before granting an application for an order of reference, the Court requires an affidavit from Mr. Anderson describing his employment history for the past three years...

In the instant action, with HSBC, OCWEN and MERS, joining with Deutsche Bank and Goldman Sachs at Suite 100, the Court is now concerned as to why so many financial goliaths are in the same space. The Court ponders if Suite 100 is the size of Madison Square Garden to house all of these financial behemoths or if there is a more nefarious reason for this corporate togetherness. If HSBC seeks to renew its application for an order to reference, the Court needs to know, in the from of an affidavit, why Suite 100 is such a popular venue for these corporations."

Deutsche Bank National Trust Company v. Rose Harris, Index No. 35549/07, Supreme Court of NY (Brooklyn), February 5, 2008:

"...Plaintiff's affidavit, submitted in support of the instant application for a default judgment, was executed by Erica Johnson-Seck, who claims to be a Vice President of plaintiff DEUTSCHE BANK.  The affidavit was executed in the state of Texas, County of Williamson... The Court is perplexed as to why the Assignment was not executed in Pasadena, California, at 460 Sierra Madre Village, the alleged "principal place of business" for both the assignor and the assignee.  In my January 31, 2008 decision (*Deutsche Bank National Trust Company v. Maraj* [citation omitted]), I noted that Erica Johnson-Seck claimed that she was a Vice President of MERS in her July 3, 2007 INDYMAC to DEUTSCHE BANK assignment, and then in her July 31, 2007 affidavit claimed to be a DEUTSCHE BANK Vice President. Just as in *Deutsche Bank National Trust Company v. Maraj*, at 2, the Court, in the instant action, before granting an application for an order of reference, requires an affidavit from Ms. Johnson-Seck, describing her employment history for the past three years.

Further, the Court requires an explanation from an officer of plaintiff DEUTSCHE BANK as to why, in the middle of our national subprime mortgage financial crisis, DEUTSCHE BANK would purchase a non-performing loan from INDYMAC, and why DEUTSCHE BANK, INDYMAC,

and MERS all share office space at 460 Sierra Madre Villa, Pasadena, CA 91107."

HSBC Bank USA v. Perboo, 2008 NY Slip Op 51385 (U), 20 Misc 3d 1117(A):

"Further, plaintiff must address a second matter if it renews its application for an order of reference upon compliance with CPLR § 3215 (f). In the instant action, as noted above, Victor F. Parisi, in his affidavit, dated December 14, 2007, states he is Vice President of EQUITY ONE. Yet, the September 28, 2007 assignment from MERS as nominee for PEOPLE'S CHOICE to HSBC is signed by the same Victor F. Parisi, as Vice President of MERS. In my November 20, 2007 decision and order in *HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR NOMURA HOME EQUITY LOAN, INC. ASSET-BACKED CERTIFICATES SERIES 2006-FM2 v SANDOVAL*, Index Number 8758/07, the same Victor F. Parisi assigned the underlying mortgage and note as Vice President of MERS to HSBC on March 13, 2007, and then signed the affidavit of merit as Vice President of EQUITY ONE, authorized servicer for HSBC, the next day, March 14, 2007. Did Mr. Parisi change his employment from March 13, 2007 to March 14, 2007, and again from September 28, 2007 to December 14, 2007? The Court is concerned that Mr. Parisi might be engaged in a subterfuge, wearing various corporate hats. Before granting an application for an order of reference, the Court requires an affidavit from Mr. Parisi describing his employment history for the past three years."

## DUAL EMPLOYEES

An individual who falsely claims to be a bank officer — that is, who acts without the authorization of the bank — commits fraud.  Because mortgage assignments are sent repeatedly through the U.S. Mail, the fraud becomes the federal offense of mail fraud.  If a bank has actually authorized non-employees to use the title of Vice President of the bank on mortgage assignments, other issues arise.  Banks are highly regulated, as are bank relations with affiliated companies.

Sections 23A and 23B of the Federal Reserve Act (FR Act), as applied by the Federal banking agencies under various Federal banking statutes, govern transactions between banks and affiliated business organizations. The Gramm-Leach-Bliley Act (GLBA) amended many laws governing the affiliation of banks and other financial service providers. Among other

laws, the GLBA amended the Banking Act of 1933, the Bank Holding Company Act of 1956, (BHC Act), the Interstate Banking and Branching Efficiency Act of 1994, the Investment Company Act of 1940, the Investment Advisers Act of 1940, the Securities Exchange Act of 1934, the International Banking Act of 1978, the FR Act, the Federal Deposit Insurance Act (FDI Act), and the Home Owners' Loan Act.

Section 18(j) of the FDI Act extends the provisions of Sections 23A and 23B of the FR Act to state nonmember banks. Section 23A regulates transactions between a bank and its "affiliates," as that term is specifically defined in Section 23A. Section 23B of the FR Act was enacted as part of the Competitive Equality Banking Act of 1987 to expand the range of restrictions on transactions with affiliates. Section 10(b)(4) of the FDI Act authorizes FDIC examiners in the course of examining insured banks "to make such examinations of the affairs of any affiliate of any depository institution as may be necessary to disclose fully --- (i) the relationship between such depository institution and any such affiliate; and (ii) the effect of such relationship on the depository institution." "Affiliate" is defined in Section 3(w)(6) of the FDI Act as having the same meaning as the definition of that term in Section 2(k) of the BHC Act.

According to the FDIC Risk Management Manual of Examination Policies, all bank activities, including those performed by dual employees, should be subject to the authority of an independent board of directors. Bank officers (whether they are dual employees or direct employees) must have sufficient expertise, authority, and information to act in the best interests of the insured institution at all times, under the direction of the board. A comprehensive framework of policies, procedures, legal agreements, controls, and audit must be established to govern the activities of dual officers and employees. A formal written employee sharing agreement should be established to define the employment relationship between the banking entity and affiliate. The following factors should be addressed:

1. The agreement needs to be independently reviewed by the bank's board of directors to ensure that it is fair and in the best interest of the insured bank.
2. Compensation arrangements need to be clearly delineated to ensure they are equitable for both the bank and affiliated entity.
3. The location where the dual employee is to perform duties needs to be established and detailed, along with reporting and authority.
4. The agreement should require dual employees to avoid conflicts of

interest. Additionally, the agreement should state that dual employees or officers must act in the best interest of the bank while performing any activities on behalf of the bank.

5. Sanctions for noncompliance should be contained in the bank's agreement.

6. The agreement should provide for a periodic determination concerning the status of a dual-employee and the factors to be considered for terminating the dual-employee relationship in favor of either full-time bank or affiliated entity employment.

7. Authority for managing the dual-employee relationships should be clearly assigned.

8. Lines of authority for dual employees should be established. While dual employees may have other responsibilities, they must also report through appropriate lines of authority within the banking institution. The dual employee's bank responsibilities and decision-making should take precedence over any affiliate responsibilities. All activities conducted on behalf of the bank must be subject to appropriate review and authorization by bank officers, and ultimately the bank's board of directors.

Affiliate officers and employees who conduct activities on behalf of the bank (even if not formally designated as dual employees) are subject to the same level of legal and corporate duties and liabilities as a direct officer or employee of the bank. Additionally, examiners should have reasonable access to dual employees and any other affiliate employees who perform services on behalf of the bank.

The insured banking institution utilizing a dual-employee needs to have policies and procedures in place covering account settlement for dual-employees that stipulate the manner and timing for payment in order to ensure an unanticipated affiliated loan does not occur in contravention of Sections 23A & 23B of the FR Act.

Policies and procedures dealing with dual-employee relationships should include a mechanism to ensure compliance with 12 U.S.C 1831g (Adverse Contracts). Under that statute, an institution may not enter into a written or oral contract with any person to provide goods, products, or services to, or for the benefit of, a depository institution if the performance of such contract would adversely affect the safety and soundness of the insured institution.

## CONCLUSION

In thousands of foreclosure cases, key documents may have been fabricated by employees of mortgage servicing companies who have falsely held themselves out as bank officers.  Because most foreclosures are the result of defaults, the validity of these assignments has most often gone unchallenged.  Almost three million U.S. properties were involved in some form of foreclosure action in 2009, a 44% increase from the end of 2008 to the end of 2009.  In 2010, the issue of the validity of Assignment is likely to finally come under examination by regulators, courts, lawyers and distressed homeowners.

Jonathan B. Woods and Kerrie Woods
3930 East Cody Avenue, Gilbert, AZ 85234

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JONATHAN B. WOODS AND,<br>KERRIE WOODS,<br><br>     vs.<br><br>TAYLOR, BEAN & WHITAKER MORTGAGE<br>CORP., FIRST AMERICAN TITLE INSURANCE<br>COMPANY, MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC., RECONTRUST<br>COMPANY, BAC HOME LOANS SERVICING,<br>AND, JOHN AND JANE DOES 1-5<br><br>     Defendants | Case No.: 2:10-CV-00723<br><br>**FACT-WITNESS AFFIDAVIT<br>IN SUPPORT OF PLAINTIFF'S<br>VERIFIED COMPLAINT FOR<br>WRONGFUL FORECLOSURE**<br><br>**JURY TRIAL DEMANDED** |

Mario Baltodano, duly sworn, deposes and states based on personal knowledge:

1. I have personally experienced a foreclosure action against my property at 3244 Explorer Drive, Sacramento, California 95827. Attached is a true and correct copy of the Notice of Trustee Sale stating my property would be sold on Dec. 23, 2009. The sale actually took place on January 7, 2010.

2. After the sale, JPMorgan Chase Bank, the foreclosing party, failed to return my Note and Deed of Trust. Despite my demands, to this date they have failed to return them which is prima facie proof they do not possess them because in all likelihood have sold them to a securitized pool of mortgage-backed securities for Wall St. investors.

3. Failing to return said Note and Deed of Trust, they were left in the open stream of commerce and susceptible to being purchased in the secondary debt collection market by an unknown entity.

4. Although I have made it known to JPMorgan Chase Bank in a Verified Complaint that I demanded Note and Deed of Trust be returned to avoid being the target of another debt collection action for the very same debt, my demand was not satisfied.

5. On or about February 19, 2010, just a little over 2 months after the foreclosure of my property, I indeed received a collection letter for the same debt, although this debt should have been discharged due to the sale of my property.

1          EXHIBIT J

6.    In addition to the Notice of Trustee Sale, attached is a copy of a payoff letter showing the amount sought by JPMorgan Chase Bank, and a copy of the actual collection letter from Professional Recovery Services, Inc.

7.    I am willing and able to testify under the penalty of perjury and in support of the fact that when a creditor forecloses on a property and leaves the Loan Documents in the stream of commerce, third party debt collectors can and do purchase the account for their own profit, leaving the borrower vulnerable to be charged for the same debt.


I certify under the penalty of perjury that this is true and correct.

July 13, 2010
_____                         _____
Date                                            Mario A. Baltodano


Mario Baltodano
3244 Explorer Drive,
Sacramento, California 95827
mario.baltodano@yahoo.com

---

### ACKNOWLEDGEMENT

State of California      )
                         ) ss.
County of Sacramento)

On July 13th, 2010, before me, **Brandon G. Taylor** a Notary Public, personally appeared Mario A. Baltodano who proved to me, on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California, that the foregoing is true and correct.

Witness my hand and official seal.

_____
Notary Public for California

My Commission Expires: **Jan. 23, 2014**

BRANDON G. TAYLOR
COMM. #1877836
NOTARY PUBLIC-CALIFORNIA
SACRAMENTO CO.
EXP. JAN 23, 2014

2

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue – CA2-4379
Chatsworth, CA 91311
800-892-6902

| | |
|---|---|
| **Trustee Sale No.** | **237899CA** |
| Loan No. | 000000010522471 |
| Title Order No. | 184347 |

---

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11/05/2007.  UNLESS YOU TAKE ACTION T
PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION C
THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 12/23/2009 at 01:30 PM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Truste
under and pursuant to Deed of Trust Recorded 11/20/2007, Book 20071120, Page 1125, Instrument  of offici
records in the Office of the Recorder of SACRAMENTO County, California, executed by:  MARIO BALTODANO AN
YANCHANG BALTODANO, as Trustor, Washington Mutual Bank, FA, as Beneficiary, will sell at public auction sale
the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state c
federal credit union, or a cashier's check drawn by a state or federal savings and loan association, saving
association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in th
state.  Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to ar
now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust.   The sale w
be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances,
pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charge
and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonab
estimated to be set forth below.  The amount may be greater on the day of sale.
Place of Sale: AT THE MAIN ENTRANCE TO THE COUNTY COURTHOUSE, 720  9TH STREET, SACRAMENTO,
CA
Legal Description:  LOT 116, AS SHOWN ON THE "PLAT OF BRADSHAW WOODS", RECORDEI
IN BOOK 115 OF MAPS, MAP NO. 13, RECORDS OF SAID COUNTY.
Amount of unpaid balance and other charges: $358,431.25 (estimated)
Street address and other common designation of the real property:   3244 EXPLORER DR
                                                                     SACRAMENTO, CA 95827
                                                                     APN Number:  068-0444-011-0000
The undersigned Trustee disclaims any liability for any incorrectness of the street address and other commo
designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares:
that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or
that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid
foreclosure by one of the following methods: by telephone;  by United States mail; either 1st class or certified; by
overnight delivery; by personal delivery; by e-mail; by face to face meeting.

### SEE ATTACHED EXHIBIT

DATE: 12-01-2009
CALIFORNIA RECONVEYANCE COMPANY, as Trustee
714) 730-2727 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com



*Deborah Brignac*
DEBORAH BRIGNAC, VICE PRESIDENT
9200 OAKDALE AVENUE, CHATSWORTH, CA 91311

CALIFORNIA RECONVEYANCE COMPANY IS A
DEBT COLLECTOR ATTEMPTING TO COLLECT
A DEBT. ANY INFORMATION OBTAINED WILL
BE USED FOR THAT PURPOSE.

---

**Exhibit**

## DECLARATION PURSUANT TO CALIFORNIA CIVIL CODE SECTION 2923.54

Pursuant to California Civil Code Section 2923.54, the undersigned loan servicer declares as follows:

1.  It has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.54 that is current and valid on the date the notice of sale is filed; and

2.  The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or Section 2923.55.

JPMorgan Chase Bank
National Association

Name: Ann Thon
Title:   First Vice Presiden

P.O. BOX 1880
VOORHEES NJ 08043-7880

ADDRESS SERVICE REQUESTED

PROFESSIONAL RECOVERY SERVICES INC.
VOORHEES NJ 08043
PHONE: (866) 464-1013

#BWNLCSV S-ONPREC10 L-001 A-9297217
#092972172# P11NUM00603192 I04498
MARIO BALTODANO
3244 EXPLORER DR
SACRAMENTO CA 95827-2809

PROFESSIONAL RECOVERY SERVICES INC.
P.O. BOX 1880
VOORHEES NJ 08043

03/17/10

| Account # : | Client # : | Amount Du |
|---|---|---|
| 9297217 | 1009004294000546 | $ 339863.96 |

Client : CHASE HOME FINANCE

✄ Detach Upper Portion And Return With Payment ✄

**IMPORTANT COLLECTION NOTICE**

ACCOUNT # : 9297217

RE : Your account with our client
**CHASE HOME FINANCE**
AMOUNT DUE : $ 339863.96

PROFESSIONAL RECOVERY SERVICES INC.
P.O. BOX 1880
VOORHEES NJ 08043
PHONE: (866) 464-1013

Dear MARIO BALTODANO,

Please be advised that the account listed above has been referred to us by the above creditor in the amount of $ 339863.96 representing the balance due for services rendered and accepted.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Should you contact us in writing for verification of this debt, we will cease further collection activity until we provide you with the verification.

Very Truly Yours,

*John Crosby*
JOHN CROSBY
Senior Claims Adjuster

This communication from a debt collector is an attempt to collect a debt. Any information obtained will be used for that purpose.

**PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

*Exhibit K*

○ Order Dismissing Foreclosures on "Real Party in Interest" Ohio

- **Archives**

  ○ July 2010
  ○ June 2010
  ○ May 2010
  ○ April 2010
  ○ March 2010
  ○ February 2010
  ○ January 2010
  ○ December 2009
  ○ November 2009
  ○ October 2009
  ○ September 2009
  ○ August 2009
  ○ July 2009
  ○ June 2009
  ○ May 2009
  ○ April 2009
  ○ March 2009
  ○ February 2009
  ○ January 2009
  ○ December 2008
  ○ November 2008
  ○ October 2008
  ○ September 2008
  ○ August 2008
  ○ July 2008

# Main Contents

## NEW JERSEY TRIAL COURT JUDGE ISSUES 53-PAGE OPINION DISMISSING FORECLOSURE COMPLAINT OF BANK OF NEW YORK AS SECURITIZED TRUSTEE: OPINION COULD PAVE THE WAY FOR AMENDMENTS TO NEW JERSEY RULES OF PROCEDURE REQUIRING FORECLOSURE COMPLAINTS TO BE CERTIFIED AND FOR FORECLOSING PARTIES TO PRODUCE SECURITIZATION DISCOVERY IN ORDER TO BE ABLE TO PURSUE FORECLOSURE

July 6, 2010

*Exhibit K*

July 6, 2010

In an extremely well-reasoned and detailed written opinion, New Jersey trial court Judge William C. Todd has issued a 53-page (yes, fifty-three page) Order dismissing a foreclosure action filed by Bank of New York as Trustee for Home Mortgage Investment Trust 2004-4 Mortgage-Backed Notes Series 2004-4, Docket No. F-7356-09, Atlantic County, New Jersey. The matter was decided on June 29, 2010 and the formal opinion was approved for publication this week after the matter was tried at the end of June, 2010.

The opinion sets forth an incredible analysis of a host of issues involving foreclosure in securitization contexts and highlights why a foreclosing plaintiff must comply with its obligations to prove standing in order to be able to pursue a foreclosure action. While we do not summarize the entire holding here, we do want to point out some of the significant findings.

The court found that there was no meaningful attempt by Bank of New York (hereafter "BONY") to comply with applicable New Jersey procedural rules requiring a recitation of all assigments in the chain of title. BONY simple alleged that it had acquired possession of the note prior to the litigation being filed. However, the evidence at trial failed to establish this allegation, with the Court noting that there were missing documents incident to the securitization of the loan including the mortgage loan schedule that should have been attached to the mortgage loan purchase agreement. The Court also found that the "MERS assignment was potentially misleading".

The Court found that there was a failure of proof as to BONY's legal standing, warranting dismissal of the action and conditioning any refiling on a certification that the plaintiff is in possession of the original note at the time of filing. This is in line with the recent action of the Supreme Court of Florida which, as of February 11, 2010 by Administrative Order, requires all residential mortgage foreclosure complaints to be verified. It is no secret that Florida trial courts have and continue to dismiss foreclosure actions which do not comply with the verification requirement. It is hoped that the courts of New Jersey will adopt Judge Todd's well-reasoned analysis and dismiss foreclosure complaints which do not comply with the New Jersey procedural rules requiring proof of legal standing to foreclose at inception and time of filing a Complaint for foreclosure.

Judge Todd also stated that additional discovery is to be produced when the foreclosure involves a securitization, lost note claims, or a holder in due course challenge (which may arise in the context of the purported assignment of a toxic loan to a securitized trust prior to the trustee of that trust instituting a foreclosure action, as well as any predatory loan claims against the original lender). Judge Todd recognized that there are dozens of legal issues and inquiries where a foreclosure involves a securitization, and that a borrower has both the right to know who owns the mortgage loan and whether a foreclosing party has the legal right to foreclose.

This incredibly significant decision will hopefully become the law in the state of New Jersey, and it is hoped that the Rules Committee for the New Jersey courts will soon adopt court rules requiring that all residential foreclosure complaints filed in New Jersey be accompanied by the filing of an appropriate Certification, and further requiring that all securitization discovery be produced in all foreclosure cases involving a securitized loan. We applaud and salute Judge Todd for his amazing effort to not only streamline foreclosure litigation in New Jersey, but also insuring that borrowers' legal rights are protected as well.

Jeff Barnes, Esq., www.ForeclosureDefenseNationwide.com

Filed under: Uncategorized |

**Leave a comment**



*Exhibit L*

*00001-9707516-900300230031057*

# DISCLOSURE FOR CONFESSION OF JUDGMENT

| | | |
|---|---|---|
| **Borrower:** | LaVere A. Stump<br>Michelle L. Stump<br>1396 Fish and Game Road<br>East Berlin, PA  17316 | **Lender:**   Fulton Bank<br>Manheim Office<br>Corporate Address<br>One Penn Square<br>Lancaster, PA  17602 |
| **Declarant:** | LaVere A. Stump<br>1396 Fish and Game Road<br>East Berlin, PA  17316 | |

## DISCLOSURE FOR CONFESSION OF JUDGMENT

I AM EXECUTING, THIS  *10th*  DAY OF  *April*  , 20 *06* , A PROMISSORY NOTE FOR $150,000.00 OBLIGATING ME TO REPAY THAT AMOUNT.

A.  I UNDERSTAND THAT THE NOTE CONTAINS A CONFESSION OF JUDGMENT PROVISION THAT WOULD PERMIT LENDER TO ENTER JUDGMENT AGAINST ME IN COURT, AFTER A DEFAULT ON THE NOTE, WITHOUT ADVANCE NOTICE TO ME AND WITHOUT OFFERING ME AN OPPORTUNITY TO DEFEND AGAINST THE ENTRY OF JUDGMENT. IN EXECUTING THE NOTE, BEING FULLY AWARE OF MY RIGHTS TO ADVANCE NOTICE AND TO A HEARING TO CONTEST THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT LENDER MAY ASSERT AGAINST ME UNDER THE NOTE, I AM KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVING THESE RIGHTS, INCLUDING ANY RIGHT TO ADVANCE NOTICE OF THE ENTRY OF JUDGMENT, AND I EXPRESSLY AGREE AND CONSENT TO LENDER'S ENTERING JUDGMENT AGAINST ME BY CONFESSION AS PROVIDED FOR IN THE CONFESSION OF JUDGMENT PROVISION.

B.  I FURTHER UNDERSTAND THAT IN ADDITION TO GIVING LENDER THE RIGHT TO ENTER JUDGMENT AGAINST ME WITHOUT ADVANCE NOTICE OR A HEARING, THE CONFESSION OF JUDGMENT PROVISION IN THE NOTE ALSO CONTAINS LANGUAGE THAT WOULD PERMIT LENDER, AFTER ENTRY OF JUDGMENT, AGAIN WITHOUT EITHER ADVANCE NOTICE OR A HEARING, TO EXECUTE ON THE JUDGMENT BY FORECLOSING UPON, ATTACHING, LEVYING ON, TAKING POSSESSION OF OR OTHERWISE SEIZING MY PROPERTY, IN FULL OR PARTIAL PAYMENT OF THE JUDGMENT. IN EXECUTING THE NOTE, BEING FULLY AWARE OF MY RIGHTS TO ADVANCE NOTICE AND A HEARING AFTER JUDGMENT IS ENTERED AND BEFORE EXECUTION ON THE JUDGMENT, I AM KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVING THESE RIGHTS, AND I EXPRESSLY AGREE AND CONSENT TO LENDER'S IMMEDIATELY EXECUTING ON THE JUDGMENT IN ANY MANNER PERMITTED BY APPLICABLE STATE AND FEDERAL LAW, WITHOUT GIVING ME ANY ADVANCE NOTICE.

C.  AFTER HAVING READ AND DETERMINED WHICH OF THE FOLLOWING STATEMENTS ARE APPLICABLE, BY INITIALING EACH

1.  I WAS REPRESENTED BY MY OWN INDEPENDENT LEGAL COUNSEL IN CONNECTION WITH THE NOTE.

2.  A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THE CONFESSION OF JUDGMENT PROVISION IN THE NOTE TO MY ATTENTION.

D.  I CERTIFY THAT MY ANNUAL INCOME EXCEEDS $10,000; THAT THE BLANKS IN THIS DISCLOSURE WERE FILLED IN WHEN I INITIALED AND SIGNED IT; AND THAT I RECEIVED A COPY AT THE TIME OF SIGNING.

THIS DISCLOSURE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DISCLOSURE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

DECLARANT:

*LaVere A. Stump*  (Seal)
LaVere A. Stump

Signed, acknowledged and delivered in the presence of:

X *Dowell B*
  Witness

*Exhibit L*

X _____
  Witness