Jonathan B. Woods and Kerrie Woods
3930 East Cody Avenue, Gilbert, AZ 85234
(480) 232-0076

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JONATHAN B. WOODS AND, KERRIE WOODS,<br><br>Plaintiffs, Pro Per<br><br>vs.<br><br>TAYLOR, BEAN & WHITAKER MORTGAGE CORP., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., BAC HOME LOANS SERVICING, AND, JOHN AND JANE DOES 1-5<br><br>Defendants | Case No.: 2:10-CV-00723<br><br>**RESPONSE TO DEFENDANTS BAC HOME LOAN SERVICING AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION TO DISMISS AMENDED COMPLAINT**<br><br>**(Hon. G. Murray Snow)** |

NOW COMES, JONATHAN B. WOODS and KERRIE WOODS, (hereinafter "Plaintiffs"), who file this Motion in Opposition to Motion to Dismiss Amended Complaint entered by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (hereinafter "MERS") and BAC HOME LOANS SERVICING LP (hereinafter "BAC"), (hereinafter collectively referred to as "Defendants"). Plaintiffs are homeowners trying to save their property and seek due process to have their case heard which states clear claims supported by fact and law. Plaintiffs hereby assert that Defendants' Motion to Dismiss Amended Complaint ("Motion") is based on diversion and avoidance of clear claims contained in their Amended Verified Complaint For Wrongful Foreclosure, and further states as follows:

## OVERVIEW

The above-named Defendants have submitted their Motion based on the standard "failure to state a claim" response. On the contrary, Plaintiffs have made very clear claims centered on contract issues such as confession of judgment/cognovit clauses and contract of adhesion, unconscionability, misrepresentation, invalid assignment, concealment of issues such as securitization, unjust enrichment, and standing to foreclose. Ultimately, these amount to fraud in the factum and fraudulent foreclosure.

Defendants say Plaintiffs are belatedly attempting to challenge the Trustee's Sale of their home. On the contrary, Plaintiffs can prove the merits of their case which is not time-barred in any way due to the fact that there is overwhelming argument and evidence proving that the contract was void ab initio, and therefore, unenforceable as a matter of law.

Furthermore, Plaintiffs notice all parties and the court that they did attempt to file their Complaint the day prior to the foreclosure sale date of Feb. 16, 2010 but it was President's Day and the courts were closed. This would have included an emergency ex-parte motion for injunctive relief to prevent the sale from occurring. The only reason for this late date is due to Plaintiffs being self-represented and only recently becoming aware of such information. In the interest of justice and due process, this should never preclude a homeowner from acting in his defense within the legal system to save his home and obtain restitution.

## RESPONSE TO I. PLAINTIFF'S ALLEGATIONS

Plaintiffs allege that no valid loan or promissory note exists to which Defendants have legally and lawfully acquired any rights by which Defendants can legally establish standing to foreclose on Plaintiffs' property. Furthermore, Plaintiffs allege that documents used by Defendants in their attempt to establish any rights to servicing or standing to foreclose on Plaintiffs' property are invalid as they are false and/or forged.

Defendants say that according to the Amended Complaint, Taylor transferred servicing rights to BAC. That is not a truthful statement. The Amended Complaint simply refers

to a letter of self appointment created by BAC, and BAC has not produced any evidence such as a lawfully executed Pooling and Servicing Agreement ("PSA") to prove what rights, if any, Defendants have to act on behalf of the True Beneficiary. Being the servicer of a note does not mean that one has beneficial interest in the note or even represents the person who does. Plaintiffs have never made a payment to BAC as they have not established themselves as the servicer of a valid note with Plaintiffs.

While Defendants have not provided any evidence of a default by Plaintiffs with them, Defendants have attempted to capture the right to foreclose on Plaintiffs' property by filing or causing to be filed in the Maricopa County Recorders Office false and/or forged documents which, according to ARS 33-420 (A), is a class 1 misdemeanor and renders the person liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action. Not only did Defendants lack authority to foreclose but they committed at minimum the following statutory violations in the process:

1. "For a property with a first deed of trust recorded on or after January 1, 2003 through December 31, 2008, if the borrower occupies the property as the borrower's principal residence, before a trustee may give notice of a trustee's sale for the property pursuant to section 33-808, the lender must attempt to contact the borrower to explore options to avoid foreclosure at least thirty days before the notice is recorded." (ARS 33-807.01) <u>The lender never complied with this statutory requirement, and therefore violated the law.</u>

2. Notice of sale as required by ARS 33-808 (3) was also violated. A notice of sale [Amended Complaint ("AC"), Exhibit G] substantially different from the notice of sale recorded with the county recorder [AC, Exhibit E] was attached to Plaintiffs' door on November 25, 2009. [AC, Exhibit G] is not notarized and is dated differently and signed by a different signatory than [AC, Exhibit E]. Clearly not a copy of the notice of sale.

Even if BAC had complied with ARS 33-807.01, they are not the lender nor have they provided a PSA or any admissible evidence demonstrating what relationship, if any, they have with the lender. Only production of the note will prove what the relationship is. However, upon information and belief, title has been broken which is what this Court must inspect.

**RESPONSE TO II. LEGAL STANDARD**

The following case law authority further establishes the fact that Plaintiffs have set forth their case with meritorious claims that warrant full adjudication of their case.

"The general rule in appraising the sufficiency of a complaint for failure to state a claim is that a complaint should not be dismissed ...unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *CONLEY VS. GIBSON* (1957), 355 U.S. 41, 45, 46, 78 S.Ct. 99, 102, 2LEd 2d 80; *SEYMOUR VS. UNION NEWS COMPANY*, 7 Cir., 1954, 217 F.2d 168;

"A complaint will not be dismissed for failure to state a claim, even though inartistically drawn and lacking in allegations of essential facts, it cannot be said that under no circumstances will the party be able to recover." *John Edward Crockard vs. Publishers, Saturday Evening Post Magazine of Philadelphia, Pa* (1956) Fr Serv 29, 19 F.R.D. 511, DCED Pa 19 (1958), LYNN *VS VALENTINE VS. LEVY*, 23 Fr 46, 19 FDR, DSCDNY (1956)" Judge Bouvier's Law Dictionary, Vol. 1, page 458

When a wrong has been committed, or a breach of duty has occurred, the cause of action has accrued, although the claimant may be ignorant of it. 3 Barnew. & Ald. 288, 626; 5 Barnew. & C. 259; 4 Carr. & P. 127" Judge Bouvier's Law Dictionary, Vol. 1, page 247

"Demurrer may be to the whole or a part of the pleading; but if to the whole, and a part be good, the demurrer will be overruled." 13 East, 76; 3 Caines, N.Y. 89, 265; 5 Johns. N.Y. 476; 13 id. 264, 402; 4 Den. N.Y. 65; 20 Barb. N.Y. 339; 11 Cush. Mass. 348; 23 Miss. 548; 28 id. 56; 2 Curt.C.C. 97; 2 Paine. C.C. 545; 14 Ill. 77; 2 Md. 284; 1 Wisc. 21

Therefore, it is clear from this Response and Plaintiffs' Amended Complaint that there is a controversy, Plaintiffs have evidence to support their claims for which relief can be granted, if the Complaint appears inartistic it takes nothing away from the truth of the claims and merits of the case, a cause of action has accrued based on the numerous wrongs that have been articulated, and that even if a part of the Complaint established injury, the Motion to Dismiss

must be denied. If this honorable Court requires clarification of any causes or claims, upon the Court's direction Plaintiffs are willing to amend their Complaint.

Furthermore, according to F.R.C.P. Rule 54 (c): "…every other final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." *U.S. V. WHITE COUNTY BRIDGE COMMISSION* (1960), 2 Fr Serv 2d 107, 275 F2d 529, 535. Plaintiffs are fully entitled to receive due process and relief in this matter.

## RESPONSE TO III. ARGUMENT

### Response to A. Plaintiffs Have Waived Each Of The Arguments Raised In Their Complaint.

Defendants are once again attempting to mislead this court when they stated that the Maricopa County Superior Court Denied Plaintiffs' request for TRO (Motion, pg 4). The fact of the matter is that due to the difficulties encountered in serving notice to out of state defendants, Judge Potts rescheduled the TRO hearing to April 5, 2010. This information is part of the same sentence that refers to vacating the hearing scheduled for March 1, 2010. Defendants were therefore fully aware that the hearing was rescheduled but chose not to share that with the court. In fact, it wasn't until after the notice of the rescheduled hearing that Defendants petitioned the Court to remove this case to Federal Court in an apparent attempt to avoid answering the Complaint.

Nevertheless, Defendants assertion that Plaintiffs have waived any rights in this case is false in that the Corporation Assignment Of Deed Of Trust Arizona [AC, Exhibit C] is void.

The United States Bankruptcy Court for the Eastern District of California has issued a ruling dated May 20, 2010 in the matter of In Re: Walker, Case No. 10-21656-E-11 which states:

*"Since no evidence of MERS' ownership of the underlying note has been offered, and other courts have concluded that MERS does not own the underlying notes, this court is convinced that MERS had no interest it could transfer to Citibank. Since MERS did not own*

*the underlying note, it could not transfer the beneficial interest of the Deed of Trust to another. Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law."*

Further, several courts have acknowledged that MERS is not the owner of the underlying note and therefore could not transfer the note, the beneficial interest in the deed of trust, or foreclose upon the property secured by the deed, nor assign that right to another party. See In re Foreclosure Cases, 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007); In re Vargas, 396 B.R. 511, 520 (Bankr. C.D. Cal. 2008); Landmark Nat'l Bank v. Kesler, 216 P.3d 158 (Kan. 2009); LaSalle Bank v. Lamy, 824 N.Y.S.2d 769 (N.Y. Sup. Ct. 2006).

Furthermore, "foreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity." (Kluge v Fugazy)

MERS has no lawful rights to transfer the note or the beneficial interest in the deed of trust to BAC. As such any and all actions by BAC as beneficiary of the deed of trust are fraudulent, without merit and render the foreclosure illegal and unenforceable.

Defendants' fraudulent actions include but are not limited to executing and filing a bogus Substitution of Trustee. [AC, Exhibit D] Since the substitution of ReconTrust Company N.A. ("ReconTrust") was illegal, any and all actions by ReconTrust as trustee are fraudulent, without merit and render the foreclosure illegal and unenforceable. As ReconTrust is not a valid trustee, there was no compliance under the deed of trust regarding proper notice requirements or requirements of ARS 33-809. Thus the argument that Plaintiffs have waived any rights is false.

### Response to B. Arizona Does Not Recognize A Cause Of Action For Wrongful Foreclosure.

The actions by Defendant to wrongfully foreclose on Plaintiffs property is theft by unlawful conversion which is a class 2 felony in the state of Arizona (ARS 13-1802 (A)(3),(G)).

### Response to C. The Uniform Commercial Code Does Not Govern Trustee's Sales.

While The Universal Commercial Code does not govern trustee's sales, it does govern the instruments required to establish the right to foreclose.

Furthermore, Plaintiffs are not relying on a "show me the note" theory but rather on the law and this courts sacred duty and faithful application of it. Furthermore, recent major news releases reveal that Bank of America, GMAC, and JPMorgan Chase have halted foreclosures in as many as 26 states due to failure to produce authentic documentation proving ownership of the notes. (Exhibit A) Therefore, Plaintiff has substantial cause to demand to see their note, demand proof of possession of both the note and deed which are inseparable, and proof that they were in possession at time of foreclosure. **If BAC can provide this proof which would entitle them with authority to enforce the note, they should be more than happy to produce it.**

Defendants claim that presentation of the original note is not required before commencing foreclosure proceedings. Without producing the original note there is no other way a jury may determine the Defendants' relationship to Plaintiffs and whether Defendants actions were lawful.

BAC has neither provided lawful evidence as to their relationship to Plaintiffs nor to the True Beneficiary of the note. Defendants have admitted that they are not the creditor or the creditors beneficiary (Motion, pg 6 line 13). In fact, the True Beneficiary of the note is presently unknown to Plaintiffs which is unlawful under USC Title 12. This alone is proof of wrongful foreclosure and is grounds to deny this Motion to Dismiss and allow the case to proceed because Plaintiffs are entitled to relief.

**Response to D. MERS Has Authority To Participat In Non-Judicial Foreclosures.**

Plaintiffs do not have a theory on MERS' authority to participate in non-judicial foreclosures but Plaintiffs do have the law on their side. Again, several courts have acknowledged that MERS is not the owner of the underlying note and therefore could not transfer the note, the beneficial interest in the deed of trust, or foreclose upon the property secured by the deed, nor assign that right to another party. See In re Foreclosure Cases, 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007); In re Vargas, 396 B.R. 511, 520 (Bankr. C.D. Cal. 2008); Landmark Nat'l Bank v. Kesler, 216 P.3d 158 (Kan. 2009); LaSalle Bank v. Lamy, 824 N.Y.S.2d 769 (N.Y. Sup. Ct. 2006).

The questionable nature of Defendants actions is further demonstrated by a transcript of Congressman Alan Grayson's web broadcast dated September 30, 2010. (Exhibit B)

**Response to E. No "Conflict Of Interest" Can Invalidate The Sale.**

Leticia Quintana, who signed The Corporation Assignment Of Deed Of Trust Arizona [AC, Exhibit C] as an officer of MERS and also signed The Substitution Of Trustee Arizona [AC, Exhibit D] as an officer of BAC, at a minimum, engaged in a conflict of interest, This stems from the customary practice of sound business that adopts arms length transactions. Although it is not illegal for a person to hold two jobs at the same time, an individual who falsely claims to be a corporate officer commits fraud.

Acts of fraud taint/void everything it touches as the US Supreme Court has declared: "There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments." (United States v. Throckmorton, 98 U.S. 6) Upon information and belief, Plaintiffs allege that Leticia Quintana was not simultaneously an officer of MERS and BAC since in a sworn deposition in the Superior Court of New Jersey, William C. Hultman, Treasurer and Secretary of MERS testified that MERS has no employees. (Superior Court of New Jersey, Chancery Division – Atlantic County, Docket No. F-10209-08). Defendants' non responsiveness and avoidance of Plaintiffs' request for an explanation of Leticia Quintana's dual employment supports this claim. Therefore the invalid execution of the Corporation Assignment Deed of Trust and Substitution of Trustee renders all subsequent actions by defendants null and void.

**Response to F. Securitization Is Not Wrongful.**

Securitization of the note amounted to fraudulent conversion, breach of covenant of good faith and fair dealing, unjust enrichment and breach of contract. USC Title 12-223.39(b),(d) requires that consumers be notified within 30 days of any transfer of the note, stating the identity, address, and telephone number of the person who owns the note as well as the location where transfer of ownership of the debt is recorded. Securitization and MERS has made it difficult if not impossible to know who the owner of the debt is. Securitization was done to benefit the banks and has damaged Plaintiff as Plaintiffs' ability to protect themselves from being deprived

of their property through fraudulent conversion as a result of the securitization has occurred. Securitization has muddied the waters and contributed substantially to Defendants fraudulent conversion of Plaintiffs' property and unjustly enriched Defendants.

### Response to G. A Deed Of Trust Is Not A Confession Of Judgment.

The Deed of trust contains terms such as waive, irrevocable, seised, and power of sale which are prima facie evidence that plaintiffs were induced into waiving their rights to legal recourse. This Deed of Trust was a form produced by the Lender, which is a corporate entity. This is the very definition of a Confession of Judgment. Furthermore, Defendant's claim is false which is further grounds for allowing the full adjudication of this case. Plaintiffs have shown ample claims of fraud and wrongful foreclosure and should be allowed to gather further evidence in support of their recognizable claims.

### Response to H. the Deed Of Trust Is Not Unconsionable

Defendants did a really good job of describing the Deed of Trust as procedurally unconscionable when they included in their Motion on page 9 at 7-14 "Procedural unconscionability is concerned with the process for entering into the contract and stem from factors that bear upon 'the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alteration in the printed terms were possible, whether there were alternative sources of supply for the goods in question.'" This sounds just like the Deed of Trust. It was drafted by the stronger party allowing for no bargaining power and allowed for no alterations in the printed terms. Terms such as waive, irrevocable, seised, and power of sale were not explained and the contract represented a take or leave it offer. According to ARS 47-2302, "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to

avoid any unconscionable result, and (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

Furthermore, the Deed of Trust is unconscionable to the extent that it is void.

Thusly, the Amended Complaint has more than met the threshold of sufficiency, plausibility and probable cause.

### Relief Requested

For the foregoing reasons, Plaintiffs respectfully requests that the court deny Defendants Motion to Dismiss, order that Defendants answer their Amended Complaint, order that the deed be reconveyed to Plaintiffs and that the legal and lawful true beneficiary and owner of the note be proven or provide Plaintiffs quiet title or set this case for trial and allow discovery to commence immediately.

Date: October 5, 2010                                      Respectfully submitted,

_____
Jonathan B. Woods

_____
Kerrie Woods

### JUDICIAL NOTICE

The Plaintiffs wish to point out to the Court that they are NOT schooled in the law, but as civilians exercising their rights under law for the proper action of the Court from the unacceptable actions on the part of the Defendants in question. As such, the Plaintiffs ask the court to look to the substance of their pleadings rather than the form and asks the court to take

judicial notice pursuant to Section 32 of the Judiciary Act of 1789 (1 Stat. 73) which specifies that "courts respectively shall proceed and give judgment according as the right of the cause and matter in law shall appear unto them, without regarding any imperfections, defects, or want of form." Plaintiffs further asks the court to take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence of the enunciation of principles stated in King v. Knoll (No. 04-04149-JAR), Whitney v. State of New Mexico (113 F.3d 1170), and Haines v. Kerner (404 U.S. 519), wherein the courts directed that those who are unschooled in law making complaints/pleadings shall have the court look to the substance of the complaint/ pleadings rather than the form and hereby makes the following pleadings/notices in the above referenced matter WITHOUT waiver of any defenses.

Copy of the foregoing filed this 5th day of October, 2010, with a copy mailed to:

Bryan Cave LLP
Attention: Robert W. Shely
Two N. Central Avenue, Suite 2200
Phoenix, AZ 85004-4406

_____
Jonathan Woods

*EXHIBIT A*

WASHINGTON, Oct. 1, 2010

# Bank of America Halts Foreclosures in 23 States

### An Official at Bank of America Acknowledged She Signed Up to 8,000 Foreclosure Docs a Month and Typically Didn't Read Them



A Bank of America official acknowledges in a legal proceeding that she signed up to 8,000 foreclosure documents a month and typically didn't read them. Bank of America will halt foreclosures in 23 states because of document problems. **(CBS)**

**(CBS/AP)** *Updated at 5:30 p.m. ET*

Bank of America will halt foreclosures in 23 states because of document problems. A Bank of America official acknowledges in a legal proceeding that she signed up to 8,000 foreclosure documents a month and typically didn't read them.

The executive's admission adds the nation's largest bank to a growing list of mortgage companies whose employees signed documents in foreclosure cases without verifying the information in them.

Two other companies, Ally Financial Inc.'s GMAC Mortgage unit and JPMorgan Chase, have halted tens of thousands of foreclosure cases after similar problems became public.

Foreclosure Shortcuts May Delay Housing Recovery

The Bank of America executive said in a February deposition in a Massachusetts bankruptcy case that she signed 7,000 to 8,000 foreclosure documents a month.

"I typically don't read them because of the volume that we sign," the executive said.

In statement, Bank of America said, "We have been assessing our existing processes. To be certain affidavits have followed the correct procedures, Bank of America will delay the process in order to amend all affidavits in foreclosure cases that have not yet gone to judgment in the 23 states where courts have jurisdiction over foreclosures."

The disclosure comes two days after JPMorgan said it would temporarily stop foreclosing on more than 50,000 homes so it can review documents that might contain errors. Last week, GMAC halted certain evictions and sales of foreclosed homes in 23 states to review those cases after finding procedural errors in some foreclosure affidavits.

After GMAC's announcement, state attorneys general in California and Connecticut told the company to stop foreclosures until it proves it's complying with their state laws. The Ohio attorney general this week asked judges to review GMAC foreclosure cases.

And in Florida, the state attorney general is investigating four law firms, two with ties to GMAC, for allegedly providing fraudulent documents in foreclosure cases.

In some states, lenders can foreclose quickly on delinquent mortgage borrowers. But 23 states use a lengthy court process for foreclosures. They require documents to verify information on the mortgage, including who owns it. Florida, New York, New Jersey and Illinois are the biggest states with this process.

© MMX, CBS Interactive Inc. All Rights Reserved. This material may not be published, broadcast, rewritten, or redistributed. The Associated Press contributed to this report.

**Best of 60 Minutes**
Scroll Left Scroll Right

# FRAUD FACTORIES: FORECLOSURE FRAUD CRISIS
## Congressman Alan Grayson
September 30, 2010

I'm Congressman Alan Grayson and I represent central Florida, an area hard hit by the foreclosure fraud crisis. Foreclosure fraud can affect anyone, whether you have a mortgage, are paying on time, have income or not, the average foreclosure hearing in a Florida court is only 90 seconds. ~~The stakes~~ Mistakes are common and fraud is rampant.

Everyone is familiar with dealing with a big bureaucratic institution. What is happening is that these big bureaucratic loan servicers are charging fees inappropriately, refusing to talk to homeowners by putting their calls through the call centers in India, and then foreclosing with forged documents once the owner has been drained of all assets and even the will to fight. There's one set of rules for the banks and another set of laws for everyone else. A servicer can ask for fees, it can demand payment, it can send you to one on of those call centers in India, and it doesn't have to negotiate. And you now have virtually no rights as a homeowner.

Here are four bizarre examples:

First: Last summer, Fort Lauderdale resident, Jason Kredinsky (sp) experienced what has tragically become an increasingly familiar process all across America. His house was sold at a foreclosure sale after the bank notified the Florida courts that Kredinsky had defaulted on his mortgage. The foreclosure came as a surprise to Kredinsky according to reports from the Sun Sentinel. Not only did Kredinsky not have a mortgage with the bank that sued to foreclose against his house, he never had a mortgage at all. Kredinsky had paid cash for his home;

Second: One house in Pinellas County, Florida saw two mortgage foreclosures brought against it because the banks didn't know who had title to the mortgage;

Third: One victim with a perfect payment record of all interest and principle was foreclosed on because of a $75 contested late fee; and

Fourth: Tim and Nicole West were victims of a predatory loan. In 2005, the bank threatened to sue the couple if they didn't sign a refinancing offer. Their loan servicer has subsequently raised their payments from $1900 a month to $5300 a month with regular forbearance fees required in tens of thousands of dollars.

1

Finally, the servicer refused to accept payments from the family in the name of negotiating for a mortgage modification, but instead of modifying the loan, their servicer began foreclosure proceedings. The servicer used fraudulent documents to prove that it had the right to foreclose.

Here's how it all happened. Securitizing mortgages was originally a way to take the cost of the mortgage off of a bank's books. From 2005 onward, the securitization chain went out of control and Wall Street wanted as many mortgages as it could get as quickly as possible and as cheaply as possible. In order to allow it to pull out more fees at every link in the chain, these subprime lenders, trusts and banks decided to cut as many costs as possible, including the cost of recordkeeping. They didn't keep the records and they violated the laws mandating that they had to file the records with the county clerk on who owned what mortgage title. Instead, the banks simply digitized mortgage titles into a privatized system called the Mortgage Electronic Registry System, or MERS, and it did the transfers by trading Excel spreadsheets among the banks and trusts rather than endorsing the notes as required by their own contracts, by state real estate law, and by IRS rules.

Today, MERS is the registered owner of the security interest in 60 million properties, or about 60% of the mortgages in the United States. In fact, 97% of the loans originated between 2005 and 2008 are in the MERS system. It appears that on a widespread and probably pervasive basis, they did not take the steps necessary to own the note or borrowed IOU, which means that in 45 out of 50 states, they lack the legal right to foreclose.

Thus, every trust now has questionable legal standing in foreclosures in the overwhelming majority of states. In Addition, their records were poorly kept, so servicers are basically guessing that they have the right to foreclose when they do foreclose. Obviously the banks do not want grapple with the consequences of trillions of dollars of securitized mortgages having no legal standing to foreclose. So they have simply created a system where servicers hire foreclosure mill law firms whose business is to forge documents showing, or purporting to show, that they have a legal right to foreclose. Some of these foreclosure mills have been featured in the New York Times and so-called robo-signers, people whose names appear on thousands of affidavits. These appear despite obvious forgeries and overt omissions and in cases where these people admit that they had no knowledge of what they were signing.

This system is so organized that there is a company called Lender Processing Services which allegedly has created a means to systematize this fraud. Lenders use the LPS system to request which affidavits and documents they need. LPS then has document mills where they can magically make an

2

authorized vice-president of whoever you need, and send you back-dated signed documents saying that you have the right to foreclose.

Courts at first refused to believe this level of rampant fraud even exists, but more recently, they have started to sanction fraud against loan servicers.

Here are some examples of signature forgeries used on documents filed with the courts. These are four clearly four clearly forged signatures of document mill employee Linda Green. There were six signatures of Christina Huang, and here are three obvious forgeries of Tywanna Thomas. Finally, this is a mortgage assignment filed with the recorder's office in which the foreclosing firm forgot to put the name of the assignee, so they instead put "Bogus Assignee" The filing firm simply forgot to change the template for whose home, which family's home, they wanted to take.

This is a factory of fraud. Servicers don't make money through routine servicing. It's a break-even business. They make their money on foreclosures at $6,000 for each foreclosure through their fee.

When you combine the incentive to foreclose with systemized fraud, it's rampant lawlessness. Fraud is now big business sanctioned in part by the government as both Fannie Mae and Freddie Mac are shareholders in MERS.

We are approaching a point where the easiest way to make a buck is to steal it. The only way to end this plague of foreclosure frauds is to make sure that crime does *not* pay.

http://www.youtube.com/watch?v=AqnHLDeedVg&feature=player_embedded